# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

STACY COLLINS, TIANGE LUSENI and    )
LISA PETERSON, individually and on    )
behalf of other similarly situated individuals,    )    CASE NO: 3:18-cv-00065
    Plaintiffs    )
    )
v.    )
    )
KOHL'S DEPARTMENT STORES, INC. and    )
KOHL'S CORPORATION    )    MAY 21, 2018
    Defendants    )
_____

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR CONDITIONAL CERTIFICATION COLLECTIVE ACTION

## I.    PRELIMINARY STATEMENT

Retail employers must pay overtime to their assistant store managers unless their primary duty is management.  "[I]f the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register … are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement."  29 C.F.R. Sec. 541.700(c).

Employees who share common job titles and position descriptions (even though they work in different departments) and who were all classified as 'exempt' pursuant to a common "one size fits all" decision are "similarly situated" for purposes of FLSA collective actions. *Scott v. Aetna Servs*., 210 F.R.D. 261, 265 (D.Conn. 2002) (Droney, J.).[1]

Kohl's classifies all of its Assistant Store Managers ("ASMs") as exempt "executives" no matter what department they work in based on similar position descriptions.  It schedules all ASMs to work 45-hour work-weeks but gives them so much work that they usually work 50 hours or more.  It assigns them mostly non-exempt tasks and so they actually "manage" less than 50 per cent of the time.   Kohl's subjects all ASMs to close and direct supervision and pays them barely more than they pay their hourly workers.  Kohl's was sued for these same practices in 2013. *Costello v. Kohl's Ill., Inc.*, 2014 U.S. Dist. LEXIS 124376 (S.D.N.Y. Sep. 4, 2014), Ex. S, (granting motion for cond'l certification for ASMs from two departments and authorizing notice to approximately 3,500 ASMs nationwide).  Plaintiffs now move for conditional certification under the FLSA so that all Kohl's ASMs nationwide have opportunity to learn of this lawsuit and join.  All ASMs are the subject to Kohl's' common "exempt" classification and are "similarly situated" and entitled to be notified of this action and given an opportunity to join.

---

[1] FLSA collective action and Rule 23 class action certified for "Systems Engineers" from different departments even though "each Systems Engineer spends his or her time on somewhat different specific assignments."

2

## II.    LEGAL PRINCIPLES

The Fair Labor Standards Act requires employers to pay overtime for every hour worked above forty (40) hours in a week.  Employers must pay employees overtime premiums unless the employee properly falls into one of the exemptions provided in the Federal Regulations.  *Cooke v. General Dynamics Corp.*, 993 F. Supp. 56, 58 (D. Conn. 1997).

Employers can only classify their workers as "executives"—and therefore exempt from paying overtime—if they are truly "employed in a bona fide executive … capacity" and 29 U.S.C.S. § 213(a)(1). "The 'bona fide executive' exemption is an affirmative defense on which the defendant bears the burden of proof…and is narrowly construed against the employer."[2]

Retail employers must pay overtime to their assistant store managers unless their primary duty is management.  "[I]f the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register … are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement."  29 C.F.R. Sec. 541.700(c).

FLSA collective actions are conditionally certified when plaintiffs are "'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)(*citing Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259 (11th Cir. 2008)[3], *Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 4, 2006)[4] (granting cond'l cert.); *Hoffmann v.*

---

[2] *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090, at *5 (S.D.N.Y. Oct. 4, 2006) (*citing Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002), *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974)).

[3] Nationwide collective action for retail store managers maintained and tried to a jury resulting in $38,000,000 judgment for the collective.

[4] *See also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 154 (S.D.N.Y. May 27, 2008) (*granting* R.23 Cert.); *Damassia v. Duane Reade, Inc.*, 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. July 24, 2009) (approving settlement of $3,500,000 for the collective).

3

*Sbarro, Inc*., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.). *Hertz* goes on to require only a "modest factual showing that there are other employees … who are similarly situated with respect to their job requirements and with regard to their pay provisions, … who are classified as exempt pursuant to a common policy or scheme." *Myers v. Hertz Corp*., 624 F.3d 537, 555 (2d. Cir. 2010) (internal quotations omitted).

Courts do not evaluate the merits for FLSA collective certification. "A court's decision regarding whether to certify a FLSA collective action does not depend on the merits of the plaintiff's claims. *Lassen v. Hoyt Livery, Inc.,* 2014 U.S. Dist. LEXIS 129784, *12 (D. Conn. 2014) (*citing Perkins v. S. New England Tel. Co*., 669 F. Supp. 2d 212, 219 (D. Conn. 2009). "[A] plaintiff's burden at this preliminary stage is 'minimal. … A court need not evaluate the underlying merits of a plaintiffs claims to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice.'" *Damassia,* No. 04 ClV. 8819 (GEL), 2006 WL 2853971, at *3 (internal citations omitted)**;** *Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638(CS)(GAY), 2008 WL 4619858, at *2 (S.D.N.Y. Oct. 16,2008) ("Plaintiffs must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law,' but the merits of plaintiffs claims are not evaluated until later in the litigation." (*quoting Hoffmann*, 982 F.Supp. at 261-62 (S.D.N.Y. 1997)).

Wage and hour misclassification cases have been conditionally certified under the FLSA and certified pursuant to the class action procedures of Rule 23 by courts in the District of Connecticut for over fifteen years – including cases where the employees claiming they were misclassified as exempt from overtime even though they work in different departments but share similar general job duties.

4

One of the earliest cases to so rule was *Scott v. Aetna Servs*., 210 F.R.D. 261, 265 (D. Conn. 2002). In that case, then District Judge Droney certified an FLSA collective action and Rule 23 class action for "Systems Engineers." Even though "each Systems Engineer spends his or her time on somewhat different specific assignments, this does not refute the conclusion that job duties of the plaintiffs and "opt-in" plaintiffs are of the same type. The "exemption" analysis does not require a more narrow inquiry into the job duties of an employee."

Judge Bryant followed this ruling the next year when she certified a FLSA collective action for Assistant Store Managers ("ASMs") alleged to have been misclassified as exempt executives. *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 104 (D. Conn. 2007). Judge Bryant held that the plaintiff met her burden of a "modest factual showing" that all ASMs were similarly situated with regards to their classification as exempt executives under the FLSA and eligibility to collect overtime pay. *Id.*, 105. The position of ASM was "viewed in a common light by [defendant] across the company, regardless of store location. … The court need not find uniformity in each and every aspect of employment to determine a class of employees were similarly situated…. The consistent manner in which [defendant] classified its own ASMs was sufficient to carry [plaintiff's] burden, even in the presence of minute factual variances in treatment between store locations." *Id.* at 106.

Judge Hall certified a multi-department FLSA collective action and Rule 23 class action just two years later in *Perkins v. Southern New England Telephone Co.*, 669 F.Supp. 2d 212 (D.Conn. 2009). In that case, the class included "First Level Managers" at SNET in twenty-two (22) separate departments. "[A]fter examining the evidence before it, the court concludes that the named and opt-in plaintiffs are similarly situated in the areas of their jobs which are relevant to the FLSA misclassification inquiry. Plaintiffs testified to their lack of discretion in assigning

5

work, in disciplining technicians, in hiring, firing, or promotions, and even in menial tasks such as purchasing supplies.  Although there are some distinctions, the court concludes that, on balance, the similarities outweigh the differences, [citation omitted], and thus this factor weighs heavily in favor of certification of the collective." *Id.* at 219.

One year later, Judge Thompson conditionally certified a collective action of assistant store managers at 100 retail locations.  *Morrison v. Ocean State Jobbers, Inc.*, 2010 U.S. Dist. LEXIS 48560 (D.Conn. 2010).  This northeast retailer had over 100 stores and employed ASMs in several different departments.  The court conditionally certified the case because the plaintiff

> produced evidence demonstrating that all Ocean State Assistant Store Managers are required to work over 40 hours per week and do not receive overtime pay. (See Morrison Decl. P 8 & Ex. B.) The plaintiff has also produced evidence demonstrating that there is a uniform, accurate job description of Assistant Store Managers at Ocean State, and that Ocean State's Assistant Store Managers spend "the vast majority of [their] time (about 80 percent) performing manual labor and non-management duties." (Morrison Decl. P 33; see Morrison Decl. Ex. A.)

*Id.* at *8.[5]  *See also*, *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 186 (D. Conn. 2010) (FLSA collective action conditionally certified for "operations managers" at approximately 500 locations around the country based on declarations, a common job description and corporate testimony that all operations managers were "denied overtime pay without individual inquiry.");

*Alli v. Boston Market Co.*, 2011 U.S. Dist. LEXIS 101530 at *15 (D.Conn. 2011) (FLSA collective action for Assistant General Managers, Hospitality Managers and Culinary Managers certified because "plaintiffs have met their modest burden of submitting evidence that AGMs, Hospitality Managers, and Culinary Managers perform similar work at each of Boston Market's restaurants. … Notably, although Boston Market argues that there is evidence of differences between the jobs performed by AGMs, Boston Market does not contend that it considers those

---

[5] Ocean State's subsequent motion to decertify that collective after discovery closed was denied.  *Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347, 361 (D. Conn. 2013).

differences or makes any case-by-case determination of whether to classify particular AGMs as exempt."); *Zaniewski v. PRRC Inc.*, 848 F.Supp. 2d 213, 230 (D.Conn. 2012) (FLSA collective action conditionally certified for Assistant Store Managers at 47 of PriceRite's supermarkets, "An objection at this preliminary stage to conditional classification based upon individual employees' asserted different circumstances is clearly part of the FLSA defense bar's play book, but it has not found favor with the courts, and it does not persuade this Court in this case."); *Lassen v. Hoyt Livery, Inc.,* 2014 U.S. Dist. LEXIS 129784, *12 (D. Conn. 2014) (certifying FLSA collective and Rule 23 class action where plaintiffs limousine drivers were "subject to the same commission-based compensation policy…[and]…same basic job duties and workplace policies…who did not receive overtime pay…").

Most recently, this court certified another FLSA collective and a Rule 23 class action of multiple job titles in *Strauch v. Comput. Scis. Corp.*, 322 F.R.D. 157 (D.Conn. 2017). In that case, Judge Arterton certified an FLSA collective action[6] and later a Rule 23 class action for three (3) positions at Computer Sciences Corporation – a multinational employing over 72,000 people. *Id.* The positions were Associate Professional System Administrators, Professional System Administrators or Senior Professional System Administrators. Judge Arterton conditionally certified the FSLA collective in June 2015 and later certified a Rule 23 state law class under California and Connecticut law for Associate Professional System Administrators and Professional System Administrators. In certifying the class under the more difficult Rule 23 standard, the Court found that "the vast majority of examples of troubleshooting given by

---

[6] The ruling conditionally certifying the FLSA collective can be found at *Strauch v. Computer Scis. Corp.*, 2015 U.S. Dist. LEXIS 76995 (D.Conn. 2015).

Case 2:18-cv-00962-DEJ   Filed 05/21/18   Page 7 of 38   Document 47-1

Associate Professional and Professional SAs do not require individualized inquiry to determine whether or not the work is exempt." *Id.* at 186.[7]

Other jurisdictions have followed the same principles of conditionally certifying classes where similarities between duties and the employer's exemption treatment outweigh superficial differences as to title or department. *See Saleh v. Valbin Corp.*, 2017 WL 5000799, *6 (N.D. Cal. Nov. 2, 2017) (conditionally certifying an FLSA class that included two job types with three job descriptions, noting that "courts often conditionally certify collective actions that include multiple job types and titles) (collecting cases) (*citing Coates v. Farmers Group, Inc.,* 2015 WL 8477918, *13 (N.D. Cal. Dec. 9, 2015) (conditionally certifying collective action comprising eleven job titles); *Wellens v. Daiichi Sankyo, Inc.*, 2014 WL 2126877, *2 (N.D. Cal. May 22, 2014) (conditionally certifying a collective action with six job titles); *Stickle v. SCI W. Market Support Center*, 2009 WL 3241790, *6-7 (D. Ariz. Sept. 30, 2009) (same, for seven job titles)); *see also Cunha v. Avis Budget Car Rental, LLC*, 2016 WL 6304432, *3 (D. Mass. Oct. 26, 2016) (conditionally certifying an FLSA collective action for a class including five different grades of managers); *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 772 (S.D. Tex. 2015) (conditionally certifying class of crew workers and their supervisors, holding that "[e]mployees with different job titles are similarly situated for the purpose of an opt-in FLSA class when their day-to-day job duties do not vary substantially"); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F.Supp.2d 200, 207 (N.D.N.Y.2009) ("[U]nder section 216(b) parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice;" conditionally certifying a class of "all past and present hourly employees of the [hospital], including though

---

[7] That case was tried to a jury which returned a verdict for Plaintiffs on December 20, 2017.  3:14-cv-0956 (JBA).

Case 2:18-cv-00962-DEJ   Filed 05/21/18   Page 8 of 38   Document 47-1

not limited to registered nurses, licensed practical nurses, nurse practitioners, and certified nurses' assistants, having responsibility for patient care and treatment … during the past three years."); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 161 (N.D.N.Y. 2008) (conditionally certifying a nationwide FLSA collective action for health care call center employees with varying job titles including "utilization review nurses, case management nurses, [and] medical management nurses" because "Plaintiffs are not required to submit evidence implicating every office and to show how they have identical characteristics; instead, only a representative sample will suffice. … As long as Plaintiffs' Affidavits are sufficiently similar to constitute a preliminary showing that they and other potential plaintiffs together were victims of a common policy or plan, they may have met their burden for the conditional class certification."); *Perry v. Nat'l City Mtge., Inc.*, 2007 WL 1810472, *3-4 (S.D. Ill. June 21, 2007) (conditionally certifying class of 5,500 loan originators despite defendant's argument that job duties varied depending on their classification, because loan originators had the same "overall mission"); *Trezvant v. Fidelity Employer Svcs. Corp.*, 434 F. Supp. 2d 40, 48 (D. Mass. 2006) ("Different job titles or positions do not preclude a finding that plaintiffs are 'similarly situated;'" conditionally certifying a group of Business Analysis, Project Analysts, and Reporting Analysts, explaining that "[a]lthough there are clear differences between these three positions, there are sufficient similarities to have warranted a finding, at this initial phase, that these positions are similarly situated."); *Garza v. CTA*, 2001 WL 503036, *3 (N.D. Ill. May 8, 2001) ("That the plaintiffs and other potential plaintiffs may have had different jobs … [and] earn different amounts of money … does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay."); *Harris v. Chipotle Mexican Grill, Inc.*, 2017 WL 2537228, at *11 (D. Minn. June 12, 2017) (denying motion to decertify an FLSA collective action comprised of kitchen crew

9

members, kitchen managers, and service managers who were all victims of the same alleged policy or plan of underpayment of wages).

### III.    FACTS

#### a.  Kohl's Department Stores.

Kohl's Department Stores, Inc. (and Kohl's Corporation, hereafter "Defendants" or "Kohl's") is a national retailer with approximately 1,158 stores in 49 states.  *See* Kohl's 2017 Factbook, Ex. A, at 5-6. Its corporate headquarters is in Menomonee Falls, Wisconsin.  *Id.* at 24. Kohl's organizes its stores into four territories, 18 regions and 91 districts, which each contain approximately 12 to 14 stores.  *See* Shields Dep., Ex. B, 36-37.[8]  Kohl's employs various territory and regional managers, as well as one district manager per district.  Shields Dep., Ex. B, 40, 45.  Within each store, Kohl's employs a store manager, up to five types of assistant store managers and various associates.  Shields Dep., Ex. B, 45-46.

The executives in Kohl's corporate headquarters direct the administrative and business functions for the entire company, including, significantly, the classification of all employees at Kohl's.  Kohl's corporate offices direct the administrative and business functions for the entire company, including, as specifically relevant to this motion, the uniform job responsibilities of employees at Kohl's. Kohl's unified management of its stores is directed from the Corporate Offices, which in turn manage the Territory Managers, who supervise and oversee the Regional Managers, who in turn supervise and oversee the District managers. Shields Dep., Ex. B, at 36-38, 40-41 (detailing the corporate management hierarchy).

---

[8] Plaintiffs herein offer excerpts from the deposition transcript of Ms. Genevieve Shields, who testified on behalf of Kohl's as its corporate designee on January 9, 2014 in the *Costello* litigation in the Southern District of New York. Her testimony is relevant here because Kohl's has essentially the same 2012 Position Descriptions that were the subject of that litigation, except the 2018 postings are even more similar to one another.  *See* Exhibit O.

10

Kohl's business model and its meticulously cultivated brand depend on top-down control over its store operations to ensure that each store in the chain operates uniformly nationwide, regardless of location. Kohl's emphasizes its centrally mandated focus as follows: "An important aspect of [Kohl's] pricing strategy and overall profitability is a culture focused on **maintaining a low cost structure**. Critical elements of this low-cost structure are [Kohl's] unique store format, **lean staffing levels**, sophisticated management information systems and operating efficiencies which are the result of centralized buying, advertising and distribution." *See* Kohl's Form 10-K for fiscal year ending February 1, 2014, Ex. C at 4 (emphasis added). Kohl's emphasizes its "family-focused, value-oriented department stores…that sell moderately priced exclusive and national brand apparel, footwear, accessories, beauty and home products. **Our stores generally carry a consistent merchandise assortment** with some differences attributable to regional preferences." *Id.* at 3 (emphasis added). Kohl's customer-centric concept - delivering the Kohl's experience - is also centrally dictated. "At Kohl's, in-store convenience includes a neighborhood location close to home, convenient parking, easily-accessible entry, knowledgeable and friendly associates, wide aisles, a functional store layout, shopping carts/strollers and fast, centralized checkouts. Though our stores have fewer departments than traditional, full-line department stores, the physical layout of the store and our focus on strong in-stock positions in style, color and size is aimed at providing a convenient shopping experience for an increasingly time-starved customer." *Id.* at 3-4.

Kohl's runs its stores from its headquarters in Wisconsin and applies uniform training and procedures to all of its stores. *See* Kohl's Legal Notices of May 12, 2016, Ex. D at 2. In every store, there is a Store Manager, and reporting to the Store Manager, Assistant Store Managers. Below the Assistant Store Managers were hourly associates, including Area Supervisors, Department Supervisors, Specialists and Associates. Every store is organized the

11

same in terms of personnel and the layout of the store. Every store sells the same basic merchandise and had the same rules and procedure, including Kohl's Best Practices. They all received the same employee handbook. Shields Dep, Ex. B at 46, Collins Dec., Ex. E, ¶12-14.

### b. Plaintiffs and Opt-Ins

Plaintiffs Collins Luseni, and Peterson were employed by Kohl's as ASMs. Plaintiffs and opt-ins allege that they worked more than 40 hours per week, during which they performed primarily routine, non-managerial work. *See* Amended Complaint [Doc. 34], ¶41-44, Collins Dec., Ex. E, ¶21. Luseni Dec., Ex. F, ¶15. Peterson Dec., Ex. G, ¶3, 6-7, 12. Johnson Dec., Ex. H, ¶12. Stevenson Dec., Ex. I, ¶14. Watson Dec., Ex. J, ¶14,19. Portillo Dec., Ex. K, ¶15, 17-18, 22. Swaim Dec., Ex. L, ¶15, 20. Mariani Dec., Ex. M, ¶9, 18, 24. Kohl's employed Collins in their Wallingford, Enfield and Manchester, Connecticut locations from June 2008 to October 19, 2017 as a Children's Footwear and Home ASM ("CFH ASM"), and later as a Human Resources and Operations ASM ("HR-Ops ASM"). Collins Dec., Ex. E, ¶3, 8-10. Kohl's employed Luseni in their Elmhurst, New York store from April 2010 to March 2013 as a CFH ASM, and then transferred Luseni to its Green Acres, Long Island, New York store from July 2013 until approximately February 2017, initially as a CFH ASM and then as an Operations / CFH ASM. Luseni Dec., Ex. F, ¶3-5. Kohl's employed Peterson in its Milford, Massachusetts store from 2013 to 2015 as ASM of Apparel and Accessories ("AA ASM") and ASM of Human Resources ("HR ASM"). Peterson Dec., Ex G, ¶4. Since the lawsuit was filed, twenty-three total ASMs from sixteen states – including Michigan, Ohio, Connecticut, California, Minnesota, Illinois, Arizona, Pennsylvania, New Hampshire, Washington, New York, Massachusetts, Kansas, New Jersey, Virginia, Colorado, and Nevada – have opted-in as plaintiffs in this case. *See* Consent Forms [Doc#16, 17, 23, 35-1, 37-1].

c.  **Assistant Store Managers.**

Regardless of the subtitle, department, store, state, region, shift, store size, store volume, number of employees, or any other factor, the ASMs were similarly situated with respect to duties and responsibilities, exemption treatment, training, policies and procedures, scheduling, supervision, and compensation for the purposes of this FLSA collective action.

   i.    **Duties and Responsibilities**

Kohls has established five "Position Descriptions" for the ASMs in its stores.  Ex. N.[9] Three are dated March 2012 and two more are dated October 2012.  All five Position Descriptions report to the Store Manager and they have seven (7) "General Responsibilities" and "Primary Responsibilities."  These position descriptions are "corporate derived."  Shields Dep., Ex. B, 67:14-16.  The "responsibilities" of all ASMs include:

| General Or Primary Responsibility | ASM Human Resources and Ops March 2012 | ASM of AA CFH Ops CFH March 2012 | ASM Overnight Operations March 2012 | ASM Operations Oct. 2012 | ASM Merchandising Oct. 2012 |
|---|---|---|---|---|---|
| Customer Satisfaction | X | X | | X | X |
| Merchandise Presentation | X | X | X | X | X |
| Payroll/Expense Management | X | | X | X | |
| Sales Mgmnt | X | X | X | X | X |
| People Mgmnt | X | X | X | X | X |
| Inventory Shortage Unit System Accuracy | X | X | X | X | |
| Operations | X | X | X | X | |

---

[9] These 2012 Position Descriptions were offered by Kohl's in support of its Motion to Strike, Document 13-3.

13

These position descriptions are the same at every Kohl's store in every state nationwide regardless of district, region, territory, store, size of store, number of employees in the store, sales volume of the store, previous experience of the ASM, training of the ASM, who the store manager is, shift of the ASM and regardless of the duties, tasks and responsibilities of the ASM. Shields Dep., Ex. B, 58-69. These responsibilities from 2012 are near identical to each other as shown in the chart above. Furthermore, upon comparison, the 2012 descriptions are all near identical to the descriptions contained in Kohl's job postings today. *See* Kohl's Job Descriptions of 5/16/18, Ex. O, showing five postings from the Kohl's website for "Assistant Store Manager" positions in Pennsylvania, New Jersey, Missouri and New York. All 2018 position descriptions are **identical** to each other and do not change based upon subtitle (only the overnight subtitle is even specified, but its description is still identical as to the other postings). *See* Ex. O.

ASMs often transfer from store to store, but the responsibilities are always similar regardless of location. Even though the ASMs have different subtitles, all ASMs perform the same basic functions. Their primary duty is to make sure the merchandise is taken off the truck and merchandised on the sales floor, along with providing customer service. The Operations ASMs work more in the back room and do not have assigned merchandise departments but the work they do is still in the nature of moving the merchandise from the trucks to the floor. Collins Dec., Ex. E, ¶8-10, 16. Luseni Dec., Ex F., ¶5,9-10. Peterson Dec., Ex. G, ¶6. Johnson Dec., Ex. H, ¶6, 14. Stevenson Dec., Ex. I, ¶8. Watson Dec., Ex. J, ¶7, 16. Portillo Dec., Ex. K, ¶6, 14. Swaim Dec., Ex. L, ¶9, 17. Mariani Dec., Ex. M, ¶3-5, 8. During the Declarants' combined 74 years at Kohl's, they worked with approximately 82-85 other ASMs and had an opportunity to observe the duties they performed; they all had essentially the same job, no matter what department they were in. Collins Dec., Ex. E, ¶23. Luseni Dec., Ex. F, ¶17. Peterson Dec.,

Ex G, ¶14. Johnson Dec., Ex. H, ¶14. Stevenson Dec., Ex. I, ¶16. Watson Dec., Ex. J, ¶4, 14. Portillo Dec., Ex. K, ¶14, Swaim Dec., Ex. L, ¶3, 8, 17. Mariani Dec., Ex. M, ¶15.

The work ASMs perform is closely and directly monitored by ASMs' superiors. Store Managers work every week in the stores and inspect and monitor the work ASMs do. Also, there are periodic inspections and audits of stores by corporate personnel. These inspections and audits are used to evaluate ASM performance each year and determine if ASMs will be terminated, retained, promoted or given raises. Collins Dec., Ex. E, ¶35. Luseni Dec., Ex. F, ¶28. Peterson Dec., Ex G, ¶24. Johnson Dec., Ex. H, ¶23. Stevenson Dec., Ex. I, ¶25. Watson Dec., Ex. J, ¶25, Portillo Dec., Ex. K, ¶23, Swaim Dec., Ex. L, ¶28, Mariani Dec., Ex. M, ¶26.

Kohl's assigned both management and non-management work to its ASMs, no matter what department they were in; the non-management work that was assigned to ASMs included unloading trucks, unpacking merchandise, sorting merchandise, filling on-line orders, back stocking merchandise, organizing the back room, stocking shelves, customer service, operating cash registers, counting inventory, organizing the store, recovery, setting floor plans, gathering and cleaning shopping carts, filling in and adjusting fixtures, processing mark downs, and processing call backs of damaged and defective merchandise. Collins Dec., Ex. E, ¶25, Luseni Dec., Ex. F, ¶18. Peterson Dec., Ex G, ¶15. Johnson Dec., Ex. H, ¶15. Stevenson Dec., Ex. I, ¶17. Watson Dec., Ex. J, ¶17, Portillo Dec., Ex. K, ¶15, Swaim Dec., Ex. L, ¶18, Mariani Dec., Ex. M, ¶16.

The management work that was assigned to ASMs included directing the work of hourly workers, responding to questions from hourly workers, issuing low level discipline to hourly workers for minor transgressions such as tardiness or performance, assisting the Store Manager with performance evaluations of hourly workers once per year, opening and closing the store,

15

and participating in hiring interviews and firing interviews (although the ultimate decision on hiring or firing was made above ASMs). Collins Dec., Ex. E, ¶26. Luseni Dec., Ex. F, ¶18. Peterson Dec., Ex G, ¶16.  Johnson Dec., Ex. H, ¶16. Stevenson Dec., Ex. I, ¶18.  Watson Dec., Ex. J, ¶18, Portillo Dec., Ex. K, ¶16, Swaim Dec., Ex. L, ¶19, Mariani Dec., Ex. M, ¶17.

The non-management work Kohl's assigns ASMs takes the majority of their time. Collins Dec., Ex. E, ¶27-28. Luseni Dec., Ex. F ¶9, 20. Peterson Dec., Ex G, ¶17. Johnson Dec., Ex. H, ¶7, 17. Stevenson Dec., Ex. I, ¶19-20.  Watson Dec., Ex. J, ¶19, Portillo Dec., Ex. K, ¶17, Swaim Dec., Ex. L, ¶20, Mariani Dec., Ex. M, ¶18.  The management work that ASMs performed took very little time and was not as important to the success of our store as ASMs non-management work.  For example, part of the ASMs management work was to issue write ups for hourly workers for tardiness.  When ASMs did this, it was because the corporate office told them to and the ASMs had no discretion in this process.  Collins Dec., Ex. E, ¶33.  Luseni Dec., Ex. F, ¶21. Peterson Dec., Ex. G, ¶18.  Johnson Dec., Ex. H, ¶18.  Stevenson Dec., Ex. I, ¶19-20.  Watson Dec., Ex. J, ¶20, Portillo Dec., Ex. K, ¶18, Swaim Dec., Ex. L, ¶21, Mariani Dec., Ex. M, ¶19.

### ii.  Exemption Treatment

Kohl's classified all its ASMs as exempt "based on the job description clearly as the document that we review."  Shields Dep., Ex. B, 49:23-25.  All ASMs have the same primary duties as described in the singular job description (Job Descriptions, Ex.'s N and O). "This [job description] describes their duties, tasks and responsibilities, Yes." Shields Dep., Ex. B at 62.

ASMs are classified as exempt regardless of which district, region, territory, store, state, store size, store volume, number of employees at the store, prior experience, training, who the store manager is, number of executives, shift of the ASMs, or climate.  Shields Dep. 46-49.

Q:    So in all material respects an ASM will be exempt no matter what duties they perform?

16

…

A:      ASMs are exempt.

Shields Dep. 53:10-13.  Furthermore, the primary duties of all ASMs are the same.

Q. Are you aware if in determining whether an ASM is exempt there was consideration that Kohl's gave to the volume of that store?

A. We believe the job duties and responsibilities are the same, so no.

Shields Dep., Ex. B, 51-52.  All ASMs nationwide are paid on a salaried basis.  *Id.* at 53:23-25.

### iii.      Training

All ASMs receive the same training.  Kohl's puts their ASMs through a management training program which lasts approximately six to eight weeks, and such training often takes place at stores different than the store where the ASM will be assigned.  They are trained by various members of the store including the Store Manager, Assistant Managers and hourly associates. Collins Dec., Ex. E, ¶4,7.  Luseni Dec., Ex. F, ¶6-7.  Peterson Dec., Ex. G, ¶5, 8. Johnson Dec., Ex. H, ¶5, 8, 14.  Stevenson Dec., Ex. I, ¶5-6.  Watson Dec., Ex. J, ¶4. Portillo Dec., Ex. K, ¶5, 8. Swaim Dec., Ex. L, ¶5-7, 11. Mariani Dec., Ex. M, ¶4-6, 10.

Kohl's trains all ASMs in its stores pursuant to the same training programs and materials. There are usually multiple ASMs being trained at any one time by the same trainers. They are then assigned to different stores.  They do not receive different training based on the stores that they are being sent to.  All ASMs are trained in Kohl's Best Practices and are given binders of written materials that Kohl's uses to train its assistant managers.   There is also computer-based training. Collins Dec., Ex. E, ¶6. Luseni Dec., Ex. F, ¶8. Peterson Dec., Ex. G, ¶5.  Johnson Dec., Ex. H, ¶5. Stevenson Dec., Ex. I, ¶7.  Watson Dec., Ex. J, ¶6. Portillo Dec., Ex. K, ¶5. Swaim Dec., Ex. L, ¶5-7, 11. Mariani Dec., Ex. M, ¶7.  Kohl's trained all ASMs in the same manner and using the same training materials including Best Practices, and issues one "associate handbook"

17

which applies to all employees. Collins Dec., Ex. E, ¶7, 17. Luseni Dec., Ex. F, ¶11.  Peterson

Dec., Ex. G, ¶8.  Johnson Dec., Ex. H, ¶8.  Stevenson Dec., Ex. I, ¶10.  Watson Dec., Ex. J, ¶10.

Portillo Dec., Ex. K, ¶8. Swaim Dec., Ex. L, ¶11. Mariani Dec., Ex. M, ¶10.

All new ASMs would go through training and they all receive a new executive packet.

Shields Dep., Ex. B, 100-102. All ASMs have access to the Kohl's intranet where "Knowledge

Works" is hosted and all of the training materials are contained. Loomis Depo[10], Ex. P at 18.  All

ASMs nationwide receive the same company Counseling Guidelines derived by corporate, all

ASMs are expected to follow them in their particular building, and personnel policies contained

therein are to be followed by all ASMs.  Shields Dep., Ex. B, 104-105, 107.  Ms. Loomis

testified that Kohl's corporate headquarters generates one training curriculum and set of training

materials currently known as "Lead Off" for all ASMs when they are hired by Kohl's. Loomis

Dep., Ex. P, 30-31, 33. Within the training there are 84 training modules that all new Executives

must complete. In addition to the "Lead Off" training program, Kohl's places all of its e-learning

(ongoing training) for all ASMs on Knowledge Works as well. *Id.* at 38. The ASM "Lead Off"

training program contains the same learning topics for all ASMs in all Kohl's nationwide. *Id.* at

47[11], 55-56, 58, 61-62, 64.

### iv.    Policies and Procedures

Kohl's imposes policies and procedures uniformly upon ASMs.  Kohl's creates and

employs "Best Practices" which are how it does "things the best way possible."  Shields Dep.

69:20-25.  These Best Practices are expected to be used as guidelines in all stores nationwide.

---

[10] Ms. Sharon Loomis was Director of Learning and Development and testified as witness for Kohl's in 2014.
[11] Ms. Loomis testified that there would be only one "Lead Off" training program at any given time and that it is the *only* New Executive Lead Off training program for all ASMs nationwide.  The "Lead Off" training helps the new ASM acclimate and "on-board" to the company. Loomis Dep., Ex. P, at 50-51. All of the ASMs in all of the Kohl's stores are expected to use their training at Kohl's store they work in. Loomis Dep., Ex. P, at 55-56.

*Id.,* 70:1-12. All ASMs in all Kohl's are expected to follow Kohl's "Best Practices". Mantz[12] Dep., Ex. Q at 29-30, 31. Shields Dep, Ex. B at 69-70. According to the Kohl's Job Description, all ASMs must "ensure execution according to Kohl's Best Practices." Kohl's Position Descriptions of 2012 and 2018, Ex.'s N and O. Kohl's counsels ASMs if they do not follow Best Practices. *Id.*, 76:4-77:1. Collins Dec., Ex. E, ¶20. Luseni Dec., Ex. F, ¶14. Peterson Dec., Ex. G, ¶11. Johnson Dec., Ex. H, ¶11. Stevenson Dec., Ex. I, ¶7,13. Watson Dec., Ex. J. ¶13. Portillo Dec., Ex. K, ¶11. Swaim Dec., Ex. L, ¶14. Mariani Dec., Ex. M, ¶12. Typical of large department stores, Kohl's issues these uniform directives from its corporate office to each store that mandate the duties and tasks of ASMs and strictly control how those duties and tasks are performed regardless of the individual store's location. The "Best Practices" are sent from the corporate offices to all Kohl's stores nationwide and all Kohl's ASMs are expected to follow them. Mantz Dep., Ex. Q at 33. There are "Best Practices" for everything such as "Continuing Flow Best Practice Merchandising," "Fitting Room, Recovery and Replenishment Best Practice," "Price Change Consolidation," "Return to Vendor Best Practice for Jewelry and Watches," "Callbacks," "Return to Vendor Best Practice," "General Merchandise Callbacks," and "Return to Vendor Best Practice Damage and Defective General Merchandise." *Id.* at 36.

All ASMs are expected to follow "Best In Class" which are derived from the corporate offices and dictate to the stores the best way to set up their stockrooms. *Id.* at 41-42, 48-49. All ASMs in all Kohl's stores [are] expected to utilize the best in class document. *Id.* at 42. Kohl's corporate offices issue planograms, communication books and merchandising books to all of its stores nationwide and all ASMs are expected to "apply that direction" as contained in the planograms, merchandising books and communication books. *Id.* at 52-53. Further, the

---

[12] Kevin Mantz, Vice President of Store Finance, Staffing and Process Improvement, testified on behalf of Kohl's regarding the corporate policies that the ASMs in Kohl's were required to follow in 2014.

planograms, strike points and directives contained in the communication books and merchandising books are to be followed by all ASMs. *Id.* at 55-57. Kohl's sends out the Communication Books to every store every month, and they lay out in detail how Kohl's wants each department merchandised. Collins Dec., Ex. E, ¶37. Luseni Dec., Ex. F, ¶30. Peterson Dec., Ex. G, ¶26. Johnson Dec., Ex. H, ¶25. Stevenson Dec., Ex. I, ¶27. Watson Dec., Ex. J, ¶27. Portillo Dec., Ex. K, ¶25. Swaim Dec., Ex. L, ¶30. Mariani Dec., Ex. M, ¶28.

Kohl's also has uniform planning procedures, including a "KPlanner." Kohl's corporate headquarters created "KPlanner", and it is used by all ASMs in all Kohl's stores. Shields Dep., Ex. B at 61-62, 78, 81-82; Mantz Dep., Ex. Q at 57. "The KPlanner is the software that Kohl's implemented to organize tasks into one comprehensive to-do list for the stores to execute ..." Mantz Dep., Ex. Q at 57. It is a calendar which Kohl's requires ASMs to use on the computer to organize and plan their tasks every day. Kohl's corporate office put the tasks on the list for ASMs, and requires them to check off the tasks as they do them, and this enables Store Managers and other Managers to check up on ASMs and whether they are completing the required tasks. Collins Dec., Ex. E, ¶36. Luseni Dec., Ex. F, ¶29. Peterson Dec., Ex. G, ¶25. Johnson Dec., Ex. H, ¶24. Stevenson Dec., Ex. I, ¶26. Watson Dec., Ex. J, ¶26, Portillo Dec., Ex. K, ¶24, Swaim Dec., Ex. L, ¶29, Mariani Dec., Ex. M, ¶27. The KPlanners have project names, project titles, and end dates that the project must be completed by. Mantz Dep., Ex. Q at 62, 66-67. This tool derives from Kohl's corporate office in Wisconsin. Shields Dep. 81:16 – 82:3

All ASMs are expected to abide by the Kohl's corporately derived core values in the course of their daily business. Mantz Dep., Ex. Q at 63 and 64. All Kohl's ASMs are expected to follow the corporate based customer philosophies including the "Five Basics, which cover signing, sizing, clean, clearance and replenishment, GREAT, Smile and Say Hi, Yes We Can."

Mantz Dep., Ex. Q at 66-69. All ASMs nationwide must use the Loss Prevention Management Checklist that is derived from the corporate office. Shields Dep. Ex. B at 85. Kohl's corporate offices created the "Associate Handbook," a set of corporate rules and procedures that also apply to all ASMs nationwide. *Id.* at 96-99; Associate Handbook, Ex. R. Collins Dec., Ex. E, ¶7, 17. Luseni Dec., Ex. F, ¶11. Peterson Dec., Ex. G, ¶8. Johnson Dec., Ex. H, ¶8. Stevenson Dec., Ex. I, ¶10. Watson Dec., Ex. J, ¶10, Portillo Dec., Ex. K, ¶8, Swaim Dec., Ex. L, ¶11, Mariani Dec., Ex. M, ¶10. Kohl's corporate has also promulgated many other corporate policies which are available to any ASM nationwide through the Kohl's intranet - called K-NET - and expected to be followed by all ASMs. Mantz Dep., Ex. Q at 33-34, 40, 42, 44, 46, 48, 58.

All of Kohl's corporate policies, procedures, Best Practices and Processes, Best in Class, KPlanner, merchandising books, planograms, communications books, and associate handbooks cover almost every detail of how the Kohl's stores are expected to be run and support the Plaintiffs' claim herein that the ASMs are all similarly situated.

###    v.    Scheduling

Kohl's schedules all ASM's similarly. ASMs were all scheduled to work five days per week and a minimum of 9-hour days (or 45 hours per week) but frequently worked 50-60 hours per week. During the period from mid-November to the end of December ASMs worked six days per week. Collins Dec., Ex. E, ¶21. Luseni Dec., Ex. F, ¶15. Peterson Dec., Ex. G, ¶12. Johnson Dec., Ex. H, ¶12. Stevenson Dec., Ex. I, ¶14. Watson Dec., Ex. J, ¶14, Portillo Dec., Ex. K, ¶12, Swaim Dec., Ex. L, ¶15, Mariani Dec., Ex. M, ¶13.

Kohl's puts pressure on its Store Managers to keep labor costs down, such that they usually send hourly workers home before their scheduled shifts are over and they frequently do not replace an hourly worker who calls out sick during the work week. Instead, they simply rely

on their ASMs who are paid a flat salary to pick up the slack and perform the non-exempt work of the absent hourly associates (such as running the cash register). Collins Dec., Ex. E, ¶31. Luseni Dec., Ex. F, ¶23-25. Peterson Dec., Ex. G, ¶20. Johnson Dec., Ex. H, ¶20-21. Stevenson Dec., Ex. I, ¶22. Watson Dec., Ex. J, ¶22, Portillo Dec., Ex. K, ¶20-21, Swaim Dec., Ex. L, ¶23, Mariani Dec., Ex. M, ¶21. Because of Kohl's understaffing and its practices of sending hourly workers home early and not replacing them when they called out, ASMs end up working approximately 50-60 hours each week, and spending more than 50 percent of their time on hourly labor and non-management work and less than 50 percent of their time actually involved in management functions. Collins Dec., Ex. E, ¶32. Luseni Dec., Ex. F, ¶26. Peterson Dec., Ex. G, ¶22. Johnson Dec., Ex. H, ¶7, 22. Stevenson Dec., Ex. I, ¶23. Watson Dec., Ex. J, ¶14, 23. Portillo Dec., Ex. K, ¶22, Swaim Dec., Ex. L, ¶26, Mariani Dec., Ex. M, ¶24.

### vi. Supervision

Kohl's subjects all of its ASMs to close and direct supervision. Their immediate supervisors are the Store Managers who work in their stores and who closely and directly review, monitor and supervise their work. They walk the store multiple times each day inspecting the work performed by ASMs and giving them feedback. Kohl's also uses corporate audit teams to audit and inspect the work performed by store personnel including ASMs. These inspections form a part of the annual evaluations of ASMs. Kohl's uses one common performance appraisal form for all of its ASMs around the country. Shields Dep., Ex. B, 99:5-25. Kohl's also uses one set of "counseling guidelines" which is corporately derived and applies to all ASMs in all stores nationwide. *Id.* at 104:18-105:3.

Kohl's also closely supervises ASMs according to the payroll budgets Kohl's sets for each store each week. Kohl's tracks each store's payroll each week and each month to determine

if that store is keeping its payroll under the budget it set. Each store has to use its ASMs to do hourly work in order to meet its payroll budget obligations. Collins Dec., Ex. E, ¶29. Luseni Dec., Ex. F, ¶22. Peterson Dec., Ex. G, ¶19. Johnson Dec., Ex. H, ¶19. Stevenson Dec., Ex. I, ¶21. Watson Dec., Ex. J, ¶21, Portillo Dec., Ex. K, ¶19, Swaim Dec., Ex. L, ¶22, Mariani Dec., Ex. M, ¶20. Kohl's sends ASMs to district meetings from time to time where they meet other ASMs from other stores with similar jobs who also spend most of their time on hourly work. To meet budget obligations, ASMs typically do whatever necessary to keep hourly payroll dollars down, and thus manual labor tasks often fall on ASMs. Collins Dec., Ex. E, ¶18. Luseni Dec., Ex. F, ¶12. Peterson Dec., Ex. G, ¶9. Johnson Dec., Ex. H, ¶9. Stevenson Dec., Ex. I, ¶11. Watson Dec., Ex. J, ¶11, 21-22. Portillo Dec., Ex. K, ¶9. Swaim Dec., Ex. L, ¶24. Mariani Dec., Ex. M, ¶11. Store Managers emphasize the importance of getting merchandise off the trucks, out of the back room and onto the floor over the few management tasks that ASMs perform. Collins Dec., Ex. E, ¶34. Luseni Dec., Ex. F, ¶27. Peterson Dec., Ex. G, ¶23. Johnson Dec., Ex H, ¶6. Stevenson Dec., Ex. I, ¶24. Watson Dec., Ex. J, ¶24, Portillo Dec., Ex. K, ¶6, Swaim Dec., Ex. L, ¶27, Mariani Dec., Ex. M, ¶25.

### vii.    Compensation

All Kohl's ASM's nationwide are paid on a salaried basis without overtime; are eligible for the same 401(k) plans, incentive plan, and medical insurance; and are subject to the same sick leave, holiday, and vacation policies. Shields Dep., Ex. B at 54-56 and 114-119. Kohl's also has a uniform bonus program for ASMs. Collins Dec., Ex. E, ¶19. Luseni Dec., Ex. F, ¶13. Peterson Dec., Ex. G, ¶10. Johnson Dec., Ex. H, ¶10. Stevenson Dec., Ex. I, ¶12. Watson Dec., Ex. J, ¶15, Portillo Dec., Ex. K, ¶10, Swaim Dec., Ex. L, ¶13.

All ASMs at all Kohl's stores nationwide are paid on a salary basis and do not receive overtime regardless of the store, district, region, territory, numbers of employees in the store, number of executives in the store, sales volume of the store, prior experience of the ASMs, training received by ASMs, shifts, duties, tasks, and/or responsibilities of the ASMs. Shields Dep., Ex. B at 54-56. Kohl's maintains a common corporate policy to pay no overtime to any ASMs for the hours they work in excess of 40 in a workweek. Instead of properly paying overtime, Kohl's classifies all ASMs as exempt from the FLSA's overtime provisions, while expecting ASMs to work overtime hours without any additional compensation. Shields Dep., Ex. B at 55-56. Collins Dec., Ex. E, ¶22. Luseni Dec., Ex. F, ¶16. Peterson Dec., Ex. G, ¶13. Johnson Dec., Ex. H, ¶13. Stevenson Dec., Ex. I, ¶15. Watson Dec., Ex. J, ¶15, Portillo Dec., Ex. K, ¶13, Swaim Dec., Ex. L, ¶16, Mariani Dec., Ex. M, ¶14. Kohl's pays its ASMs only a little more than some of the hourly workers beneath them in the store hierarchy. Collins Dec., Ex. E, ¶38-39. Luseni Dec., Ex. F, ¶31. Peterson Dec., Ex. G, ¶27. Johnson Dec., Ex. H, ¶26. Stevenson Dec., Ex. I, ¶28. Watson Dec., Ex. J, ¶28, Portillo Dec., Ex. K, ¶26, Swaim Dec., Ex. L, ¶31, Mariani Dec., Ex. M, ¶29.

## IV. DISCUSSION

### a. Conditional Certification Under The FLSA

Plaintiffs move this Court to conditionally certify the following class:

**All persons who have worked for Defendant as Assistant Store Managers in the United States from May 18, 2015 to the date the court grants this motion.**

Plaintiffs have certainly provided sufficient evidence to meet their modest factual burden. Plaintiffs are similarly situated to other ASMs with respect to the work they perform as demonstrated by their declarations, Defendants' job descriptions and other documents, and Defendants' own testimony.

24

First, the ASMs are all similarly situated with respect to the nature of their jobs. They are assigned so much work and are so badly understaffed that they spend more than half their time on non-management tasks. The work that Plaintiffs and the ASMs' work mostly consists of non-managerial tasks, and this is true in different departments and locations. Plaintiffs and the ASMs receive the same training across stores, review the same training materials, receive the same policies and procedures, and are subject to discipline when those same policies and procedures are not followed. The few managerial tasks which Plaintiffs and other ASM's perform are minimal regardless of location or department. ASM's have little to no discretion in executing the few managerial tasks they do perform, and this does not change depending on departments or locations. The ASM position consists mostly of non-managerial duties because of Kohl's nationwide policy of reducing associate payroll costs with its "lean staffing" business model. Across all stores and departments, Kohl's stores are chronically understaffed because they do not replace or arrange for coverage for when hourly workers call out, or hourly workers are sent home early when their non-managerial work can be completed by the ASMs. This intentional business strategy of minimizing payroll costs through "lean staffing" has resulted in their ASMs shouldering the burden of the manual labor necessary to fulfill the ASMs main responsibility at all stores: getting merchandise off the trucks, into the store, and then out onto the floor. As a result, ASMs are in the position of performing predominantly non-managerial tasks and working excessive hours without overtime compensation since they are also uniformly classified as exempt by Kohl's.

Second, the ASMs are all similarly situated in that they are all closely supervised pursuant to Kohl's uniform store hierarchies, uniform audit procedures and uniform performance evaluation programs. They are all evaluated under the same criteria, must follow the same rules,

and are all disciplined if they do not follow those rules. ASMs' immediate supervisors and corporate audit teams closely and directly review, monitor and supervise ASMs walk the store multiple times daily, inspecting ASMs' work and giving feedback. These inspections form a part of the annual evaluations of ASMs. Kohl's uses one common performance appraisal form for all of its ASMs around the country, and one set of counseling guidelines, which is corporately derived and applies to all ASMs in all stores nationwide. Kohl's also closely supervises ASMs according to the payroll budgets Kohl's sets for all their stores each week. Kohl's tracks each store's payroll each week and month to check that payroll is under the budget, and ASMs do whatever work is necessary to protect against any manual labor shortage, requiring the ASMs to do everything from unloading the trucks to cashier duty. Store Managers emphasize the importance of getting merchandise off the trucks, out of the back room and onto the floor over the few management tasks that ASMs perform.

Third, Kohl's ASMs are similarly situated with respect to their compensation scheme. Kohl's pays all its ASMs only a little more than the nonexempt employees as a result of Kohl's uniform compensation policies. Kohl's pays all ASMs on a salaried basis without overtime regardless of the store, district, region, territory, numbers of employees in the store, number of executives in the store, sales volume of the store, prior experience of the ASMs, training received by ASMs, shifts, duties, tasks, and/or responsibilities of the ASMs. Kohl's ASMs are all eligible for the same 401(k) plans, incentive plan, and medical insurance. Kohl's provides all ASMs the same sick leave, holiday, and vacation policies. Kohl's provides all ASMs the same bonus program. Kohl's classifies all ASMs as exempt from the FLSA's overtime provisions, while expecting ASMs to work overtime hours without any additional compensation.

The evidence here, which includes Rule 30(b)(6) admissions by Kohl's corporate designees, Kohl's corporate documents, and declarations from several Opt-ins from multiple states and departments – is more than is present in most "assistant manager" misclassification FLSA collective actions involving national retail chain stores where conditional certification was granted, in this Circuit and others. *See, e.g., Indergit v. Rite Aid Corp*., No. 08 CIV. 9361 (PGG), 2010 WL 2465488 (S.D.N.Y. June 16,2010) (approving notice to 8,400 nationwide (except California) store managers based upon three affidavits and corporate documents); *McKee v. PetSmart, Inc.*, No. CV 12-1117-SLR, 2013 WL 6440224 (D. Del. Dec., 9, 2013) (certifying a Collective action for 465 stores, in 44 states, for assistant store managers with 3 plaintiffs); *Mendoza, v. Ashiya Sushi 5, Inc.*, No. 12-civ-8629, 20 WL 5211839 (S.D.N.Y. Sept. 16, 2013); *Goodman v. Burlington Coat Factory*, 2012 WL 5944000 (D.N.J. Nov. 20, 2012) (certifying a 44-state, 465 location assistant manager collective action based upon a single Rule 30(b)(6) deposition, three assistant manager depositions, two declarations, and corporate documents); *Moran v. Café Cacao, Inc*., No. 11-civ-8384 (S.D.N.Y. Nov. 19, 2012); *Ferreira v. Modell's Sporting Goods, Inc.*, 2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012) (reconsid. den'd, 2013 U.S. Dist. LEXIS 48489 (S.D.N.Y. Mar. 28, 2013) (granting conditional certification in a multistate assistant manager misclassification case with deposition testimony from one plaintiff, several assistant manager declarations, and documentary evidence of uniform exemption policies); *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 228 (D. Conn. 2012) (approving a five state assistant store manager conditional certification and notice based upon five declarations, one Rule 30(b)(6) deposition, and corporate documents); *Diaz v. S&H Bondi's Dept. Store,* 2012 U.S. Dist. LEXIS 5683 (S.D.N.Y. Jan. 18, 2012) (granting conditional certification based only on 5 affidavits); *Reyes v. New Homestead Home for Adults, Inc.*, 10-civ-8297 (S.D.N.Y. Jan. 17,

27

2012); *Ibea v. Rite Aid Corp.*, 2012 U.S. Dist. LEXIS 4682 (granting cond'l cert. based on corporate documents and testimony of plaintiff and six opt-ins); *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 643-44 (S.D.N.Y. Dec., 14,2010); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317,331 (S.D.N.Y. 2010) ("Complaint and [plaintiff's] Affidavit are sufficient to warrant preliminary certification of a collective action in this case"); *Craig v. Rite Aid Corp.*, No. 08-CV-2317, 2009 U.S. Dist. LEXIS 114785 (M.D. Pa. Dec., 9, 2009) (cond'l cert. for nationwide FLSA collective action of more than 8,000 assistant managers based on plaintiff's pleadings, uniform job advertisements, and the affidavits (no depositions) of assistant managers from eight states); *Francis v. A&E Stores, Inc.,* 2008 U.S. Dist. LEXIS 83369 (S.D.N.Y. Oct. 15, 2008) (granting conditional certification based upon a single affidavit and deposition testimony that job duties were similar at all stores).

 Once the Plaintiff meets its burden, as the Plaintiffs do here, the inquiry stops, and Courts refuse to consider the defendant's typical arguments regarding any alleged differences among the Plaintiffs and the potential collective action members. *See Griffith v. Fordham Fin. Mgmt.*, 2013 U.S. Dist. LEXIS 72909 (S.D.N.Y. May 22, 2013), at *3 (S.D.N.Y. May 22, 2013) (discounting defendant's contravening evidence); *Ruffin v. Avis Budget Car Rental, LLC*, Civil Action No. 11-01069 (SDW)(MCA), 2012 U.S. Dist. LEXIS 89651 at *3 (D.N.J. June 28, 2012) ("Although [defendant] maintains that shift managers' duties and responsibilities differ depending on a number of factors including the location, location size, rental volume and geography, these variations are not evident in the job descriptions [defendant] promulgates.") (internal citations omitted).

 In fact, a motion for conditional certification was granted against the Defendants in the instant matter on the basis that Kohl's acknowledged through their own job descriptions and

training materials that at least some ASMs consistently spend substantial time engaged in non-managerial tasks:

> Kohl's own documents acknowledge that ASMs nationwide are expected to perform at least some non-exempt work. … The most recent job description sets forth tasks "to be [d]elegated" but nonetheless acknowledges that **"[d]uring the course of business and general management of the store, there may be situations that require non-exempt tasks to be physically completed by management. This is limited to situational training to further enhance Associate development, while providing leadership and direction related to Kohl's best practices and while providing a visual experience when directing workflow to Associates."** Position Descriptions at Bates KCO_04572. Moreover, an ASM leadership training document submitted by Kohl's describes a "70/30 rule," which provides that "no more than 30 percent of your time should be spent performing activities that are classified as non-leadership." Def. Ex. S. at Bates KCO_01232. That document further states that "[i]f you find you are consistently spending more than 30% of your workday doing instead of leading, you aren't being as effective as you could be. That's because while you are doing the tasks, you are not teaching the team how to do the tasks themselves." Id. at Bates KCO_01233. This is essentially an acknowledgment by Kohl's — important enough to be a part of nationwide training available to ASMs — that at least some ASMs consistently spend more than 30 percent of their time engaged in non-managerial tasks. While Kohl's position is of course that ASMs must meet these expectations, see Def. Br. at 10-11, the Court concludes that this acknowledgment, when coupled with the evidence described below, is enough for it to determine that conditional collective action certification is warranted.

*Costello v. Kohl's Ill., Inc.*, No. 1:13-CV-1359-GHW, 2014 U.S. Dist. LEXIS 124376, at *14-16 (S.D.N.Y. Sep. 4, 2014) (Ex. S, emphasis added)[13].  The job postings taken from the internet just this week indicate that Kohl's has not changed in describing its positions and repeats the exact same language with added emphasis above.  Kohl's 2018 Position Descriptions, Ex. O.

*Myers* held conditional certification appropriate where "there are other employees…who are **similarly situated with respect to their job requirements and with regard to their pay provisions** on which the criteria for many FLSA exemptions are based, **who are classified as exempt pursuant to a common policy or scheme.**" 624 F. 3d at 555 (internal quotations and

---

[13] The plaintiff in *Costello* sought conditional certification of AA and CFH ASMs.  Plaintiffs here are requesting three more additional categories (HR, Overnight, and CFH Ops ASMs) based upon additional evidence obtained and cited.  Plaintiffs here may seek to include other categories of ASMs if warranted by discovery.

citations omitted, emphasis added); *Lassen* at *14-5 (granting conditional certification where plaintiffs were "subject to the **same commission-based compensation policy…[and]…same basic job duties and workplace policies…who did not receive overtime pay…**").  *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007) (holding employees 'similarly situated' where employer subjected putative class to "**common scheme or plan [and] same job description and function and classified as exempt**…" (emphasis added).

The job duties do not need to be identical.  *See Perkins*, 669 F. Supp. 2d 212, 219 (granting notice to putative class even where duties not identical, but "on balance, similarities outweigh the differences").  "The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated."  *See also Scott* v. *Aetna Services, Inc.,* 210 F.R.D. 261, 268 (D. Conn. 2002) (granting conditional certification where "**actual job duties of the plaintiffs are quite similar…** Aetna classifies the employment of the plaintiffs in a **single job category**, i.e., "Systems Engineer," **lists the job duties** of the Systems Engineers in one document – the "Matrix" – and **applies a blanket overtime exemption policy...**" *Scott*, 210 F.R.D. at 264 (emphasis added).  Here the 2018 job postings indicate the jobs may actually be identical, but that is not necessary for Plaintiffs to meet their burden.  In short, Plaintiffs have plainly met the ***Hertz*** requirements of showing "some" evidence of similar job requirements and pay provisions for a misclassification claim - indeed, far from showing "some" evidence, there is substantial such evidence presented here, and, in several different forms.  As such, the court should grant conditional certification so that notice may be issued.

### b.  Plaintiff's Proposed Notice Process.

When a motion for conditional certification is granted, notice to the class should be ordered.  Notice is intended to be issued early in the course of a collective action to establish the

contours of the action and to further the broad remedial purpose of the FLSA. *See Hoffman-LaRoche v. Sperling*, *supra,* 493 U.S. at 171 (discussing importance of early notice in collective actions in order to "ascertain the contours of the action at the outset"); *Hoffman v. Sbarro, Inc.*, *supra,* 982 F.Supp. at 263 (refusing to postpone notice until discovery completed because the "FLSA's broad remedial intent favor[s] early notice to potential plaintiffs").

Pursuant to the express statutory language of the FLSA, as well as governing case law set forth above, current and former Assistant Store Managers are entitled to receive notice of the pendency of this action so that they may be advised of the issues involved in this suit and take appropriate action to protect their own rights and interests. The Court should direct that Defendant furnish the names, last known addresses, emails, phone numbers and dates of employment of all persons who have worked as Assistant Store Managers at any time commencing immediately preceding the filing of this motion until the present as soon as possible, so that notice can be expedited. Plaintiff has provided the Court with a proposed summary notice, proposed full notice, consent to join forms, and order, attached as Ex.'s T, U, V, and W, and requests that the Court order that such notice be sent to all ASMs employed by Defendants during the relevant time period.

Court-supervised notice is routinely granted in FLSA actions to further the statute's remedial purpose. *Cuzco v. Orio Builders,* 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007); *Soler v. G. & U., Inc.*, 568 F. Supp. 313, 316 (S.D.N.Y. 1983); *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674, 676 (S.D.N.Y. 1981). Indeed, the Second Circuit encourages the sending of notice to "similarly situated" individuals because it "comports with the broad remedial purpose of the [FLSA] . . . as well as with the interest of the courts in avoiding multiplicity of suits." *Braunstein v. Eastern Photographic Labs, Inc.*, 600 F.2d 335, 336 (2d Cir. 1979). Articulating

the benefits of a collective action, the United States Supreme Court has stated that accurate and timely notice concerning the pendency of a collective action is necessary in order for potential plaintiffs to make informed decisions about whether to participate in the litigation:

> Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.

*Hoffman-LaRoche, supra*, 493 U.S. at 170, 110 S.Ct. at 486, 107 L.Ed.2d 480. *See also Cook v. United States,* 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("[c]ertainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion. . . .  Without such notice prospective plaintiffs would be unaware of the action and their right to participate as class members.") (internal quotation and citation omitted).

Plaintiff requests a notice period of 90 days.  A period at least this long is appropriate. *See, e.g., Zheng Fang v. Yongjing Zhuang*, 2010 U.S. Dist. LEXIS 133618, at *13 (E.D.N.Y. Dec., 1, 2010) (authorizing notification to putative class members for 90-day period). The time period described above is appropriate because it accounts for the possibility of a short period of equitable tolling, for the reasons articulated above.  Because this case alleges a "willful" violation of the FLSA, the applicable statute of limitations is three years. 29 U.S.C. § 255(a); *see Aros* 269 F.R.D. at 181.  Plaintiff requests that the statute of limitations be tolled three years from the filing of this motion.  Courts routinely authorize notice for three-year periods.  *See Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 161 (N.D.N.Y. 2008).

Plaintiffs requests that the Court authorize them to send the Proposed Summary Notice, attached as Ex. T, to all individuals who have worked for Defendant as ASMs during the period

from May 18, 2015 to the present ("Potential Opt-In Plaintiffs"). The Court should also permit Plaintiff to enclose the proposed Full Notice Form, attached as Ex. U, to provide further explanation of the nature of the claims and answers to the most common questions a potential opt-in plaintiff may have. Plaintiff's proposed notices are "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. A proposed Opt-In Form for members of the potential collective action to fill out and return is also attached as Ex. V.

The Court should allow Plaintiffs to send notice to class members by email, as well as U.S. Mail. *See Pippins*, 2012 U.S. Dist. LEXIS 949, at *41 (ordering notice sent by email and finding that "given the reality of communications today . . . the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate"); *see also Kelly v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 157763, at *4-5 (N.D. Ill. Sept. 23, 2011) (authorizing dissemination of notice via mail, email, and website posting).

Plaintiffs should be permitted to enclose a self-addressed return envelope with postage prepaid. Several district courts throughout the country have allowed plaintiffs to include a prepaid return envelope. *Perrin v. Papa John's Int'l, Inc.*, 2011 U.S. Dist. LEXIS 117048, at *2 (E.D. Mo. Oct. 11, 2011) ("Numerous courts have held that enclosing a prepaid return envelope with the notice to potential class member[s] facilitates a plaintiff's ability to join the class and does not border on improper solicitation[.]"); *LaRocque v. Trs Recovery Servs.*, 2011 U.S. Dist. LEXIS 125108, at *9 (D. Me. Oct. 28, 2011) (approving postage-prepaid postcards to putative class members); *Lineras v. Inspiration Plumbing LLC,* 2010 U.S. Dist. LEXIS 117586 at *9-10 (E.D. Va. Nov. 3, 2010) (permitting plaintiffs to enclose a self-address postage prepaid envelope with collective action notice); *Putnam v Galaxy 1 Mktg.*, 276 F.R.D. 264, 277 (S.D. Iowa 2011); *Campbell v. Advantage Sales & Mtkg., LLC*, 2010 U.S. Dist. LEXIS 115065, at *13 (S.D. Ind.

Oct. 28, 2010); *Black vs. SettlePou P.C.*, 2011 U.S. Dist. LEXIS 15493, at *14 (N.D. Tex. Feb. 14, 2011).

The Court should permit Plaintiffs to send notice to collective members by text message. Courts in this district have allowed plaintiffs to send notice via text message in cases where the employer's business has "high turnover" characteristics.[14]  *Bhumithanarn v. 22 Noodle Mkt. Corp.*, 2015 U.S. Dist. LEXIS 90616, at *12-13 (S.D.N.Y. Jul. 13, 2015); *Kucher v. Domino's Pizza, Inc.*, 2017 U.S. Dist. LEXIS 213961, at *21 (S.D.N.Y. May 22, 2017) (allowing plaintiffs to distribute notice by text message) (internal quotations omitted); *Martin v. Sprint/United Mgmt Co.*, U.S. Dist. LEXIS 352, at *58-59 (S.D.N.Y. Jan. 4, 2016) (recognizing that courts "permit[] text message distribution where employer's business facilitated a high turnover rate among employees" and authorizing dissemination of notice by text); *Vasto v. Credico (USA) LLC*, 2016 U.S. Dist. LEXIS 60158, at *50-53 (S.D.N.Y. May 5, 2016) (Court was "prepared to grant plaintiff's request … to distribute the notice via email and text message" but directed the parties to agree on method of dissemination of the notice).  *See also Bhumithanarn*, 2015 U.S. Dist. LEXIS 90616, at *12 ("Notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action.")

Defendant also should be required to post the notice in its stores.  *See Jacob*, 2012 U.S. Dist. LEXIS 11053, at *29-30 (ordering notice posting "at all locations where ASMs work" and observing that "[c]ourts in this circuit also routinely grant such requests"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely

---

[14] Several district courts in other districts have permitted plaintiffs to disseminate notice by text message.  *See Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1129 – 1130 (D.N.M. 2017) (noting that text messaging is likely a more effective method of communicating with potential class members than traditional first-class mail); Eley v. Stadium Grp., LLC, 2015 U.S. Dist. LEXIS 126184, at *9 (D.D.C. Sept. 22, 2015) (allowing plaintiffs to send notice by text message); *but see Miller v. JAH, LLC,* 2018 U.S. Dist. LEXIS 2139, at *7-9 (N.D. Ala. Jan. 5, 2018) (expressing reservations about permitting plaintiffs to contact potential class by text, but not foreclosing it).

approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); *Moung Su Kim v. Kap Sang Kim*, 2010 U.S. Dist. LEXIS 72236, at \*5 (E.D.N.Y. July 19, 2010) (granting request to post notice at each of employer's business locations).

Finally, the Court should authorize Plaintiffs to mail a Court-authorized reminder postcard to all class members who have not yet opted-in to this matter within 30 days of the first notice mailing. It is well-documented that people often disregard collective action notices. *See* Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 295 (2008). Courts regularly authorize reminder notices to increase the chance that workers will be informed of their rights. *See Sanchez v. Sephora USA, Inc.*, 2012 U.S. Dist. LEXIS 99924, at \*18 (N.D. Cal. July 17, 2012) ("[C]ourts have recognized that a second notice or reminder is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in.") (citations omitted). Defendant has no reason to oppose a reminder mailing other than that it may increase the participation rate, which is not a good reason. Plaintiffs will bear the cost of the reminder mailing, and it will not change the end of the notice period.

V.     **CONCLUSION**

Plaintiffs have shown that there are Kohl's Assistant Store Managers who are "similarly situated" for purposes of notice under the FLSA.  Kohl's gives all its ASMs the same title (even though they work in different departments).  It trains them all the same way.  It assigns them to work in stores set up the same way.  It assigns similar primary duties.  It classified them all as "exempt" because of their status as Assistant Store Managers without conducting an individualized review of their duties.  It schedules them all for at least 45 hours per week but assigns them so much work and so badly understaffs their stores with hourly help that they usually work 50 or more.  Kohl's "lean staffing" policies chronically understaff their stores and rely heavily on Assistant Store Managers to do the hourly work left undone.  Most importantly, ASMs are all similar in ways material to the exemption.  They spend most of their time on non-management work.  They are closely and directly supervised and earn only a little more than the hourly workers.  This evidence more than meets the "modest factual showing" standard required to support a motion for notice under Section 216b of the FLSA.

For these reasons, Plaintiffs' motion should be granted.  Plaintiffs request this court to grant their motion, order Defendants to supply Plaintiffs with names and contact information for all ASMs during the last three years, approve the notice provided with this Motion and authorize a sixty (60) day notice period.  A proposed Order is attached as Exhibit W.

Plaintiffs, STACY COLLINS, individually
and on behalf of other similarly situated
individuals,


By:     /s/ Richard E. Hayber
        Richard E. Hayber (ct11629)
        Michael T. Petela (ct28251)
        The Hayber Law Firm, LLC
        221 Main Street, Suite 502
        Hartford, CT 06106
        (860) 522-8888 (telephone)
        (860) 218-9555(facsimile)
        rhayber@hayberlawfirm.com
        mpetela@hayberlawfirm.com

        /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan
        Peter Delano
        Lichten & Liss-Riordan, P.C.
        729 Boylston Street, Suite 2000
        Boston, MA  02116
        (617) 994-5800 telephone
        (617) 994-5801 facsimile
        sliss@llrlaw.com
        pdelano@llrlaw.com

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on **May 21, 2018**, a copy of the foregoing was filed electronically [and service made by certified mail to anyone unable to accept electronic filing]. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system [or by certified mail for anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

*/s/ Richard E. Hayber*
Richard E. Hayber