STACY COLLINS, individually and on behalf of other similarly situated individuals,

    *Plaintiffs*,

v.

KOHL'S DEPARTMENT STORES, INC., and KOHL'S CORPORATION,

    *Defendants*.

No. 3:18-cv-00065 (VAB)

**RULING AND ORDER ON MOTION TO TRANSFER VENUE**

Stacy Collins ("Plaintiff"), individually and on behalf of other similarly situated individuals, filed a Complaint in this Court against Kohl's Department Stores, Inc., and Kohl's Corporation ("Defendants" or "Kohl's") on January 11, 2018. Compl., ECF No. 1. On March 15, 2018, Kohl's moved to transfer this case to the United States District Court for the Eastern District of Wisconsin, Milwaukee Division ("Eastern District of Wisconsin"), arguing that the Eastern District of Wisconsin would be the most convenient venue. Mot. to Transfer, ECF No. 12.

For the reasons discussed below, the motion to transfer is **GRANTED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Ms. Collins, who lives in Connecticut, allegedly worked for Kohl's from June 2008 until October 19, 2017, in Enfield, Connecticut, and Manchester, Connecticut. Compl. ¶¶ 1, 12.

1

Kohl's is a Delaware corporation with a principal place of business in Menomonee Falls, Wisconsin. *Id.* ¶¶ 13–14. Kohl's owns and operates approximately 1,155 retail stores throughout the country. *Id.* ¶¶ 15, 18.

### A.     Factual Allegations

In June 2008, Kohl's allegedly hired Ms. Collins to work in its store in Enfield, Connecticut. Compl. ¶ 17. After going through management training, Ms. Collins allegedly was assigned to be the Children, Footwear and Home Assistant Store Manager. *Id.*

In 2014, Kohl's allegedly transferred Ms. Collins to its store in Manchester, Connecticut, where she also worked as the Children, Footwear and Home Assistant Store Manager until approximately July 2015. *Id.*

In August 2015, Kohl's allegedly assigned Ms. Collins to be an Assistant Store Manager of Human Resources and Operations in its Manchester, Connecticut, store. *Id.* She worked in that position until October 19, 2017. *Id.*

Ms. Collins alleges that Kohl's employs four types of Assistant Store Managers in its stores across the country: Assistant Store Manager of Human Resources and Operations; Children, Footwear, and Home Assistant Store Managers; Apparel and Accessories Assistant Store Managers; and Overnight Freight and Replenishment Assistant Store Managers. *Id.* ¶ 20. Ms. Collins alleges that the responsibilities for all types of Assistant Store Managers are essentially the same: to "perform mostly the non-exempt labor of the stores in which they work, including unloading trucks, unpacking merchandise, filling on-line orders, stocking shelves, customer service and operating cash registers." *Id.* ¶ 21.

Ms. Collins alleges that Kohl's classifies the Assistant Store Managers ("ASMs") as exempt from overtime, and that it pays them a weekly salary with no overtime compensation for

working more than forty hours in a week. *Id.* ¶ 22. The ASMs allegedly each report to a Store Manager, who is allegedly "the real management authority of the store," and who may schedule the ASM to work up to forty-five hours per week, but allegedly often schedule the ASM for fifty or more hours. *Id.* ¶ 23. In particular, Ms. Collins alleges, during the holiday season in November, December, and the first part of January, "Defendants schedule ASMs [to work] for six days and 54 hours per week." *Id.* ¶ 24. ASMs are also allegedly scheduled once annually to do inventory, which requires "approximately 60 hours of work." *Id.* ¶ 25.

Ms. Collins alleges that Kohl's classifies all ASMs as exempt from the overtime requirements of the Fair Labor Standards Act throughout its stores, based on the general job description of an ASM. *Id.* ¶ 28. Ms. Collins alleges, however, that "ASMs do not spend most of their time on exempt tasks," but rather spend most of their time "performing non-exempt duties, such as unloading freight, stocking shelves, filling on-line orders, ensuring that the merchandise was arranged according to company standards, counting inventory, and organizing the store." *Id.* ¶ 31.[1] Ms. Collins alleges that Kohl's has "classif[ied] its ASMs as exempt executives in disregard for the facts and the law," knowing that "the primary duty of the ASMs is not management and that the law does not permit employers to classify employees as exempt executives unless their primary duty is management," and knowing that "ASMs work more than 40 hours per week without overtime pay." *Id.* ¶ 33.

B.   **Procedural History**

On January 11, 2018, Ms. Collins filed this Complaint, "on behalf of herself and all other ASMs who have worked for Defendants around the country during the period beginning three (3)

---

[1] The Complaint repeats the numbering of paragraphs 30 and 31. *See* Compl. at 6. This citation refers to the first paragraph 31. All subsequent citations refer to the paragraphs as Plaintiffs labeled them in the Complaint.

years prior to the filing of this lawsuit until the date of final judgment in this matter." *Id.* ¶ 36.

Ms. Collins asserted a violation of the Fair Labor Standards Act, 21 U.S.C. § 201, *et seq.* (Count One), and a violation of the Connecticut Wage Act, Con. Gen. Stat. § 31-58, *et seq.* (Count Two). *Id.* ¶¶ 45–49. Under Count Two, Ms. Collins seeks relief under Connecticut law on behalf of "herself and on behalf of a class consisting of all ASMs in Connecticut during the period beginning two (2) years prior to the filing of this lawsuit until the date of final judgment in this matter." *Id.* at ¶¶ 38, 47–49

On March 15, 2018, Kohl's moved to transfer venue to the Eastern District of Wisconsin. ECF Nos. 12.[2] On April 5, 2018, Ms. Collins opposed the motion to transfer. ECF No. 29.

## II. STANDARD OF REVIEW

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See also Semente v. Empire Healthchoice Assurance, Inc.*, No. 14-cv-5644 (JMF), 2014 WL 4967193, at *1 (S.D.N.Y. Sept. 29, 2014) ("Even if venue is proper . . . the Court may still transfer the case to a more appropriate forum pursuant to Section 1404(a)."). A motion to transfer venue is "typically considered at an

---

[2] That same day, Kohl's also moved to dismiss for failure to state a claim and to strike the class and collective action allegations. Mot. Dismiss, ECF No. 13. In addition, in the following weeks, Ms. Collins filed an Amended Complaint, ECF No. 34, and then moved for preliminary certification of the putative class and for notice to be issued under 29 U.S.C. § 216(b), ECF No. 47. Kohl's then moved to strike the class and collective action allegations from the Amended Complaint. ECF No. 48. Although the parties appear to treat the Amended Complaint as the now-operative Complaint, the motion to transfer was filed based on the allegations in the original Complaint. ECF No. 1. The Court therefore refers to the allegations in the original Complaint. As the analysis below makes clear, however, the outcome of this motion would be the same, regardless of the version of Ms. Collins' Complaint.

4

early stage in a case." *Jones v. Walgreen, Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006) (citing *Smith v. Woosley*, 399 F.3d 428, 434 (2d Cir. 2005)).

The movant bears the burden of showing that "the balance of convenience strongly favors the alternate forum . . . [and] discretionary transfers are not favored." *Xiu Feng Li v. Hock*, 371 Fed. App'x 171, 175 (2d Cir. 2010) (internal quotation marks and citations omitted); *see also New York Marine and General Ins. Co. v. Lafarge North Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010) ("Although we have never explicitly approved a district court's use of the 'clear and convincing evidence' standard in ruling on a motion to transfer venue, the propriety of that standard to transfer-motions is evident. We have stated that the party requesting transfer carries the 'burden of making out a strong case for transfer.'") (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). Whether to grant a motion to transfer venue lies within the broad discretion of the district court and will be "determined upon notions of convenience and fairness on a case-by-case basis." *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992).

Within that discretion, the Court engages in a two-part inquiry when considering a motion to transfer venue under Section 1404(a).

"First, the court must determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court.'" *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (internal citations omitted).

Second, the court must consider whether to use its discretion to grant the transfer, in the interests of convenience and justice, by considering: "'(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the
5

availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.'" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)); *see also MAK Marketing, Inc. v. Kalapos*, 620 F. Supp. 2d 295, 307 (D. Conn. 2009) ("In determining whether transfer of venue is appropriate, district courts must engage in a two-part inquiry, asking: (1) whether the action 'might have been brought' in the proposed transferee forum and, if so, (2) whether the transfer promotes convenience and justice."). "Courts also routinely consider judicial economy, the interest of justice, and 'the comparative familiarity of each district with the governing law.'" *Synca Direct Inc. v. SCIL Animal Care Co.*, No. 15-cv-2332 (RJS), 2015 WL 3883281, at *1 (S.D.N.Y. June 22, 2015) (citing *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012)).

### III.  DISCUSSION

The Court first must consider whether the "action sought to be transferred is one that 'might have been brought' in the transferee court." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 394. Kohl's argues that this case could have been brought in the Eastern District of Wisconsin because its principal place of business is there. Mot. to Transfer at 5; Reply at 2. Ms. Collins does not dispute that the case could have been filed there. *See* Opp. to Mot. to Transfer. The Court agrees and finds that the Eastern District of Wisconsin would have been a proper venue for this case.

The Court must next determine whether the "transfer promotes convenience and justice." *See Kalapos*, 620 F. Supp. 2d at 307. The following factors inform that analysis:

> (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the

>       attendance of unwilling witnesses; and (7) the relative means of the
>       parties.

*Id.* at 308 (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006)). The Court also considers "(8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 516 (D. Conn. 2011).

Kohl's argues that the most convenient venue for this lawsuit is the Eastern District of Wisconsin, because its principal place of business is in Wisconsin—where its "Store Operations and Experience, payroll, finance, and IT personnel responsible for policies concerning the training, general experiences, pay and benefits of Assistant Store Managers" are all located. Mot. to Transfer at 1–2. In addition, Kohl's argues that less than two percent of its stores are located in Connecticut, and twice as many are located in Wisconsin. *Id.* More specifically, Kohl's argues that many of its employees who will serve as witnesses are located in the Eastern District of Wisconsin, and that discovery will be more easily conducted in Wisconsin, as the "locus of operative facts" is there. *Id.* at 6–10.

Kohl's also asserts that the convenience of the parties favors transfer because Ms. Collins's putative class action may involve assistant store managers from across the country, while all of the corporate employees from Kohl's who would be involved are located in the Eastern District of Wisconsin. *Id.* at 11. Moreover, Kohl's argues that Ms. Collins's choice of forum in this case is not entitled to deference, and that the relative means of the parties are neutral here. *Id.* at 12–13. Finally, Kohl's argues that both courts are equipped to adjudicate the federal question at issue (and that Ms. Collins's state claim will be "applied in the same manner" as the federal one), and that the Eastern District of Wisconsin's docket is relatively less congested than the District of Connecticut's docket. *Id.* at 13–14.

7

Ms. Collins, in response, asserts that the Court should defer to her choice of forum, the District of Connecticut. Opp. to Mot. to Transfer at 3. She also argues that the Court should wait to assess the convenience of the witnesses until after the Court conditionally certifies the case and the opt-in period closes. *Id.* at 5.

She asserts that, given modern technology, documents and other evidence are easily obtained in Connecticut, and the locus of operative facts may be spread throughout the United States where potential class members worked. *Id.* at 7, 9. She also asserts that transferring the case to Wisconsin inconveniences her more than maintaining the lawsuit in Connecticut inconveniences Kohl's, especially because she has fewer resources than Kohl's. *Id.* at 8–10. Finally, Ms. Collins argues that all federal courts are equally familiar with federal law, and therefore the case should remain in this federal court, and for the sake of trial efficiency, because this case has already begun in Connecticut, it should stay here. *Id.* at 10–11.

For the following reasons, the Court agrees with Kohl's and grants the motion to transfer.

As a preliminary matter, the Court considered delaying a ruling on the motion to transfer until the issue of class certification had been resolved, but recognized, as other courts have, that this approach creates other complications, and therefore addresses the motion now. *See Jones*, 463 F. Supp. 2d at 272 ("[A] decision on class certification will affect the nature of this case, and consequently the scope and timing of discovery, motion practice, and trial. As a result, the Court believes that the numerous issues raised by class certification are best left to the court that will have the responsibility of managing discovery, case schedule, motion practice, and trial."). Of course, if this case is not certified as a class action, this case could be transferred back to this Court for further proceedings. *Cf. id.* ("[Defendant] also represents to the Court that it consents

to a transfer of this case back to the District of Connecticut if the case is not certified as a class action.").

### A. Ms. Collins's Choice of Forum

Kohl's argues that, because Ms. Collins has filed a putative class action complaint, her choice of Connecticut as the forum for this case is entitled to less weight. Mot. to Transfer at 11 (quoting *Jones v. Walgreen*, 463 F. Supp. 2d 267, 274 (D. Conn. 2006)). Ms. Collins responds that her choice of venue is entitled to substantial deference because she lives and works here, and that her preference should be entitled to substantial deference. Opp. to Mot. to Transfer at 3–4 (citing *MAK Mktg. v. Kalapos*, 620 F. Supp. 2d 295, 308 (D. Conn. 2009); *Marcus v. Am. Contract Bridge League*, 562 F. Supp. 2d 360, 366 (D. Conn. 2008)).

Ms. Collins argues that "courts generally give 'substantial consideration' to a plaintiff's choice of forum." Opp. to Mot. to Transfer at 4. In support of this argument, she cites *Kalapos*, which, however, involved an individual plaintiff, MAK Marketing, Inc., not a putative class or collective action. 620 F. Supp. 2d at 308. Although "[o]rdinarily, a plaintiff's choice of forum is 'given great weight' in the analysis required by § 1404(a)," when the plaintiff brings a class action rather than an individual action, "her choice of forum is entitled to less weight." *Jones*, 463 F. Supp. 2d at 274 (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d at 107); *see also WorldCare Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 366 (D. Conn. 2011) ("[W]hen a plaintiff's claims are nationwide . . . the mere fact that a plaintiff selects one forum over others does not, without more, entitle the plaintiff's choice to controlling weight.") (quoting *Zinky Electronics, LLC v. Victoria Amplifier Co.*, No. 09-cv-26 (JCH), 2009 WL 2151178, at *4 (D. Conn. June 24, 2009)). Another case cited by Ms. Collins is a putative collective action, and the Court did give "great weight" to the plaintiff's choice of forum. *Marcus v. Am. Contract Bridge*

*League*, 562 F. Supp. 2d 360, 366 (D. Conn. 2008) (asserting claim under FLSA collective action provision).

In light of these cases and arguments, the Court gives some weight, but not substantial weight, to Ms. Collins's choice of venue.

### B.     The Convenience of the Witnesses

Kohl's argues that, to respond to Ms. Collins's allegations effectively, it will rely on testimony by its corporate employees, including individuals who are involved in developing the training materials, general expectations, parameters for rates of pay, benefits, paychecks, and payroll systems for Assistant Store Managers. Mot. to Transfer at 6–7. Those individuals, Kohl's argues, are located in Wisconsin. *Id.* at 7–8. Kohl's also argues that "Wisconsin would be a more convenient forum for most putative opt-in plaintiffs because Wisconsin is more centrally located than Connecticut." *Id.* at 7.

Ms. Collins responds that the Court should not determine the convenience of witnesses until after the opt-in period for this class action closes. Opp. to Mot. to Transfer at 5. She argues that, if the Court grants her anticipated motion to proceed as a collective action, opt-in witnesses "will be spread across the country," and "[t]he District of Connecticut is no more inconvenient a locale for a nationwide collective than is any other district." *Id.* at 5–6. Finally, Ms. Collins argues that the location of witnesses and corporate policies and procedures in Wisconsin does not clearly and convincingly warrant a transfer because there is "no evidence that any other of the witnesses Defendant has identified who reside in Wisconsin would be inconvenienced by testifying remotely." *Id.* at 6.

At oral argument, Ms. Collins also argued that the nature of this particular putative collective and class action is fact-bound in a way that ties this case to Connecticut and this region of the country, the Northeast, and not to Wisconsin. Ms. Collins argued that the claims asserted

10

in her Complaint require testimony from employees about the on-the-ground requirements of particular Assistant Store Manager positions in particular Kohl's stores—not testimony about the corporate policies that Kohl's has developed in Wisconsin, which Kohl's argues comply with FLSA. Moreover, at this point in the opt-in process, Ms. Collins argued, most opt-in plaintiffs are located in the Northeast, and Connecticut therefore is a more convenient forum for more of the plaintiffs who will assert that they were affected by an unfair labor practice at a Kohl's store.

The Court agrees with Kohl's and finds that the convenience of the witnesses favors transfer. "The most significant factor to be decided on a motion to transfer venue is the convenience of party and non-party witnesses." *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 465 (S.D.N.Y. 2002). "Parties seeking consideration of this factor must specify the identity of key witnesses and the nature of their likely testimony, and support these statements with affidavits." *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 517 (D. Conn. 2011).

Kohl's submitted a Declaration by Jennifer Hart, the Vice President of Shared Services at Kohl's, who works with the human resources department, which would be involved in: "developing and preparing the materials used in the training of various types of Assistant Store Managers"; developing expectations for Assistant Store Managers; setting the parameters for determining pay rates for Assistant Store Managers; determining benefits; and recording time, paychecks, and processing payroll for Assistant Store Managers. Hart Decl. at 2, ECF No. 12-2. At oral argument, however, Kohl's also acknowledged that it is unlikely that any of its corporate policies on its face violates FLSA. Those policies and the people who developed them—as opposed to the people who have implemented them at Kohl's stores—are, as a result, less likely to be the critical evidence at stake in this litigation. Rather, the witnesses who will testify to what

the ASMs in Connecticut, such as Ms. Collins, did on the job at Kohl's stores, as Ms. Collins has represented, would likely be in Connecticut.

If this case were limited to the operations of Kohl's in the State of Connecticut, then this argument would strongly favor this case remaining in the District of Connecticut. This case, however, is not limited to Connecticut. In addition to seeking to represent all ASMs in the State of Connecticut, through her claim under the Connecticut Wage Act, Ms. Collins also seeks to represent ASMs all over the country through her claim under the Fair Labor Standards Act. Compl. ¶¶ 36–37 (asserting nationwide collective action). And, the operative facts with respect to these class members are not likely to be in Connecticut or even the Northeast, because the overwhelming number of Kohl's stores are located elsewhere. *See* Compl. ¶¶ 15, 18 (alleging that Kohl's owns and operates approximately 1,155 retail stores throughout the country); Mot. Dismiss at 1 (explaining that Kohl's "owns and operates a national chain of more than 1,100 stores located in 49 states").

The vast presence of Kohl's stores outside of the District of Connecticut and hence, the vast presence of class members outside of the District of Connecticut, thus significantly favors transfer to Wisconsin. *See* Mot. Dismiss at 2 (explaining that "[l]ess than 2% of Kohl's department stores are located in Connecticut," "Wisconsin has almost twice as many Kohl's stores as Connecticut," and "[a]pproximately 27% of Kohl's stores are located in the Midwest, while only 13.7% are located in the Northeast").

### C. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

The Court also finds that "[t]he balance of interests [under this factor], albeit slight, favors transfer" to Wisconsin, because "most, if not all, of the relevant documentation in this case is located in Defendant's headquarters" in Wisconsin. *See Montgomery v. Tap Enterprises,*

12
Case 2:18-cv-00962-DEJ   Filed 06/11/18   Page 12 of 20   Document 61

*Inc.*, No. 06-cv-5788 (HB), 2007 WL 576128, at *4 (S.D.N.Y. 2007). Kohl's has established that documents and witnesses related to the employment of Assistant Store Managers are located in Wisconsin, not Connecticut. *See* Hart Decl. at 4.

Modern technology, however, allows documents to cross state lines without hassle. *See* Opp. to Mot. to Transfer at 6–7 (arguing that "modern photocopying technology and electronic storage deprive this issue of practical or legal weight") (quoting *MAK Mktg.*, 620 F. Supp. 2d at 310). The Court therefore finds that the fact that relevant documents are currently located in Wisconsin weighs only slightly in favor of transfer.

### D. The Convenience of the Parties

For Kohl's, Wisconsin, the location of its corporate headquarters and corporate employees, is more convenient. Mot. to Transfer at 11. For Ms. Collins, who argues that she has less means than Kohl's, Connecticut is more convenient. Opp. to Mot. to Transfer at 7 ("It is clear that a transfer to Wisconsin would shift inconvenience from Defendant to the named Plaintiff Collins."). Kohl's argues, however, that Ms. Collins's putative class and collective action complaint requires Kohl's to rely on its corporate employees, located in Wisconsin, while plaintiffs other than Ms. Collins will likely be located throughout the country. Mot. to Transfer at 11; *see also Jones*, 463 F. Supp. 2d at 277 (noting, among other factors, that "because Ms. Jones pursued this claim as a class action, the Court must consider the interests of other class plaintiffs, who are located throughout the country").

Even though, according to Ms. Collins, the case at this point involves a significant number of the opt-in plaintiffs from the Northeast—specifically Connecticut, Massachusetts, and New York—as one court rightly stated, this limited sample, one not likely geographically representative of the class as a whole, should not be the basis for this Court's decision. *See*

*Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 (SI), 2007 WL 4410408, at *5 (N.D. Cal. Dec. 14, 2007) ("At this point, it is simply too early to know exactly where all the class members reside, but the total number of potential class members paints a far more accurate picture of the eventual class than the first 16 [class members] who happened to have heard about the lawsuit through word-of-mouth. Were it otherwise, a party could engineer a favorable geographic distribution of opt-in plaintiffs for purposes of a transfer motion by selectively notifying potential class members in certain states."). Indeed, this Court, like that one, "will not rely [on] this haphazard group of opt-in plaintiffs in determining which venue is more convenient for the class." *Id.*

As a result, the Court therefore finds that this factor weighs in favor of transfer.

### E.     The Locus of Operative Facts

Kohl's argues that, "[b]ecause Plaintiff seeks to represent Assistant Store Managers located throughout the United States, Kohl's 'conduct in [Wisconsin] is material to all of the claims brought by Plaintiffs in the Complaint, whereas the events at each store location are primarily material as to only the individuals who worked there.'" Mot. to Transfer at 10 (quoting *Lafleur v. Dollar Tree Stores, Inc.*, 1:11-cv-8473 (MEA), 2012 WL 2280090, at *4 (N.D. Ill. June 8, 2012). Ms. Collins argues that "because this is a collective action, the locus of operative facts will be split amongst the districts in which the various class members worked." Opp. to Mot. to Transfer at 9.

The Court agrees with Kohl's. Similar to determining the convenience of witnesses, this factor requires the Court to consider the interests of a putative class of Assistant Store Managers and the facts associated with each Assistant Store Manager's particular job. Although the corporate policies and employees located in the corporate headquarters of Kohl's, in Wisconsin,

may be necessary evidence to determine whether Kohl's knowingly or willfully violated FLSA, the testimony of each Assistant Store Manager about his or her particular job will also be critical to the outcome of this litigation. *See Jones*, 463 F. Supp. 2d at 277 (noting that "[w]hile the locus of operative facts with respect to Ms. Jones is primarily in Connecticut, the Court must consider the fact that this case may become a nationwide class action" and finding that "because Ms. Jones alleges systemic and pervasive discrimination by Walgreens, the locus of operative facts is principally in Illinois").

Kohl's, however, at oral argument, acknowledged that its corporate policies are likely not the problem underlying this lawsuit, because, as far as Kohl's is concerned, it created policies in compliance with FLSA. Both parties represented at oral argument that the critical facts that will determine whether Assistant Store Managers are misclassified and therefore are owed overtime payments will depend on the testimony of the Assistant Store Managers. Those facts do not depend on a policy developed in the Kohl's headquarters in Wisconsin. *Cf. Jones*, 463 F. Supp. 2d at 278 (explaining that the plaintiff alleged "systemic and pervasive discrimination by Walgreens," resulting in "the locus of operative facts" being principally located at the Walgreens headquarters).

At this point in the case, the Assistant Store Managers are located in the Northeast and have hired counsel from the Northeast. The locus of operative facts attached to those individuals thus far is closer to Connecticut than Wisconsin. But, as discussed above, Ms. Collins has not chosen to bring a class and collective action to represent Kohl's Assistant Store Managers in just Connecticut, or even just the Northeast. Ms. Collins instead has brought a nation-wide lawsuit and therefore the locus of operative facts will be Kohl's stores all across the country. *See LaFleur*, 2012 WL 2280090, at *4 ("Although the two named plaintiffs worked in Illinois, the

15
Case 2:18-cv-00962-DEJ   Filed 06/11/18   Page 15 of 20   Document 61

significance of their work and underpayment here is diluted by the existence of thousands of other locations where similar events occurred."). Indeed, as alleged by Ms. Collins, Kohl's has stores in forty-nine of this country's fifty states. *See* Collective and Class Action Complaint at ¶¶ 18. As a result, this factor significantly favors transfer. *Cf. LaFleur*, 2012 WL 2280090, at *4 ("Dollar Tree's conduct in Virginia is material to all of the claims brought by Plaintiffs in the Complaint, whereas the events at each store location are primarily material as to only the individuals who worked there.").

### F. The Availability of Process to Compel the Attendance of Unwilling Witnesses

Ms. Collins argues that, because most of the third-party witnesses that would be compelled to testify in this case are employees of Kohl's, and it is unlikely that Kohl's employees would refuse to testify in Connecticut, this factor does not favor transfer. Opp. to Mot. to Transfer at 9–10. Kohl's, on the other hand, argues that because its corporate employees are largely in Wisconsin, and because a subpoena could compel them to travel only 100 miles, this factor favors transfer. Mot. to Transfer at 8.

Under Federal Rule of Civil Procedure 45(c)(1)(A), "[a] subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person." Kohl's has asserted in Ms. Hart's Declaration that at least one third-party, the former Director of Human Resources Operations and Human Resources Compliance, has knowledge related to the case and may need to be served with a subpoena, and that her last known address was within 100 miles of Menomonee Falls, Wisconsin. Hart Decl. ¶ 5.

The Court finds that this factor weighs slightly in favor of transfer because the only third-party witness that the parties have identified who may need to be commanded to testify by subpoena is likely living in Wisconsin.

### G. The Relative Means of the Parties

Kohl's argues that the relative means of the parties in this case are neutral because both parties are represented by counsel. Mot. to Transfer at 12. Kohl's also argues that, "to the extent that other employees are allowed to join this case as opt-in plaintiffs, it likely will be easier for them to litigate in Wisconsin than in Connecticut, since Wisconsin has twice as many Kohl's stores than Connecticut and there are far more stores in the Midwest and Western states than in the Northeast." *Id.* Ms. Collins, on the other hand, argues that Kohl's "cannot dispute that it possesses far greater financial resources than Plaintiff or any other individual who chooses to opt in to this case." Opp. to Mot. to Transfer at 10.

The Court recognizes that Ms. Collins, as an individual, presumably has less means than Kohl's to litigate this case. *See Cook v. Amedisys, Inc.*, No. 3:12-cv-1082 (WWE), 2013 WL 1409893, at *2 (D. Conn. Apr. 8, 2013) (finding, as part of analysis of convenience of witnesses and parties, that transfer "would require plaintiffs, who have less means than the corporate defendant, to travel an inconvenient distance to testify at their own trial" and therefore "this factor does not weigh in favor of transfer"). The Court therefore finds that this factor weighs slightly against transfer.

### H. The Forum's Familiarity with the Governing Law and Interests of Justice

Kohl's argues that the Eastern District of Wisconsin has a greater interest in trying this case because that court has an interest in regulating businesses and individuals in its own state. Mot. to Transfer at 12–13. Ms. Collins acknowledges that "[a]ll federal courts are deemed to be

17
Case 2:18-cv-00962-DEJ   Filed 06/11/18   Page 17 of 20   Document 61

equally familiar with federal law" and therefore argues that this factor is neutral. Opp. to Mot. to Transfer at 10; *cf. Wilson*, 821 F. Supp. 2d at 522 (finding that this factor weighed in favor of transfer because, although when a court has "jurisdiction over all parties, concerns about efficiency and the interests of justice would be neutral," if the original court lacks jurisdiction over a defendant, "this factor weighs very heavily in favor of transfer"). The Court agrees that this factor is neutral, given that both courts are familiar with the law and have an interest in regulating stores located in their respective districts. *See, e.g.*, *Jones*, 463 F. Supp. 2d at 278 (stating that the "parties agree that both potential forums are equally familiar with the governing law").

Kohl's also argues that the Eastern District of Wisconsin's docket is less congested than this District's docket. Mot. to Transfer at 14 (citing evidence that the Eastern District of Wisconsin has a lighter docket and that cases move more swiftly); *see also Montgomery*, 2007 WL 576128, at *5 (noting that, if the parties had submitted "evidence of circumstances, such as crowded docket conditions, that might militate a speedier prosecution of the action in one District as opposed to another," that factor might tilt the balance in this factor). Ms. Collins responds that transferring this case will cause additional delays because "among other things, the undersigned counsel will be forced to find and retain local counsel in either state." Opp. to Mot. to Transfer at 11.

The Court finds these factors—the forum's familiarity and the interests of justice—to be neutral. While Ms. Collins correctly notes that transfer may delay the case in the short run, given the span of the case, it may be more efficient to litigate in a district with a less congested docket. Still, this Court has the authority to appropriately pace cases on its docket. *See Deitz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (recognizing district court's inherent authority to manage its docket

18
Case 2:18-cv-00962-DEJ    Filed 06/11/18    Page 18 of 20    Document 61

with a "view toward the efficient and expedient resolution of cases"). The Court therefore does not find that these factors necessarily weigh in favor of transfer. In addition, both courts are familiar with and have an interest in the administration of federal law. These factors therefore are neutral.

### I. Whether Transfer Promotes Convenience and Justice

Based on the foregoing analysis, the Court in its discretion determines that transferring this case to the Eastern District of Wisconsin will promote convenience and justice, and grants the motion to transfer venue. *See* 28 U.S.C. § 1404(a) (permitting district court to transfer any civil action to another district where the action could have been brought, "[f]or the convenience of parties and witnesses, [and] in the interest of justice"); *see also Semente*, 2014 WL 4967193, at *1 ("Even if venue is proper . . . the Court may still transfer the case to a more appropriate forum pursuant to Section 1404(a).").

Ms. Collins's choice of forum slightly disfavors transfer. The location of documents weighs only slightly in favor of transfer. The convenience for the parties, however, weighs in favor of transfer. The availability of compulsory process weighs slightly in favor of transfer. The relative means of the parties weighs slightly against transfer. The forum's familiarity with the governing law and the interests of justice factors are neutral. Most critically, the convenience of the witnesses and the locus of operative facts, often cited as the two most important factors in the Court's analysis of whether to transfer a case, both weigh significantly in favor of transfer. *See, e.g.*, *Everest Capital Ltd.*, 178 F. Supp. 2d at 465 ("The most significant factor to be decided on a motion to transfer venue is the convenience of party and non-party witnesses."); *Pall Corp. v. PTI Technologies, Inc.*, 992 F. Supp. 196, 200 (E.D.N.Y. 1998) ("Where the operative facts occurred is an obvious factor to consider.").

Considering all of these factors together, the Court exercises its discretion and thus finds that the interests of convenience and justice favor transfer. *See Publicker Indus., Inc.*, 980 F.2d at 117 (noting that a motion to transfer will be "determined upon notions of convenience and fairness on a case-by-case basis"). The motion to transfer venue to the Eastern District of Wisconsin therefore is granted.

## IV.  CONCLUSION

For all of the foregoing reasons, Defendant's motion to transfer venue is **GRANTED**.

All other pending motions are **DENIED** without prejudice to renewal after the case is transferred. Specifically, Defendant's motion to dismiss, ECF No. 13, is denied without prejudice; Plaintiff's motion to certify class, ECF No. 47, is denied without prejudice; and Defendant's motion to strike class and collective action allegations, ECF No. 48, is denied without prejudice.

The Clerk of the Court is directed to transfer this case to the United States District Court for the Eastern District of Wisconsin, Milwaukee Division and close the case in this District.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of June, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE