# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

_____

STACY COLLINS, TIANGE LUSENI and   )
LISA PETERSON, individually and on   )
behalf of other similarly situated individuals,   )   CASE NO: 2:18-cv-00962-DEJ
     Plaintiffs   )
   )
v.   )
   )
KOHL'S DEPARTMENT STORES, INC. and   )
KOHL'S CORPORATION   )   July 9, 2018
     Defendants   )

_____

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR CONDITIONAL CERTIFICATION COLLECTIVE ACTION

Retail employers must pay overtime to their assistant store managers unless their primary duty is management. "[I]f the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register … are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement." 29 C.F.R. Sec. 541.700(c). Employees who share common job titles and position descriptions (even though they work in different departments) and who were all classified as 'exempt' pursuant to a common "one size fits all" decision are "similarly situated" for purposes of FLSA collective actions. *Scott v. Aetna Servs.*, 210 F.R.D. 261, 265 (D.Conn. 2002) (Droney, J.). Here, Kohl's classifies all its Assistant Store Managers ("ASMs") as exempt "executives" no matter what department they work in based on similar position descriptions, schedules all ASMs to work 45-hour work-weeks but gives them so much work that they usually work 50 hours or more, and assigns them mostly non-exempt tasks and so they actually "manage" less than 50 per cent of the time. Kohl's subjects all ASMs to close and direct supervision and pays them barely more than they pay their hourly workers.

Kohl's was sued for these same practices in 2013. *Costello v. Kohl's Ill., Inc.*, 2014 U.S. Dist. LEXIS 124376 (S.D.N.Y. Sep. 4, 2014), Ex. S, (granting motion for cond'l certification for ASMs from two departments and authorizing notice to approximately 3,500 ASMs nationwide). Plaintiffs now move for conditional certification under the FLSA so that all Kohl's ASMs nationwide have opportunity to learn of this lawsuit and join. All ASMs are the subject to Kohl's' common "exempt" classification and are "similarly situated" and entitled to be notified of this action and given an opportunity to join.

1

# I.    LEGAL PRINCIPLES

The Fair Labor Standards Act requires employers to pay overtime for every hour worked above forty (40) hours in a week.  Employers must pay employees overtime premiums unless the employee properly falls into one of the exemptions provided in the Federal Regulations. *Cooke v. General Dynamics Corp.*, 993 F. Supp. 56, 58 (D. Conn. 1997).  Employers can only classify their workers as "executives"—and therefore exempt from paying overtime—if they are truly "employed in a bona fide executive … capacity" and 29 U.S.C. § 213(a)(1).  The "bona fine executive" exemption is an affirmative defense on which the employer bears the burden of proof, and "[s]uch exemptions are narrowly construed by the courts." *Jackson v. Go-Tane Services, Inc.*, 56 Fed. App'x 267, 270 (7th Cir. 2003) (unpublished).  Retail employers must pay overtime to their assistant store managers unless their primary duty is management.[1]

Courts routinely grant conditional certification and issue notice at the beginning of an FLSA collective action like this one.  Indeed, the Supreme Court has made clear that notice is intended to issue early in the life of a collective action in order to further the FLSA's broad remedial purposes. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (discussing importance of early notice in collective actions).  Thus, conditional certification of a class routinely occurs at the very beginning of the case and well before discovery or other motion practice. *See Deem v. Triplett Striping, Inc.*, No. 11-CV-147, 2012 WL 5353607, at *2 (S.D. Ind. Oct. 30, 2012), *report and rec. adopted*, 2012 WL 5845328 (S.D. Ind. Nov. 19, 2012) ("Since [] conditional certification happens before discovery, Plaintiffs' factual allegations are accepted as true."); *Creely v. HCR ManorCare, Inc.*, 789 F.Supp.2d 819, 821-22 (N.D. Ohio 2011)

---

[1]    *See* 29 C.F.R. § 541.700(c) ("[I]f the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register … are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.").

2

("Generally, the burden at the first stage for conditionally certifying a collective action, and thereby allowing the distribution of opt-in notices, is fairly lenient and can even be met with a well-pleaded complaint prior to conducting discovery").[2]  District Courts in Wisconsin evaluate conditional certification under the FLSA as a two-step process. *Brabazon v. Aurora Health Care, Inc.*, No. 10-CV-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011).[3]

At the first step, "[t]he requirements of conditional certification are lenient because approval simply allows plaintiffs to provide notice to other potential class members so that they may make an informed decision whether to join the case." *Witteman v. Wisconsin Bell, Inc.*, No. 09-C-440, 2010 WL 446033, at *1 (W.D. Wis. Feb. 2, 2010).  As a result, a plaintiff must only make "a modest factual showing that she and potential class members were victims of a common policy or plan that violated the law." *Brabazon*, 2011 WL 1131097, at *2; *see also Smith v. Family Video Movie Club, Inc.*, 2012 WL 580775, at *2 (N.D. Ill. Feb. 22, 2012) ("At the initial step of the certification process, the plaintiffs are required only to make a *minimal showing* that others in the potential class are similarly situated.") (emphasis added). Put differently, "the plaintiff must offer modest proof of some factual nexus connecting her to other potential plaintiffs as victims of an unlawful practice." *Fosbinder-Bittorf v. SSM Health Care of Wisc., Inc.*, No. 11-C-592, 2013 WL 3287634, at *3 (W.D. Wis. Mar. 21, 2013) (internal quotations

---

[2]       The standard for obtaining authorization for notice, or conditional certification, under § 216(b) is much more lenient than the standard for obtaining class certification under Fed. R. Civ. P. 23. *Perez v. RadioShack Corp.*, 386 F.Supp.2d 979, 991 (N.D. Ill. 2005) (ethe FLSA's "similarly situated requirement has been interpreted as 'considerably less stringent' than that applied to class actions certified under Rule 23").

[3]       *See also Smallwood v. Ill. Bell Tel. Co.*, 710 F.Supp.2d 746, 750 (N.D. Ill. 2010 ("While the Seventh Circuit has yet to address how a district court should manage collective actions, the majority of courts … have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action.") (internal citation omitted).

3

omitted). It is not until the close of discovery that defendants may move the Court to determine if the members are in fact similarly situated. *Brabazon*, 2011 WL 1131097, at *2.

In addition, the determination at conditional certification "does not involve adjudicating the merits of the claims…." *Fosbinder-Bittorf*, 2013 WL 3287634, at *4; *Shiner v. Select Comfort Corp.*, 2009 WL 4884166, at *3 (N.D. Ill. Dec. 9, 2009) ("[A]t this stage of the collective action process, the Court must accept as true [plaintiff]'s description of his own day-to-day duties, which two other store managers corroborated, even if those duties were somewhat belied by the job description that Defendants presented."); *Marshall v. Amsted Indus., Inc.*, No. 10-CV-11, 2010 WL 2404340 (S.D. Ill. June 16, 2010) ("Conditional certification does not entail the district court adjudicating the *merits* of plaintiffs' claims. It is simply a finding that the claims are similarly situated enough to proceed as a collective action."). It is not whether the Plaintiff has established that an actual violation of the law has occurred, but rather "whether the proposed plaintiffs are similarly situated … with respect to their allegations that the law has been violated." *Brabazon*, 2011 WL 1131097 (internal citation omitted).

Because Plaintiff need not prove an actual violation at this early stage, courts rely on the complaint and any sworn statements submitted by the plaintiffs in determining whether the plaintiffs have met their burden. *Schroeder v. Humana Inc.*, No. 12-C-0137, 2012 WL 5931886, at *4 (E.D. Wis. Nov. 27, 2012). Plaintiff's burden is not heavy and may be met by a small number of sworn statements. *See Fosbinder-Bittorf*, 2013 WL 3287634 (four declarations); *Young*, 229 F.R.D. at 55 (one affidavit sufficient when potential opt-ins all have the same job and were all classified as exempt at over 108 facilities in 21 states); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-C-488, 2008 WL 5263750, at *4 (E.D. Wis. Dec. 18, 2008) (seven declarations sufficient to conditionally certify putative collective action of 4,000 employees);

4

*Schroeder,* 2012 WL 5931886, at *4 (five declarations); *Kelly,* 256 F.R.D. 626, 631 (five declarations).

Because this motion is made prior to substantial discovery, the "[c]onditional certification analysis does not require the court to make any findings of fact with respect to contradictory evidence presented by the parties, nor does the court need to make any credibility determinations with respect to the evidence presented." *Berndt* v. Cleary Bldg. Corp., No. 11-C-791, 2013 WL 3287599, at *7 (W.D. Wisc. Jan. 25, 2013) (internal quotations and citations omitted). As a result, any conflict between the parties' declarations is resolved, at least for purposes of conditional certification, in the plaintiff's favor. *Id*. (*citing Larsen v. Clearchoice Mobility, Inc.*, No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. Jul. 25, 2011)).

Wage and hour misclassification cases have been routinely conditionally certified under the FLSA by district courts, including cases where the employees claiming they were misclassified as exempt from overtime even though they work in different departments but share similar general job duties. In *Morrison v. Ocean State Jobbers, Inc*., 2010 U.S. Dist. LEXIS 48560 (D.Conn. 2010), the defendant was a retailer with 100 stores and employed ASMs in several different departments. The court conditionally certified the case because the plaintiff

> produced evidence demonstrating that all Ocean State Assistant Store Managers
> are required to work over 40 hours per week and do not receive overtime pay. …
> The plaintiff has also produced evidence demonstrating that there is a uniform,
> accurate job description of Assistant Store Managers at Ocean State, and
> that Ocean State's Assistant Store Managers spend 'the vast majority of [their]
> time (about 80 percent) performing manual labor and non-management duties.'

> *Id.* at *8; *see also, Betancourt v. Maxim Healthcare Services, Inc.*, No. 10-C-4763, 2011

WL 1548964, at *1 and 8 (N.D. Ill. Apr. 21, 2011) ("plaintiff has shown that defendant has a company-wide policy or plan of not paying overtime compensation to Recruiters in its Maxim Staffing division," which "is divided into 12 subdivisions and has approximately 124 offices

5

nationwide"); *Brunner v. Jimmy John's, LLC*, No. 14-C-5509, 2015 WL 13653079, at *2-3

(N.D. Ill. Dec. 11, 2015) (conditionally certifying a nationwide class of Assistant Store

Managers' claims that they were misclassified as overtime exempt and denied overtime pay

where plaintiffs submitted affidavits from multiple ASMs who experienced similar job duties

and pay practices) (citing *Watson v. Jimmy John's, LLC*, No. 15-CV-6010 (N.D. Ill. July 8,

2015) (conditionally certifying a similar class of ASMs)).[4]

## II.    FACTS

### a.   Kohl's Department Stores.

Kohl's Department Stores, Inc. (and Kohl's Corporation, hereafter "Defendants" or

"Kohl's") is a national retailer with approximately 1,158 stores in 49 states. *See* Kohl's 2017

Factbook, Ex. A, at 5-6. Its corporate headquarters is in Menomonee Falls, Wisconsin. *Id.* at 24.

Kohl's organizes its stores into four territories, 18 regions and 91 districts, which each contain

---

[4]     *See also Saleh v. Valbin Corp.*, 2017 WL 5000799, *6 (N.D. Cal. Nov. 2, 2017)
(conditionally certifying an FLSA class that included two job types with three job descriptions,
noting that "courts often conditionally certify collective actions that include multiple job types
and titles) (collecting cases) (*citing Coates v. Farmers Group, Inc.,* 2015 WL 8477918, *13
(N.D. Cal. Dec. 9, 2015) (conditionally certifying collective action comprising eleven job titles));
*Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 772 (S.D. Tex. 2015) (conditionally
certifying class of crew workers and their supervisors, holding that "[e]mployees with different
job titles are similarly situated for the purpose of an opt-in FLSA class when their day-to-day job
duties do not vary substantially"); *Lassen v. Hoyt Livery, Inc.,* 2014 U.S. Dist. LEXIS 129784,
*12 (D. Conn. 2014) (certifying FLSA collective and Rule 23 class action where plaintiffs were
"subject to the same commission-based compensation policy [and]…same basic job duties and
workplace policies…who did not receive overtime pay…."); *Aros v. United Rentals, Inc.*, 269
F.R.D. 176, 186 (D. Conn. 2010) (FLSA collective action conditionally certified for "operations
managers" at approximately 500 locations around the country based on declarations, a common
job description and corporate testimony that all operations managers were "denied overtime pay
without individual inquiry."); *Zaniewski v. PRRC Inc.*, 848 F.Supp. 2d 213, 230 (D.Conn. 2012)
(FLSA collective action conditionally certified for Assistant Store Managers at 47 of PriceRite's
supermarkets, "An objection at this preliminary stage to conditional classification based upon
individual employees' asserted different circumstances is clearly part of the FLSA defense bar's
play book, but it has not found favor with the courts, and it does not persuade this Court in this
case.").

approximately 12 to 14 stores. *See* Shields Dep., Ex. B, 36-37.[5]  Kohl's employs various territory and regional managers, as well as one district manager per district. Shields Dep., Ex. B, 40, 45. Within each store, Kohl's employs a store manager, up to five types of assistant store managers and various associates. Shields Dep., Ex. B, 45-46.

The executives in Kohl's corporate headquarters direct the administrative and business functions for the entire company, including, significantly, the classification of all employees at Kohl's.  Kohl's corporate offices direct the administrative and business functions for the entire company, including, as specifically relevant to this motion, the uniform job responsibilities of employees at Kohl's. Kohl's unified management of its stores is directed from the Corporate Offices, which in turn manage the Territory Managers, who supervise and oversee the Regional Managers, who in turn supervise and oversee the District managers. Shields Dep., Ex. B, at 36-38, 40-41 (detailing the corporate management hierarchy).

Kohl's business model and its meticulously cultivated brand depend on top-down control over its store operations to ensure that each store in the chain operates uniformly nationwide, regardless of location. Kohl's emphasizes its centrally mandated focus as follows: "An important aspect of [Kohl's] pricing strategy and overall profitability is a culture focused on **maintaining a low cost structure**. Critical elements of this low-cost structure are [Kohl's] unique store format, **lean staffing levels**, sophisticated management information systems and operating efficiencies which are the result of centralized buying, advertising and distribution.*" See* Kohl's Form 10-K for fiscal year ending February 1, 2014, Ex. C at 4 (emphasis added).  Kohl's emphasizes its

---

[5]     Plaintiffs herein offer excerpts from the deposition transcript of Ms. Genevieve Shields, who testified on behalf of Kohl's as its corporate designee on January 9, 2014 in the *Costello* litigation in the Southern District of New York.  Her testimony is relevant here because Kohl's has essentially the same 2012 Position Descriptions that were the subject of that litigation, except the 2018 postings are even more similar to one another.  *See* Exhibit O.

:family-focused, value-oriented department stores…that sell moderately priced exclusive and national brand apparel, footwear, accessories, beauty and home products. **Our stores generally carry a consistent merchandise assortment** with some differences attributable to regional preferences." *Id.* at 3 (emphasis added). Kohl's customer-centric concept - delivering the Kohl's experience - is also centrally dictated. "At Kohl's, in-store convenience includes a neighborhood location close to home, convenient parking, easily-accessible entry, knowledgeable and friendly associates, wide aisles, a functional store layout, shopping carts/strollers and fast, centralized checkouts. Though our stores have fewer departments than traditional, full-line department stores, the physical layout of the store and our focus on strong in-stock positions in style, color and size is aimed at providing a convenient shopping experience for an increasingly time-starved customer." *Id.* at 3-4.

Kohl's runs its stores from its headquarters in Wisconsin and applies uniform training and procedures to all of its stores. *See* Kohl's Legal Notices of May 12, 2016, Ex. D at 2. In every store, there is a Store Manager, and reporting to the Store Manager, Assistant Store Managers. Below the Assistant Store Managers were hourly associates, including Area Supervisors, Department Supervisors, Specialists and Associates. Every store is organized the same in terms of personnel and the layout of the store. Every store sells the same basic merchandise and had the same rules and procedure, including Kohl's Best Practices. They all received the same employee handbook. Shields Dep, Ex. B at 46, Collins Dec., Ex. E, ¶12-14.

### b. Plaintiffs and Opt-Ins

Plaintiffs Collins Luseni, and Peterson were employed by Kohl's as ASMs. Plaintiffs and opt-ins allege that they worked more than 40 hours per week, during which they performed primarily routine, non-managerial work. *See* Amended Complaint [Doc. 34], ¶41-44, Collins

Dec., Ex. E, ¶21. Luseni Dec., Ex. F, ¶15. Peterson Dec., Ex. G, ¶3, 6-7, 12. Johnson Dec., Ex. H, ¶12. Stevenson Dec., Ex. I, ¶14. Watson Dec., Ex. J, ¶14,19. Portillo Dec., Ex. K, ¶15, 17-18, 22. Swaim Dec., Ex. L, ¶15, 20. Mariani Dec., Ex. M, ¶9, 18, 24.  Kohl's employed Collins in their Wallingford, Enfield and Manchester, Connecticut locations from June 2008 to October 19, 2017 as a Children's Footwear and Home ASM ("CFH ASM"), and later as a Human Resources and Operations ASM ("HR-Ops ASM"). Collins Dec., Ex. E, ¶3, 8-10.  Kohl's employed Luseni in their Elmhurst, New York store from April 2010 to March 2013 as a CFH ASM, and then transferred Luseni to its Green Acres, Long Island, New York store from July 2013 until approximately February 2017, initially as a CFH ASM and then as an Operations / CFH ASM. Luseni Dec., Ex. F, ¶3-5.  Kohl's employed Peterson in its Milford, Massachusetts store from 2013 to 2015 as ASM of Apparel and Accessories ("AA ASM") and ASM of Human Resources ("HR ASM").  Peterson Dec., Ex G, ¶4.  Since the lawsuit was filed, twenty-three total ASMs from sixteen states – including Michigan, Ohio, Connecticut, California, Minnesota, Illinois, Arizona, Pennsylvania, New Hampshire, Washington, New York, Massachusetts, Kansas, New Jersey, Virginia, Colorado, and Nevada – have opted-in as plaintiffs in this case. *See* Consent Forms [Doc#16, 17, 23, 35-1, 37-1].

### c. Assistant Store Managers.

Regardless of the subtitle, department, store, state, region, shift, store size, store volume, number of employees, or any other factor, the ASMs were similarly situated with respect to duties and responsibilities, exemption treatment, training, policies and procedures, scheduling, supervision, and compensation for the purposes of this FLSA collective action.

### i. Duties and Responsibilities

9

Kohls has established five "Position Descriptions" for the ASMs in its stores. Ex. N.[6]

Three are dated March 2012 and two more are dated October 2012. All five Position

Descriptions report to the Store Manager and they have seven (7) "General Responsibilities" and

"Primary Responsibilities." These position descriptions are "corporate derived." Shields Dep.,

Ex. B, 67:14-16. The "responsibilities" of all ASMs include:

| General Or Primary Responsibility | ASM Human Resources and Ops March 2012 | ASM of AA CFH Ops CFH March 2012 | ASM Overnight Operations March 2012 | ASM Operations Oct. 2012 | ASM Merchandising Oct. 2012 |
|---|---|---|---|---|---|
| Customer Satisfaction | X | X | | X | X |
| Merchandise Presentation | X | X | X | X | X |
| Payroll/Expense Management | X | | X | X | |
| Sales Mgmt | X | X | X | X | X |
| People Mgmt | X | X | X | X | X |
| Inventory Shortage Unit System Accuracy | X | X | X | X | |
| Operations | X | X | X | X | |

These position descriptions are the same at every Kohl's store in every state nationwide

regardless of district, region, territory, store, size of store, number of employees in the store,

sales volume of the store, previous experience of the ASM, training of the ASM, who the store

manager is, shift of the ASM and regardless of the duties, tasks and responsibilities of the ASM.

Shields Dep., Ex. B, 58-69. These responsibilities from 2012 are near identical to each other as

shown in the chart above. Furthermore, upon comparison, the 2012 descriptions are all near

identical to the descriptions contained in Kohl's job postings today. *See* Kohl's Job Descriptions

---

[6]     These 2012 Position Descriptions were offered by Kohl's in support of its Motion to Strike, Document 13-3.

of 5/16/18, Ex. O, showing five postings from the Kohl's website for "Assistant Store Manager" positions in Pennsylvania, New Jersey, Missouri and New York. All 2018 position descriptions are **identical** to each other and do not change based upon subtitle (only the overnight subtitle is even specified, but its description is still identical as to the other postings). *See* Ex. O.

ASMs often transfer from store to store, but the responsibilities are always similar regardless of location. Even though the ASMs have different subtitles, all ASMs perform the same basic functions. Their primary duty is to make sure the merchandise is taken off the truck and merchandised on the sales floor, along with providing customer service. The Operations ASMs work more in the back room and do not have assigned merchandise departments but the work they do is still in the nature of moving the merchandise from the trucks to the floor. Collins Dec., Ex. E, ¶8-10, 16. Luseni Dec., Ex F., ¶5,9-10. Peterson Dec., Ex. G, ¶6. Johnson Dec., Ex. H, ¶6, 14. Stevenson Dec., Ex. I, ¶8. Watson Dec., Ex. J, ¶7, 16. Portillo Dec., Ex. K, ¶6, 14. Swaim Dec., Ex. L, ¶9, 17. Mariani Dec., Ex. M, ¶3-5, 8. During the Declarants' combined 74 years at Kohl's, they worked with approximately 82-85 other ASMs and had an opportunity to observe the duties they performed; they all had essentially the same job, no matter what department they were in. Collins Dec., Ex. E, ¶23. Luseni Dec., Ex. F, ¶17. Peterson Dec., Ex G, ¶14. Johnson Dec., Ex. H, ¶14. Stevenson Dec., Ex. I, ¶16. Watson Dec., Ex. J, ¶4, 14. Portillo Dec., Ex. K, ¶14, Swaim Dec., Ex. L, ¶3, 8, 17. Mariani Dec., Ex. M, ¶15.

The work ASMs perform is closely and directly monitored by ASMs' superiors. Store Managers work every week in the stores and inspect and monitor the work ASMs do. Also, there are periodic inspections and audits of stores by corporate personnel. These inspections and audits are used to evaluate ASM performance each year and determine if ASMs will be terminated, retained, promoted or given raises. Collins Dec., Ex. E, ¶35. Luseni Dec., Ex. F,

¶28. Peterson Dec., Ex G, ¶24. Johnson Dec., Ex. H, ¶23. Stevenson Dec., Ex. I, ¶25. Watson

Dec., Ex. J, ¶25, Portillo Dec., Ex. K, ¶23, Swaim Dec., Ex. L, ¶28, Mariani Dec., Ex. M, ¶26.

Kohl's assigned both management and non-management work to its ASMs, no matter

what department they were in; the non-management work that was assigned to ASMs included

unloading trucks, unpacking merchandise, sorting merchandise, filling on-line orders, back

stocking merchandise, organizing the back room, stocking shelves, customer service, operating

cash registers, counting inventory, organizing the store, recovery, setting floor plans, gathering

and cleaning shopping carts, filling in and adjusting fixtures, processing mark downs, and

processing call backs of damaged and defective merchandise. Collins Dec., Ex. E, ¶25, Luseni

Dec., Ex. F, ¶18. Peterson Dec., Ex G, ¶15. Johnson Dec., Ex. H, ¶15. Stevenson Dec., Ex. I,

¶17. Watson Dec., Ex. J, ¶17, Portillo Dec., Ex. K, ¶15, Swaim Dec., Ex. L, ¶18, Mariani Dec.,

Ex. M, ¶16.

The management work that was assigned to ASMs included directing the work of hourly

workers, responding to questions from hourly workers, issuing low level discipline to hourly

workers for minor transgressions such as tardiness or performance, assisting the Store Manager

with performance evaluations of hourly workers once per year, opening and closing the store,

and participating in hiring interviews and firing interviews (although the ultimate decision on

hiring or firing was made above ASMs). Collins Dec., Ex. E, ¶26. Luseni Dec., Ex. F, ¶18.

Peterson Dec., Ex G, ¶16. Johnson Dec., Ex. H, ¶16. Stevenson Dec., Ex. I, ¶18. Watson Dec.,

Ex. J, ¶18, Portillo Dec., Ex. K, ¶16, Swaim Dec., Ex. L, ¶19, Mariani Dec., Ex. M, ¶17.

The non-management work Kohl's assigns ASMs takes the majority of their time. Collins

Dec., Ex. E, ¶27-28. Luseni Dec., Ex. F ¶9, 20. Peterson Dec., Ex G, ¶17. Johnson Dec., Ex. H,

¶7, 17. Stevenson Dec., Ex. I, ¶19-20. Watson Dec., Ex. J, ¶19, Portillo Dec., Ex. K, ¶17, Swaim

12

Dec., Ex. L, ¶20, Mariani Dec., Ex. M, ¶18.  The management work that ASMs performed took very little time and was not as important to the success of our store as ASMs non-management work.  For example, part of the ASMs management work was to issue write ups for hourly workers for tardiness.  When ASMs did this, it was because the corporate office told them to and the ASMs had no discretion in this process. Collins Dec., Ex. E, ¶33.  Luseni Dec., Ex. F, ¶21. Peterson Dec., Ex. G, ¶18.  Johnson Dec., Ex. H, ¶18.  Stevenson Dec., Ex. I, ¶19-20.  Watson Dec., Ex. J, ¶20, Portillo Dec., Ex. K, ¶18, Swaim Dec., Ex. L, ¶21, Mariani Dec., Ex. M, ¶19.

**ii.    Exemption Treatment**

Kohl's classified all its ASMs as exempt "based on the job description clearly as the document that we review."  Shields Dep., Ex. B, 49:23-25.  All ASMs have the same primary duties as described in the singular job description (Job Descriptions, Ex.'s N and O). "This [job description] describes their duties, tasks and responsibilities, Yes." Shields Dep., Ex. B at 62.

ASMs are classified as exempt regardless of which district, region, territory, store, state, store size, store volume, number of employees at the store, prior experience, training, who the store manager is, number of executives, shift of the ASMs, or climate.  Shields Dep. 46-49.

> Q:    So in all material respects an ASM will be exempt no matter what duties they
>         perform?
…
> A:    ASMs are exempt.

Shields Dep. 53:10-13.  Furthermore, the primary duties of all ASMs are the same.

> Q. Are you aware if in determining whether an ASM is exempt there was consideration
> that Kohl's gave to the volume of that store?

> A. We believe the job duties and responsibilities are the same, so no.

Shields Dep., Ex. B, 51-52.  All ASMs nationwide are paid on a salaried basis.  *Id.* at 53:23-25.

### iii. Training

All ASMs receive the same training. Kohl's puts their ASMs through a management training program which lasts approximately six to eight weeks, and such training often takes place at stores different than the store where the ASM will be assigned. They are trained by various members of the store including the Store Manager, Assistant Managers and hourly associates. Collins Dec., Ex. E, ¶4,7. Luseni Dec., Ex. F, ¶6-7. Peterson Dec., Ex. G, ¶5, 8. Johnson Dec., Ex. H, ¶5, 8, 14. Stevenson Dec., Ex. I, ¶5-6. Watson Dec., Ex. J, ¶4. Portillo Dec., Ex. K, ¶5, 8. Swaim Dec., Ex. L, ¶5-7, 11. Mariani Dec., Ex. M, ¶4-6, 10.

Kohl's trains all ASMs in its stores pursuant to the same training programs and materials. There are usually multiple ASMs being trained at any one time by the same trainers. They are then assigned to different stores. They do not receive different training based on the stores that they are being sent to. All ASMs are trained in Kohl's Best Practices and are given binders of written materials that Kohl's uses to train its assistant managers. There is also computer-based training. Collins Dec., Ex. E, ¶6. Luseni Dec., Ex. F, ¶8. Peterson Dec., Ex. G, ¶5. Johnson Dec., Ex. H, ¶5. Stevenson Dec., Ex. I, ¶7. Watson Dec., Ex. J, ¶6. Portillo Dec., Ex. K, ¶5. Swaim Dec., Ex. L, ¶5-7, 11. Mariani Dec., Ex. M, ¶7. Kohl's trained all ASMs in the same manner and using the same training materials including Best Practices, and issues one "associate handbook" which applies to all employees. Collins Dec., Ex. E, ¶7, 17. Luseni Dec., Ex. F, ¶11. Peterson Dec., Ex. G, ¶8. Johnson Dec., Ex. H, ¶8. Stevenson Dec., Ex. I, ¶10. Watson Dec., Ex. J, ¶10. Portillo Dec., Ex. K, ¶8. Swaim Dec., Ex. L, ¶11. Mariani Dec., Ex. M, ¶10.

All new ASMs would go through training and they all receive a new executive packet. Shields Dep., Ex. B, 100-102. All ASMs have access to the Kohl's intranet where "Knowledge

14

Works" is hosted and all of the training materials are contained. Loomis Depo[7], Ex. P at 18. All ASMs nationwide receive the same company Counseling Guidelines derived by corporate, all ASMs are expected to follow them in their particular building, and personnel policies contained therein are to be followed by all ASMs. Shields Dep., Ex. B, 104-105, 107. Ms. Loomis testified that Kohl's corporate headquarters generates one training curriculum and set of training materials currently known as "Lead Off" for all ASMs when they are hired by Kohl's. Loomis Dep., Ex. P, 30-31, 33. Within the training there are 84 training modules that all new Executives must complete. In addition to the "Lead Off" training program, Kohl's places all of its e-learning (ongoing training) for all ASMs on Knowledge Works as well. *Id.* at 38. The ASM "Lead Off" training program contains the same learning topics for all ASMs in all Kohl's nationwide. *Id.* at 47[8], 55-56, 58, 61-62, 64.

### iv. Policies and Procedures

Kohl's imposes policies and procedures uniformly upon ASMs. Kohl's creates and employs "Best Practices" which are how it does "things the best way possible." Shields Dep. 69:20-25. These Best Practices are expected to be used as guidelines in all stores nationwide. *Id.,* 70:1-12. All ASMs in all Kohl's are expected to follow Kohl's "Best Practices". Mantz[9] Dep., Ex. Q at 29-30, 31. Shields Dep, Ex. B at 69-70. According to the Kohl's Job Description, all ASMs must "ensure execution according to Kohl's Best Practices." Kohl's Position

---

[7] Ms. Sharon Loomis was Director of Learning and Development and testified as witness for Kohl's in 2014.
[8] Ms. Loomis testified that there would be only one "Lead Off" training program at any given time and that it is the *only* New Executive Lead Off training program for all ASMs nationwide. The "Lead Off" training helps the new ASM acclimate and "on-board" to the company. Loomis Dep., Ex. P, at 50-51. All of the ASMs in all of the Kohl's stores are expected to use their training at Kohl's store they work in. Loomis Dep., Ex. P, at 55-56.
[9] Kevin Mantz, Vice President of Store Finance, Staffing and Process Improvement, testified on behalf of Kohl's regarding the corporate policies that the ASMs in Kohl's were required to follow in 2014.

15

Descriptions of 2012 and 2018, Ex.'s N and O. Kohl's counsels ASMs if they do not follow Best Practices. *Id.*, 76:4-77:1. Collins Dec., Ex. E, ¶20. Luseni Dec., Ex. F, ¶14. Peterson Dec., Ex. G, ¶11. Johnson Dec., Ex. H, ¶11. Stevenson Dec., Ex. I, ¶7,13. Watson Dec., Ex. J. ¶13. Portillo Dec., Ex. K, ¶11. Swaim Dec., Ex. L, ¶14. Mariani Dec., Ex. M, ¶12. Typical of large department stores, Kohl's issues these uniform directives from its corporate office to each store that mandate the duties and tasks of ASMs and strictly control how those duties and tasks are performed regardless of the individual store's location. The "Best Practices" are sent from the corporate offices to all Kohl's stores nationwide and all Kohl's ASMs are expected to follow them. Mantz Dep., Ex. Q at 33. There are "Best Practices" for everything such as "Continuing Flow Best Practice Merchandising," "Fitting Room, Recovery and Replenishment Best Practice," "Price Change Consolidation," "Return to Vendor Best Practice for Jewelry and Watches," "Callbacks," "Return to Vendor Best Practice," "General Merchandise Callbacks," and "Return to Vendor Best Practice Damage and Defective General Merchandise." *Id.* at 36.

All ASMs are expected to follow "Best In Class" which are derived from the corporate offices and dictate to the stores the best way to set up their stockrooms. *Id.* at 41-42, 48-49. All ASMs in all Kohl's stores [are] expected to utilize the best in class document. *Id.* at 42. Kohl's corporate offices issue planograms, communication books and merchandising books to all of its stores nationwide and all ASMs are expected to "apply that direction" as contained in the planograms, merchandising books and communication books. *Id.* at 52-53. Further, the planograms, strike points and directives contained in the communication books and merchandising books are to be followed by all ASMs. *Id.* at 55-57. Kohl's sends out the Communication Books to every store every month, and they lay out in detail how Kohl's wants each department merchandised. Collins Dec., Ex. E, ¶37. Luseni Dec., Ex. F, ¶30. Peterson

Dec., Ex. G, ¶26. Johnson Dec., Ex. H, ¶25. Stevenson Dec., Ex. I, ¶27. Watson Dec., Ex. J, ¶27. Portillo Dec., Ex. K, ¶25. Swaim Dec., Ex. L, ¶30. Mariani Dec., Ex. M, ¶28.

Kohl's also has uniform planning procedures, including a "KPlanner." Kohl's corporate headquarters created "KPlanner", and it is used by all ASMs in all Kohl's stores. Shields Dep., Ex. B at 61-62, 78, 81-82; Mantz Dep., Ex. Q at 57. "The KPlanner is the software that Kohl's implemented to organize tasks into one comprehensive to-do list for the stores to execute ..." Mantz Dep., Ex. Q at 57. It is a calendar which Kohl's requires ASMs to use on the computer to organize and plan their tasks every day. Kohl's corporate office put the tasks on the list for ASMs, and requires them to check off the tasks as they do them, and this enables Store Managers and other Managers to check up on ASMs and whether they are completing the required tasks. Collins Dec., Ex. E, ¶36. Luseni Dec., Ex. F, ¶29. Peterson Dec., Ex. G, ¶25. Johnson Dec., Ex. H, ¶24. Stevenson Dec., Ex. I, ¶26. Watson Dec., Ex. J, ¶26, Portillo Dec., Ex. K, ¶24, Swaim Dec., Ex. L, ¶29, Mariani Dec., Ex. M, ¶27. The KPlanners have project names, project titles, and end dates that the project must be completed by. Mantz Dep., Ex. Q at 62, 66-67. This tool derives from Kohl's corporate office in Wisconsin. Shields Dep. 81:16 – 82:3

All ASMs are expected to abide by the Kohl's corporately derived core values in the course of their daily business. Mantz Dep., Ex. Q at 63 and 64. All Kohl's ASMs are expected to follow the corporate based customer philosophies including the "Five Basics, which cover signing, sizing, clean, clearance and replenishment, GREAT, Smile and Say Hi, Yes We Can." Mantz Dep., Ex. Q at 66-69. All ASMs nationwide must use the Loss Prevention Management Checklist that is derived from the corporate office. Shields Dep. Ex. B at 85. Kohl's corporate offices created the "Associate Handbook," a set of corporate rules and procedures that also apply to all ASMs nationwide. *Id.* at 96-99; Associate Handbook, Ex. R. Collins Dec., Ex. E, ¶7, 17.

17

Luseni Dec., Ex. F, ¶11. Peterson Dec., Ex. G, ¶8. Johnson Dec., Ex. H, ¶8. Stevenson Dec., Ex. I, ¶10. Watson Dec., Ex. J, ¶10, Portillo Dec., Ex. K, ¶8, Swaim Dec., Ex. L, ¶11, Mariani Dec., Ex. M, ¶10. Kohl's corporate has also promulgated many other corporate policies which are available to any ASM nationwide through the Kohl's intranet - called K-NET - and expected to be followed by all ASMs. Mantz Dep., Ex. Q at 33-34, 40, 42, 44, 46, 48, 58.

All of Kohl's corporate policies, procedures, Best Practices and Processes, Best in Class, KPlanner, merchandising books, planograms, communications books, and associate handbooks cover almost every detail of how the Kohl's stores are expected to be run and support the Plaintiffs' claim herein that the ASMs are all similarly situated.

**v.       Scheduling**

Kohl's schedules all ASM's similarly.  ASMs were all scheduled to work five days per week and a minimum of 9-hour days (or 45 hours per week) but frequently worked 50-60 hours per week.  During the period from mid-November to the end of December ASMs worked six days per week. Collins Dec., Ex. E, ¶21. Luseni Dec., Ex. F, ¶15. Peterson Dec., Ex. G, ¶12. Johnson Dec., Ex. H, ¶12. Stevenson Dec., Ex. I, ¶14. Watson Dec., Ex. J, ¶14, Portillo Dec., Ex. K, ¶12, Swaim Dec., Ex. L, ¶15, Mariani Dec., Ex. M, ¶13.

Kohl's puts pressure on its Store Managers to keep labor costs down, such that they usually send hourly workers home before their scheduled shifts are over and they frequently do not replace an hourly worker who calls out sick during the work week.  Instead, they simply rely on their ASMs who are paid a flat salary to pick up the slack and perform the non-exempt work of the absent hourly associates (such as running the cash register).  Collins Dec., Ex. E, ¶31. Luseni Dec., Ex. F, ¶23-25. Peterson Dec., Ex. G, ¶20. Johnson Dec., Ex. H, ¶20-21. Stevenson Dec., Ex. I, ¶22. Watson Dec., Ex. J, ¶22, Portillo Dec., Ex. K, ¶20-21, Swaim Dec., Ex. L, ¶23,

Mariani Dec., Ex. M, ¶21.  Because of Kohl's understaffing and its practices of sending hourly workers home early and not replacing them when they called out, ASMs end up working approximately 50-60 hours each week, and spending more than 50 percent of their time on hourly labor and non-management work and less than 50 percent of their time actually involved in management functions. Collins Dec., Ex. E, ¶32. Luseni Dec., Ex. F, ¶26.  Peterson Dec., Ex. G, ¶22.  Johnson Dec., Ex. H, ¶7, 22.  Stevenson Dec., Ex. I, ¶23.  Watson Dec., Ex. J, ¶14, 23. Portillo Dec., Ex. K, ¶22, Swaim Dec., Ex. L, ¶26, Mariani Dec., Ex. M, ¶24.

vi.     **Supervision**

Kohl's subjects all of its ASMs to close and direct supervision.  Their immediate supervisors are the Store Managers who work in their stores and who closely and directly review, monitor and supervise their work.  They walk the store multiple times each day inspecting the work performed by ASMs and giving them feedback.  Kohl's also uses corporate audit teams to audit and inspect the work performed by store personnel including ASMs.  These inspections form a part of the annual evaluations of ASMs.  Kohl's uses one common performance appraisal form for all of its ASMs around the country.  Shields Dep., Ex. B, 99:5-25.  Kohl's also uses one set of "counseling guidelines" which is corporately derived and applies to all ASMs in all stores nationwide.  *Id.* at 104:18-105:3.

Kohl's also closely supervises ASMs according to the payroll budgets Kohl's sets for each store each week.  Kohl's tracks each store's payroll each week and each month to determine if that store is keeping its payroll under the budget it set.  Each store has to use its ASMs to do hourly work in order to meet its payroll budget obligations.  Collins Dec., Ex. E, ¶29. Luseni Dec., Ex. F, ¶22.  Peterson Dec., Ex. G, ¶19.  Johnson Dec., Ex. H, ¶19. Stevenson Dec., Ex. I, ¶21.  Watson Dec., Ex. J, ¶21, Portillo Dec., Ex. K, ¶19, Swaim Dec., Ex. L, ¶22, Mariani Dec.,

Ex. M, ¶20.  Kohl's sends ASMs to district meetings from time to time where they meet other ASMs from other stores with similar jobs who also spend most of their time on hourly work.  To meet budget obligations, ASMs typically do whatever necessary to keep hourly payroll dollars down, and thus manual labor tasks often fall on ASMs.  Collins Dec., Ex. E, ¶18. Luseni Dec., Ex. F, ¶12.  Peterson Dec., Ex. G, ¶9.  Johnson Dec., Ex. H, ¶9. Stevenson Dec., Ex. I, ¶11. Watson Dec., Ex. J, ¶11, 21-22.  Portillo Dec., Ex. K, ¶9. Swaim Dec., Ex. L, ¶24. Mariani Dec., Ex. M, ¶11.  Store Managers emphasize the importance of getting merchandise off the trucks, out of the back room and onto the floor over the few management tasks that ASMs perform. Collins Dec., Ex. E, ¶34. Luseni Dec., Ex. F, ¶27.  Peterson Dec., Ex. G, ¶23.  Johnson Dec., Ex H, ¶6. Stevenson Dec., Ex. I, ¶24.  Watson Dec., Ex. J, ¶24, Portillo Dec., Ex. K, ¶6, Swaim Dec., Ex. L, ¶27, Mariani Dec., Ex. M, ¶25.

### vii.    Compensation

All Kohl's ASM's nationwide are paid on a salaried basis without overtime; are eligible for the same 401(k) plans, incentive plan, and medical insurance; and are subject to the same sick leave, holiday, and vacation policies. Shields Dep., Ex. B at 54-56 and 114-119. Kohl's also has a uniform bonus program for ASMs. Collins Dec., Ex. E, ¶19. Luseni Dec., Ex. F, ¶13.  Peterson Dec., Ex. G, ¶10.  Johnson Dec., Ex. H, ¶10.  Stevenson Dec., Ex. I, ¶12.  Watson Dec., Ex. J, ¶15, Portillo Dec., Ex. K, ¶10, Swaim Dec., Ex. L, ¶13.

All ASMs at all Kohl's stores nationwide are paid on a salary basis and do not receive overtime regardless of the store, district, region, territory, numbers of employees in the store, number of executives in the store, sales volume of the store, prior experience of the ASMs, training received by ASMs, shifts, duties, tasks, and/or responsibilities of the ASMs.  Shields Dep., Ex. B at 54-56. Kohl's maintains a common corporate policy to pay no overtime to any

ASMs for the hours they work in excess of 40 in a workweek. Instead of properly paying overtime, Kohl's classifies all ASMs as exempt from the FLSA's overtime provisions, while expecting ASMs to work overtime hours without any additional compensation. Shields Dep., Ex. B at 55-56. Collins Dec., Ex. E, ¶22. Luseni Dec., Ex. F, ¶16. Peterson Dec., Ex. G, ¶13. Johnson Dec., Ex. H, ¶13. Stevenson Dec., Ex. I, ¶15. Watson Dec., Ex. J, ¶15, Portillo Dec., Ex. K, ¶13, Swaim Dec., Ex. L, ¶16, Mariani Dec., Ex. M, ¶14. Kohl's pays its ASMs only a little more than some of the hourly workers beneath them in the store hierarchy. Collins Dec., Ex. E, ¶38-39. Luseni Dec., Ex. F, ¶31. Peterson Dec., Ex. G, ¶27. Johnson Dec., Ex. H, ¶26. Stevenson Dec., Ex. I, ¶28. Watson Dec., Ex. J, ¶28, Portillo Dec., Ex. K, ¶26, Swaim Dec., Ex. L, ¶31, Mariani Dec., Ex. M, ¶29.

### III.    DISCUSSION

#### a.  Conditional Certification Under The FLSA

Plaintiffs move this Court to conditionally certify the following class:

**All persons who have worked for Defendant as Assistant Store Managers in the United States from May 18, 2015 to the date the court grants this motion.**

Plaintiffs have provided sufficient evidence to meet their modest factual burden. Plaintiffs are similarly situated to other ASMs with respect to the work they perform as demonstrated by their declarations, Defendants' job descriptions and other documents, and Defendants' own testimony. First, the ASMs are all similarly situated with respect to the nature of their jobs. They are assigned so much work and are so badly understaffed that they spend more than half their time on non-management tasks. The work that Plaintiffs and the ASMs' work mostly consists of non-managerial tasks, and this is true in different departments and locations. Plaintiffs and the ASMs receive the same training across stores, review the same training materials, receive the same policies and procedures, and are subject to discipline when

21

those same policies and procedures are not followed. The few managerial tasks which Plaintiffs and other ASM's perform are minimal regardless of location or department. ASM's have little to no discretion in executing the few managerial tasks they do perform, and this does not change depending on departments or locations. The ASM position consists mostly of non-managerial duties because of Kohl's nationwide policy of reducing associate payroll costs with its "lean staffing" business model. Across all stores and departments, Kohl's stores are chronically understaffed because they do not replace or arrange for coverage for when hourly workers call out, or hourly workers are sent home early when their non-managerial work can be completed by the ASMs. This intentional business strategy of minimizing payroll costs through "lean staffing" has resulted in their ASMs shouldering the burden of the manual labor necessary to fulfill the ASMs main responsibility at all stores: getting merchandise off the trucks, into the store, and then out onto the floor. As a result, ASMs are in the position of performing predominantly non-managerial tasks and working excessive hours without overtime compensation since they are also uniformly classified as exempt by Kohl's.

Second, the ASMs are all similarly situated in that they are all closely supervised pursuant to Kohl's uniform store hierarchies, uniform audit procedures and uniform performance evaluation programs. They are all evaluated under the same criteria, must follow the same rules, and are all disciplined if they do not follow those rules. ASMs' immediate supervisors and corporate audit teams closely and directly review, monitor and supervise ASMs walk the store multiple times daily, inspecting ASMs' work and giving feedback. These inspections form a part of the annual evaluations of ASMs. Kohl's uses one common performance appraisal form for all of its ASMs around the country, and one set of counseling guidelines, which is corporately derived and applies to all ASMs in all stores nationwide. Kohl's also closely supervises ASMs

according to the payroll budgets Kohl's sets for all their stores each week. Kohl's tracks each store's payroll each week and month to check that payroll is under the budget, and ASMs do whatever work is necessary to protect against any manual labor shortage, requiring the ASMs to do everything from unloading the trucks to cashier duty. Store Managers emphasize the importance of getting merchandise off the trucks, out of the back room and onto the floor over the few management tasks that ASMs perform.

Third, Kohl's ASMs are similarly situated with respect to their compensation. Kohl's pays all ASMs on a salaried basis without overtime regardless of the store, district, region, territory, numbers of employees in the store, number of executives in the store, sales volume of the store, prior experience of the ASMs, training received by ASMs, shifts, duties, tasks, and/or responsibilities of the ASMs. Kohl's ASMs are all eligible for the same 401(k) plans, incentive plan, and medical insurance. Kohl's provides all ASMs the same sick leave, holiday, and vacation policies. Kohl's provides all ASMs the same bonus program. Kohl's classifies all ASMs as exempt from the FLSA's overtime provisions, while expecting ASMs to work overtime hours without any additional compensation.

The evidence here, which includes Rule 30(b)(6) admissions by Kohl's corporate designees, Kohl's corporate documents, and declarations from several Opt-ins from multiple states and departments – is more than is present in most "assistant manager" misclassification FLSA collective actions involving national retail chain stores where conditional certification was granted, in this Circuit and others.[10]

---

[10]     *See* cases cited supra at p. XX; *see also Brunner*, 2015 WL 13653079 at *1-4 (conditionally certifying a nationwide class for FLSA overtime exemption misclassification claims based on nine declarations); *Tamas v. Family Video Movie Club, Inc.*, No. 13-C-1024, 2013 WL 4080649, at *1-4 (N.D. Ill. Aug. 13, 2013) (conditionally certifying a nationwide class of store managers and managers-in-training based on six declarations and the plaintiff's

Once the Plaintiff meets its burden, as the Plaintiffs do here, the inquiry stops, and Courts refuse to consider the defendant's typical arguments regarding any alleged differences among the Plaintiffs and the class members. *Brabazon*, 2011 WL 1131097, at *3 ("[T]he determination at this initial phase … does not involve adjudication of the merits of the claims. … Rather, the named plaintiff 'must demonstrate only that there is some factual nexus that connects [him] to other potential plaintiffs as victims of an unlawful practice.'") (quoting *Espenscheid v. DirectSat USA, LLC*, No. 09-C-625, 2010 WL 2330309, at *5 (W.D. Wis. June 7, 2010)).

In fact, a motion for conditional certification was granted against the Defendants in the instant matter on the basis that Kohl's acknowledged through their own job descriptions and training materials that at least some ASMs consistently spend substantial time engaged in non-managerial tasks:

> Kohl's own documents acknowledge that ASMs nationwide are expected to perform at least some non-exempt work. … The most recent job description sets forth tasks "to be [d]elegated" but nonetheless acknowledges that **"[d]uring the course of business and general management of the store, there may be situations that require non-exempt tasks to be physically completed by management. This is limited to situational training to further enhance Associate development, while providing leadership and direction related to Kohl's best practices and while providing a visual experience when directing workflow to Associates."** Position Descriptions at Bates KCO_04572. Moreover, an ASM leadership training document submitted by Kohl's describes a "70/30 rule," which provides that "no more than 30 percent of your time should be spent performing activities that are classified as non-leadership." Def. Ex. S. at Bates KCO_01232. That document further states that "[i]f you find you are consistently

deposition testimony of a common misclassification policy; disregarding the defendant's nineteen counter-declarations); *Indergit v. Rite Aid Corp*., No. 08 CIV. 9361 (PGG), 2010 WL 2465488 (S.D.N.Y. June 16,2010) (approving notice to 8,400 nationwide (except California) store managers based upon three affidavits and corporate documents); *McKee v. PetSmart, Inc.*, No. CV 12-1117-SLR, 2013 WL 6440224 (D. Del. Dec., 9, 2013) (certifying a Collective action for 465 stores, in 44 states, for assistant store managers with 3 plaintiffs); *Moran v. Café Cacao, Inc*., No. 11-civ-8384 (S.D.N.Y. Nov. 19, 2012); *Ferreira v. Modell's Sporting Goods, Inc.*, 2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012) (reconsid. den'd, 2013 U.S. Dist. LEXIS 48489 (S.D.N.Y. Mar. 28, 2013) (granting conditional certification in a multistate assistant manager misclassification case with deposition testimony from one plaintiff, several assistant manager declarations, and documentary evidence of uniform exemption policies).

24

spending more than 30% of your workday doing instead of leading, you aren't being as effective as you could be. That's because while you are doing the tasks, you are not teaching the team how to do the tasks themselves." Id. at Bates KCO_01233. This is essentially an acknowledgment by Kohl's – important enough to be a part of nationwide training available to ASMs – that at least some ASMs consistently spend more than 30 percent of their time engaged in non-managerial tasks. While Kohl's position is of course that ASMs must meet these expectations, see Def. Br. at 10-11, the Court concludes that this acknowledgment, when coupled with the evidence described below, is enough for it to determine that conditional collective action certification is warranted.

*Costello v. Kohl's Ill., Inc.*, No. 1:13-CV-1359-GHW, 2014 U.S. Dist. LEXIS 124376, at *14-16 (S.D.N.Y. Sep. 4, 2014) (Ex. S, emphasis added).[11]  The job postings taken from the internet this year indicate that Kohl's has not changed in describing its positions and repeats the exact same language with added emphasis above.  Kohl's 2018 Position Descriptions, Ex. O.

Class members' job duties do not need to be identical. *Jirak v. Abbott Laboratories, Inc.*, 566 F.Supp.2d 845, 848-49 (N.D. Ill. 2008) ("Plaintiffs do not have to show that the potential class members have *identical* positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay.") (emphasis in original) (collecting cases).  Here the 2018 job postings indicate the jobs may actually be identical, but that is not necessary for Plaintiffs to meet their burden.  In short, Plaintiffs have plainly met the ***Hertz*** requirements of showing "some" evidence of similar job requirements and pay provisions for a misclassification claim - indeed, far from showing "some" evidence, there is substantial such evidence presented here, and, in several different forms.  As such, the court should grant conditional certification so that notice may be issued.

   **b.  Plaintiff's Proposed Notice Process.**

---

[11]     The plaintiff in *Costello* sought conditional certification of AA and CFH ASMs. Plaintiffs here are requesting three more additional categories (HR, Overnight, and CFH Ops ASMs) based upon additional evidence obtained and cited.  Plaintiffs here may seek to include other categories of ASMs if warranted by discovery.

25

When a motion for conditional certification is granted, notice to the class should be ordered. Notice is intended to be issued early in the course of a collective action to establish the contours of the action and to further the broad remedial purpose of the FLSA. *Hoffman-LaRoche v. Sperling*, *supra,* 493 U.S. at 171 (discussing importance of early notice in collective actions in order to "ascertain the contours of the action at the outset").

Pursuant to the express statutory language of the FLSA and the governing case law set forth above, current and former Assistant Store Managers are entitled to receive notice of the pendency of this action so that they may be advised of the issues involved in this suit and their right to opt in to this case. The Court should direct that Defendant furnish the names, last known addresses, emails, phone numbers and dates of employment of all persons who have worked as Assistant Store Managers at any time from May 18, 2015 to the present as soon as possible, so that notice can be expedited. Plaintiff has provided the Court with a proposed summary notice, proposed full notice, consent to join forms, and order, attached as Ex.'s T, U, V, and W, and requests that the Court order that such notice be sent to all ASMs employed by Defendants during the relevant time period.

Court-supervised notice is routinely granted in FLSA actions to further the statute's remedial purpose. *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006) ("Authorization of notice serves the broad, remedial purpose of the statute and comports with the court's interest in managing its docket.") (citing *Hoffman-LaRoche*, supra, 493 U.S. at 172-174); *Boltinghouse v. Abbott Labs., Inc.*, 196 F.Supp.3d 838, 844 (N.D. Ill. 2016) ("This court concludes that dual postal mail and e-mail distribution is likely to 'advance the remedial purpose of the FLSA by increasing the likelihood that all potential opt-in plaintiffs will receive notice.'") (quoting *Shoots v. iQor Holdings US Inc.*, No. 15-CV-563, 2015 WL 6150862, at *22 (D. Minn.

Oct. 19, 2015).  The United States Supreme Court has stated that accurate and timely notice

concerning the pendency of a collective action is necessary in order for potential plaintiffs to

make informed decisions about whether to participate in the litigation:

> Section 216(b)'s affirmative permission for employees to proceed on
> behalf of those similarly situated must grant the court the requisite
> procedural authority to manage the process of joining multiple parties in a
> manner that is orderly, sensible, and not otherwise contrary to statutory
> commands or the provisions of the Federal Rules of Civil Procedure.

*Hoffman-LaRoche, supra*, 493 U.S. at 170.

Plaintiff requests a notice period of 90 days.  A period at least this long is appropriate.

*See Woods v. Club Cabaret, Inc.*, No. 15-CV-1213, 2015 WL 6444793, at *6 (C.D. Ill. Sept. 28,

2015) ("Courts routinely approve a 90-day opt-in period, and the Defendant provides no good

reasons not to do so here") (citing *Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 574

(D.Md. 2012) (collecting cases)); *Campbell v. Advantage Sales & Marketing, LLC*, No. 09-CV-

1430, 2010 WL 4386793, at *4 (S.D. Ind. Oct. 28, 2010) ("In the interest of justice, the Court

concludes that a ninety (90) day opt-in period is appropriate.").  The time period described above

is appropriate because it accounts for the possibility of a short period of equitable tolling, for the

reasons articulated above.  Because this case alleges a "willful" violation of the FLSA, the

applicable statute of limitations is three years. 29 U.S.C. § 255(a).  Plaintiff requests that the

statute of limitations be tolled three years from the filing of this motion.  Courts routinely

authorize notice for three-year periods.[12]

---

[12]    *See Frebes v. Mask Restaurants, LLC*, No. 13-CV-3473, 2014 WL 1848461, at *4 (N.D.
Ill. May 8, 2014) ("because there is not a high bar for giving notice under the three-year statute
of limitations, we will apply a three-year statute of limitations at this stage in the litigation.");
*Espenscheid*, 2010 WL 2330309, at *13 (W.D. Wis. June 7, 2010) ("Whether defendants
violated the FLSA and whether any such violations were willful are questions pertaining to the
merits of this action and are not properly entertained at this early stage of the proceeding. At this
stage of litigation, justice is most readily served by notice reaching the largest number of

Plaintiffs requests that the Court authorize them to send the Proposed Summary Notice, attached as Ex. T, to all individuals who have worked for Defendant as ASMs during the period from May 18, 2015 to the present ("Potential Opt-In Plaintiffs"). The Court should also permit Plaintiff to enclose the proposed Full Notice Form, attached as Ex. U, to provide further explanation of the nature of the claims and answers to the most common questions a potential opt-in plaintiff may have. Plaintiff's proposed notices are "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. A proposed Opt-In Form for members of the potential collective action to fill out and return is also attached as Ex. V.

The Court should allow Plaintiffs to send notice to class members by email, as well as U.S. Mail. *See Pippins*, 2012 U.S. Dist. LEXIS 949, at *41 (ordering notice sent by email and finding that "given the reality of communications today . . . the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate"); *see also Kelly v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 157763, at *4-5 (N.D. Ill. Sept. 23, 2011) (authorizing dissemination of notice via mail, email, and website posting).

Plaintiffs should be permitted to enclose a self-addressed return envelope with postage prepaid. *See Perrin v. Papa John's Int'l, Inc.*, 2011 U.S. Dist. LEXIS 117048, at *2 (E.D. Mo. Oct. 11, 2011) ("Numerous courts have held that enclosing a prepaid return envelope with the notice to potential class member[s] facilitates a plaintiff's ability to join the class and does not border on improper solicitation[.]"); *LaRocque v. Trs Recovery Servs.*, 2011 U.S. Dist. LEXIS 125108, at *9 (D. Me. Oct. 28, 2011) (approving postage-prepaid postcards to putative class members); *Campbell v. Advantage Sales & Mtkg., LLC*, 2010 U.S. Dist. LEXIS 115065, at *13 (S.D. Ind. Oct. 28, 2010) (same).

---

potential plaintiffs."); *North v. Bd. of Trs. of Ill. State Univ.*, 676 F.Supp.2d 690, 696 n. 8 (C.D. Ill. 2009) (courts can assume willfulness at the notice stage).

The Court should also permit Plaintiffs to send notice to collective members by text message. Courts in this district have allowed plaintiffs to send notice via text message in cases where the employer's business has "high turnover" characteristics.[13] Defendant also should be required to post the notice in its stores. *Frebes v. Mask Restaurants, LLC*, No. 13-C-3473, 2014 WL 1848461, at *7 (N.D. Ill. May 8, 2014) (authorizing the plaintiff's request to post notice at the employer's premises) (citing *Garcia v. Salamanca Group, Ltd.*, No. 07-C-4665, 2008 WL 818532, at *5 (N.D. Ill. Mar. 24, 2008) (authorizing notice postings at the employer's four job sites))..

Finally, the Court should authorize Plaintiffs to mail a Court-authorized reminder postcard to all class members who have not yet opted-in to this matter within 30 days of the first notice mailing. Courts regularly authorize reminder notices to increase the chance that workers will be informed of their rights.[14] Defendant has no reason to oppose a reminder mailing other

---

[13]     *See Brashier v. Quincy Property, LLC*, No. 17-CV-3022, 2018 WL 1934069, at *6 (C.D. Ill. Apr. 24, 2018) (authorizing notice by text message due to transitory nature of class members); *Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1129 – 1130 (D.N.M. 2017) (noting that text messaging is likely a more effective method of communicating with potential class members than traditional first-class mail); *Ziglar v. Express Messenger Sys., Inc.*, No. 16-CV-2726, 2017 WL 6539020, at *6 (D. Az. Aug. 31, 2017) (authorizing plaintiffs to issue notice of conditional certification to class members by text message); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, 2015 U.S. Dist. LEXIS 90616, at *12-13 (S.D.N.Y. Jul. 13, 2015) ("Notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action.").

[14]     *See Boltinghouse*, 196 F.Supp.3d at 844 (finding that sending a reminder notice "is reasonable"); *Knox v. Jones Grp.*, 2016 WL 4943825, at *8 (S.D. Ind. Sept. 16, 2016), *on reconsideration in part*, 2016 WL 6083526 (S.D. Ind. Oct. 18, 2016) ("The Court is unconvinced that any harm will result from potential class members being informed of their rights twice. Deadline reminders are commonplace…."); *Soto v. Wings 'R Us Romeoville, Inc.*, No. 15-CV-10127, 2016 WL 4701444, at *9 (N.D. Ill. Sept. 8, 2016) (approving "Plaintiff's request to send a reminder email to all potential opt-in plaintiffs half-way through the [] notice period"); *Swarthout v. Ryla Teleservices, Inc.*, No. 11-CV-21, 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (approving the use of one reminder letter).

29

than that it may increase the participation rate, which is not a good reason. Plaintiffs will bear the cost of the reminder mailing, and it will not change the end of the notice period.

IV.     **CONCLUSION**

Plaintiffs have shown that there are Kohl's Assistant Store Managers who are "similarly situated" for purposes of notice under the FLSA. Kohl's gives all its ASMs the same title (even though they work in different departments), classifies them all as overtime exempt without any individual inquiry, trains them all the same way, assigns them similar primary duties, requires them to spend most of their time on non-management work while being closely supervised, and consistently schedules them to work at least 45 hours per week in chronically understaffed stores due to Kohl's "lean staffing" policies. This evidence more than meets the "modest factual showing" standard required to support a motion for notice under Section 216b of the FLSA.

For these reasons, the Court should grant Plaintiffs' motion, order Defendants to supply Plaintiffs with names and contact information for all ASMs during the last three years, approve the notice provided with this Motion, and authorize a ninety (90) day notice period. A proposed Order is attached.

Plaintiffs, STACY COLLINS, TIANGE
LUSENI and LISA PETERSON,
individually and on behalf of other similarly
situated individuals,

Respectfully submitted,

**HAWKS QUINDEL S.C.**

By: *s/ LARRY A. JOHNSON*
Larry A. Johnson, SBN 1056619
Summer H. Murshid, SBN 1075404

Hawks Quindel, S.C.
222 East Erie Street, Suite 210
PO Box 442
Milwaukee, WI 53201-0442
Telephone: 414-271-8650
Fax: 414-271-8442
Email: ljohnson@hq-law.com
        smurshid@hq-law.com

Richard E. Hayber *
The Hayber Law Firm, LLC
221 Main Street, Suite 502
Hartford, CT 06106
Ph: (860) 522-8888
F:  (860) 218-9555
Email: rhayber@hayberlawfirm.com

Shannon  Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
Email: sliss@llrlaw.com

Gary Edward Phelan *
Mitchell & Sheahan PC
80 Ferry Blvd - Ste 102
Statford , CT 06615
203-873-0240
Fax: 203-873-0235

31

Email: gphelan@mitchellandsheahan.com

Attorneys for Plaintiffs

* Admission form will soon be filed with the
Clerk of Court pursuant to General L. R.
83(c).