# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

STACY COLLINS, TIANGE LUSENI and )
LISA PETERSON, individually and on )
behalf of other similarly situated individuals, ) CASE NO: 2:18-cv-00962-DEJ
    Plaintiffs )
 )
v. )
 )
KOHL'S DEPARTMENT STORES, INC. and )
KOHL'S CORPORATION )
    Defendants )

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION

## I. PRELIMINARY STATEMENT

Kohl's opposition to Plaintiffs' request for issuance of notice fails on the first page. There it falsely claims that Plaintiffs' motion relies solely on job descriptions and training materials and that their case of misclassification "rests entirely on their assertions that they spent less than 50 percent of their time on their management duties." (Defendants' Memo. Page 1.) Neither statement is correct. In fact, Plaintiffs have presented sufficient evidence supporting their contention that Kohl's has a nation-wide "*de facto*" policy to assign so much non-management work to its ASMs, to supervise them so closely, and to pay them so little[1] that their exempt classification is inappropriate. *See Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 853 (N.D. Ill. 2017) (granting conditional certification based on a "de facto" practice and rejecting the need for proof of a "specific written policy" which violates the FLSA).

The record that Plaintiffs have presented goes beyond job descriptions and training materials. It includes evidence that Kohl's has a company-wide practice of "lean staffing" in its stores and not replacing absent hourly workers when they call out or leave early. It includes evidence that Kohl's has assigned ASMs the non-exempt task of filling online orders after 2012, a task that was not in the 2012 position description when the exempt classification at issue in this case was made. It also includes evidence of such close and direct supervision, including by the use of headsets and video cameras, that these ASMs cannot fairly be considered executives. Finally, it includes evidence that Kohl's pays its hourly workers approximately 97% of what it pays ASMs for a comparable work week. Defendants have now deposed five of Plaintiffs' nine

---

[1] These are the three components of the rule contained in 29 C.F.R. §541.700(c) for assistant retail managers.

1

declarants, but those depositions, together with the exhibits, have made Plaintiffs' motion even stronger.[2]

Kohl's Opposition suffers from the same flaws that resulted in the Southern District of New York granting a similar motion for conditional certification in a prior case challenging Kohl's classification of its ASMs as overtime exempt in September 2014. That court held that employees are similarly situated if they "make a modest factual showing that they were subject to a common '*de facto* illegal policy.'" *Costello v. Kohl's Illinois, Inc., et al.* 2014 U.S. Dist. LEXIS 124376, at *13 (S.D.N.Y. September 4, 2014), citing *Jenkins v. TJX Companies Inc.*, 853 F.Supp.2d 317, 322 (E.D.N.Y. 2012). Applying this rule, the *Costello* court conditionally certified a national collective of ASMs at Kohl's because Plaintiffs had presented preliminary evidence that "ASMs engage in primarily non-managerial duties" and because there was evidence of "budget and staffing cuts [that] resulted in ASMs performing non-managerial tasks" and that this evidence provided a substantive theory "to tie Plaintiffs' claims to a policy or practice that affected ASMs nationwide." *Costello*, 2014 U.S. Dist. LEXIS 124376, at *19. The record before this Court is now even stronger for the plaintiffs' request for conditional certification than it was in *Costello*, and notice should be granted in this case as well.

---

[2] Of course, Kohl's has begun taking some discovery, but Plaintiffs have not yet taken discovery, as issuance of notice under the FLSA typically occurs at the outset of a case, prior to substantial discovery. The Court should disregard the "happy camper" declarations that Kohl's has submitted, which courts regularly disregard in evaluating an early request for notice. *See Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013) (at first stage of conditional certification, "the court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant."); *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 13, 2016) (citing *Bergman* and refusing to consider defendant's opposing declarations at first stage); *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011) (finding the "happy camper" affidavits "are of little use" because it is not helpful "for the employer to round up a small sample of favorable statements from employees….hand-picked by [defendant]").

2

## I. LEGAL PRINCIPLES

### a. *Misclassification cases can and should be conditionally certified when there is evidence of a company-wide de facto policy which results in a category of workers being misclassified as exempt.*

Kohl's incorrectly argue that Plaintiffs must allege and show that a defendant's written policies, including job descriptions and training materials, are unlawful on their face. Def. Opp. P. 1 ("Plaintiffs do not allege there is anything *unlawful* about those job descriptions or training materials.") (emphasis in the original); Def. Opp. P. 17 ("Plaintiffs have not submitted any evidence that they and others were subject to any 'common policy' *to violate the FLSA*.") (emphasis in the original). In fact, courts have regularly granted conditional certification based upon evidence plaintiffs have submitted of *de facto* policies (rather than *facial* policies) of unlawfully depriving workers of overtime pay. *See, e.g., Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 853 (N.D. Ill. 2017) ("Plaintiffs here have submitted multiple declarations from workers who worked at multiple locations in which they averred that they were regularly required to work more than 40 hours per week without being paid overtime. …. Plaintiffs need not identify a specific, written policy requiring them to work overtime. It is sufficient that they have provided multiple declarations indicating that Defendants had a de facto practice at more than one Complex of not paying for overtime hours.").[3]

---

[3] *See also Blakes v. Illinois Bell Telephone Co.,* 2011 WL 2446598, at *5 (N.D. Ill. 2011) (stating that "an unwritten *de facto* policy that discourages employees from seeking compensation for work performed outside their shift and that forces them to perform uncompensated work off-the-clock" violates the FLSA, and that "[c]ourts in this district "regularly allow" plaintiffs to pursue collective actions under the FLSA in these circumstances ... because regardless of what a company's official policy says, some evidence that a separate policy is enforced by more than a rogue manager or two supports a conclusion that similarly situated employees were subject to a common practice violating the FLSA"); *Monroe v. FTS USA, LLC*, 860 F.3d 389, 403 (6th Cir. 2017) ("That an employer uses more than one method to implement a company-wide work "off-the-clock" policy does not prevent employees from being similarly situated for purposes of FLSA protection."); *Gathmann-Landini v. Lululemon USA Inc.,* 2018 WL 3848922, at *9 (E.D.N.Y. Aug. 13, 2018) ("The critical concern is whether Plaintiff has put forth sufficient evidence to find a factual nexus between herself and other New York State Lululemon locations. At this stage of an FLSA collective action, Plaintiff's allegations and affidavits are sufficient to support her position that Defendant's *de facto* policies caused FLSA violations at other store locations throughout New York State. It is

3

Accordingly, in order to win a motion for conditional certification, it is enough to show that there is a class of employees who share a common job description, who have been classified as exempt from overtime, but for whom there is evidence that they have *in fact* have been assigned a set of common duties, and who are subject to such close supervision, and paid so little, that they may not satisfy the exemption claimed under the FLSA (here, the "executive" exemption). Plaintiffs have presented such evidence here.

## II. DISCUSSION

### A. *Plaintiffs have presented evidence of a company-wide de facto policy Kohl's has misclassified its ASMs as "executives" and thereby improperly denied them overtime.*

Kohl's is simply wrong when it argues that Plaintiffs have not submitted evidence of a *de facto* policy that violates the law. Plaintiffs have presented evidence that Kohl's has a *de facto* policy which misclassifies its ASMs as exempt "executives" when they are in fact not primarily managers. The record contains evidence that the company's policies and practices are to assign largely non-management work to the ASMs, to subject them to close and direct supervision, and to pay them only a "little more" than their hourly subordinates. These are the three components of the overtime rule found in 29 C.F.R. §541(c) regarding "assistant managers." See, Doc. #69, Plaintiffs' Memo. in Supp. Of Motion for Conditional Cert., p. 1.

---

reasonable to allow conditional certification state-wide because Plaintiff's affidavits demonstrate the possibility of FLSA violations occurring at Defendant's New York State retail store locations."); *Fenley v. Wood Grp. Mustang, Inc.,* 325 F.R.D. 232, 242 (S.D. Ohio 2018) (citing *Monroe v. FTS USA, LLC,* 860 F.3d 389, 403 (6th Cir. 2017)); *Devries v. Morgan Stanley & Co. LLC,* No. 12-81223-CIV, 2014 WL 505157, at *7 (S.D. Fla. Feb. 7, 2014); *Jewell v. Aaron's, Inc.,* No. 1:12-CV-0563-AT, 2012 WL 2477039, at *7 (N.D. Ga. June 28, 2012) ("Conditional certification is appropriate even though the plaintiffs allege that the FLSA violations were caused by a widespread *de facto* policy carried out by individual managers…") (internal citations omitted); *Falcon v. Starbucks Corp.,* 580 F. Supp. 2d 528, 539–40 (S.D. Tex. 2008); *Hoffman v. Securitas Sec. Servs.,* 2008 WL 5054684, at *10 (D. Idaho Aug. 27, 2008) (finding "four declarations … representing only a small percentage of the sought-after class" sufficient to show a common de facto policy); *Wilks v. Pep Boys,* 2006 WL 2821700, at *6 (M.D. Tenn. Sept. 26, 2006), *aff'd*, 278 Fed. Appx. 488 (6th Cir. 2008); *Donohue v. Francis Services, Inc.,* 2004 WL 1406080 at *1 (E.D. La. June 22, 2004). (citing *Indergit v. RiteAid Corp.*, 2010 WL 2465488, at *7 (S.D.N.Y. June 16, 2010) ("affidavits alleging that they were victims of a corporate-wide policy that left store managers with fewer overtime hours in their labor budget than was necessary and forced them to perform mainly non-exempt duties.").

4

The record contains common evidence that Kohl's assigns ASMs largely non-management work and gives them insufficient hourly staff to complete those tasks without significant contributions from the ASMs themselves. This policy and practice is consistent with Kohl's policy of "lean staffing levels" described in its literature. Docket No. 68-3 at page 4. Kohl's also has a policy and practice of sending hourly workers home early and not replacing them when they call out sick. Kohl's then requires ASMs to perform the non-exempt work that the absent hourly workers would have done. Additionally, Kohl's subjects its ASMs to close and direct supervision, including by the use of cameras and radio headsets. Finally, it pays them barely more than the hourly workers they supervise. This record contains evidence of these policies and practices and that they apply nationwide to all ASMs.

This *de facto* policy, if proven, renders Kohls' ASMs non-exempt under the law. 29 C.F.R. §541.700(c).[4] Nevertheless, Kohl's schedules its ASMs for at least 45 hours per week (at least 54 hours per week during the holidays) and in fact assigns them so much work that they work 50 or more hours. But Kohl's pays them a flat salary and does not pay them any additional pay for their overtime hours. These facts would defeat Kohl's claim that ASMs' primary duty is management and that they need not be paid overtime.

### 1. *First, the record includes evidence that Kohl's assigns its ASMs largely non-management work.*[5]

First, it is clear that Kohl's assigns non-management duties to its ASMs. This Court need look no further than the Position Descriptions. On their first page, every position description in this case contains the following duty:

---

[4] This regulation, which lists 3 of the 4 prongs of the primary duty test, essentially says that when an employer fails three of the four prongs of the primary duty test, then it fails the test.

[5] This is the first part of the 3 part ASM rule which asks whether the ASMs spend more than 50% of their time on non-management work.

5

> *Ensures Company merchandise presentation directives and standards are being met while **merchandising incoming freight and replenishing the sales floor***.

Doc. #68-14, pp. 2, 5, 8, 11, 14 (emphasis added).

The same documents also include the following passage:

> *During the course of business and general management of the store, there may be situations that **require non-exempt tasks to be physically completed by management**. This is limited to situational training to further enhance Associate development, while providing leadership and direction related to Kohl's best practices and while providing a visual experience when directing workflow to Associates.*

*Id.* at 3, 6, 9, 12, 15 (emphasis added).

The record contains evidence contradicting the limitation contained in this paragraph that such work is only occasional and Kohl's own training documents betray them. In its "Leading v. Simply Doing" training module, Kohl's makes sure that its ASMs are told that they should limit their "doing" to 30% or less. That document includes the following passage:

> As a leader, you know that there are times when you need to step in to get something done. You can still independently perform these tasks when, in your discretion, you believe it is in the best interest of your store or building, but the expectation is to limit this to 30 percent or less of your work time. …

Exhibit 23, Collins Depo. Ex. 33, p. 7.[6] This document shows that Kohl's is well aware that the amount of non-management work they assign is far more than "situational training." Thirty percent (30%) of an ASM's fifty (50) hour work-week could amount to 15 hours or more.

Furthermore, it was this document that the court in *Costello* relied on heavily to conditionally certify that case:

> Moreover, an ASM leadership training document submitted by Kohl's describes a "70/30 rule," which provides that "no more than 30 percent of your time should be spent performing activities that are classified as non-leadership." [citation omitted] That document further states that "[i]f you find you are consistently spending more than 30% of your workday doing instead of leading, you aren't being as effect as you could be. That's because while you are doing the tasks, you are not teaching the team how to do the tasks themselves." [citation omitted]

---

[6] This same document was used in the depositions of all five declarants.

6

> ***This is essentially an acknowledgment by Kohl's – important enough to be a part of nationwide training available to ASMs – that at least some ASMs consistently spend more than 30 percent of their time engaged in non-managerial tasks***. While Kohl's position is of course that AMSs must meet these expectations, *see* Def. Br. At 10-11, the Court concludes that this acknowledgment, when coupled with the evidence described below, is enough for it to determine that conditional certification is warranted.

*Costello*, 2014 U.S. Dist. LEXIS 124376, at *15-16. (emphasis added).

The "evidence described below" discussed in *Costello* was testimony from the declarants that there was simply not enough payroll to get the hourly work done without significant help from the salaried ASMs. It also included evidence of Kohl's practices company-wide of "attempting to minimize labor costs." *Id.* at 11. That same evidence has been presented here. Michele Johnson testified that she spent most of her time performing non-management duties. When asked why she thinks that is, she responded:

> A: Because a lack of staff to perform the non-management jobs. They needed to get done, there was still trucks coming in and freight that needed to be pushed and the floor needed to be recovered and there wasn't anybody to delegate to.
>
> Q: And who set the staffing levels at your store?
>
> A: Corporate sets payroll.

Exhibit 25, Johnson Depo. p. 294:21-295:18.

The declarants also testified that in order to conserve payroll Kohl's instructed them to send hourly workers home early and did not permit them to call in replacement workers when hourly staff called out sick. They also testified that they – the ASMs – are the ones who end up finishing the hourly work that the absent hourly workers left behind. *See* Docket No. 68-1, Section II.c.v. page 18-19; Johnson Depo pp. 85:18-24; 87:6-10; 88:25-29:5; 152:11-12 ("I was told to send people home if we weren't making our sales, yes."); 88:9-12 ("When I was told that I needed to cut hours because we didn't make our payroll from lack of sales, then we would cut

7

hours at the end of our shifts or not fill shifts when people would no-show or call out.); Collins Depo. pp. 129:19-130:2; 307:7-16; 59:22-60:5 ("If there was no payroll we wouldn't replace it."); 124:1-4 ("…it was basically expected from the store manager that if our associates couldn't get the work done, we had to finish it."); Exhibit 26, Luseni Depo. pp. 118:1-8 ("We didn't replace call-outs."); 262:15-23 ("The hourly associates, you know, they get to go home and clock out. But if the work isn't done, then we have to stay and finish it."); Exhibit 27, Portillo Depo. pp. 56:24-57:3; 58:1-9; Exhibit 28 Peterson Depo pp. 153:13-22 ("Q: And were you doing only the things hourly associates do at that time? A: For the majority of it. Q: Why? A: Because I was being told to. Q: By whom? A: My store manager. If there's not enough associates in the building, it has to get done."); 130:3-7 ("There was a few occasions that I was not in the building for the day and my admin sent over an email that the schedules needed to be shaved down more, so she sent that over and I would respond to her.")

The declarants also testified that Kohl's added a new non-exempt task that does not appear on their March 2012 position descriptions – filling on-line orders. The declarants testified that after 2012, Kohl's started selling merchandise on-line through its website www.kohls.com.[7] Collins Depo pp. 301:9 – 302:6; Johnson Depo pp. 165:6-9; pp; 298:7-299:1; Portillo Depo pp. 108:7-12; Luseni Depo.273:7-19, (testifying that filling "the BOPUS order and the ship-from-store orders,…" are manual labor.). Rather than use a fulfillment center like Amazon, Kohl's assigns the task of filling these orders to its in-store personnel, including ASMs. They also testified that filling these on-line orders was a task that was assigned to them and that they spent approximately 20 or more hours per week performing. (*See* Collins Depo. 303:11-14 -

---

[7] See attached Exhibit 32, article from 2015 describing Kohl's online ordering system, and Exhibit 33, Kohl's "Greatness Agenda."

8

"Q: So in your last year, 2017, with Kohl's, how many hours a week would you say on average were you spending filling orders? A: At least 20.")

Of course, filling on-line orders is not a management task. It is a non-exempt, overtime eligible task. Collins testified that this work was done after the end of their scheduled shift, at a time when they were doing almost exclusively non-management work.

Q: And the hours that you spent after your shift ended, were they spent managing or were they spent doing the online ordering or finishing up the tasks that the hourly people hadn't finished?

A: They were finishing the online ordering or doing tasks.

Collins Depo. pp. 307:7-12.

The addition of online orders as an ASM job duty renders Kohl's March 2012 decision to classify its ASMs as exempt obsolete and incorrect and supports Plaintiffs' claim that Kohl's subjected its ASMs to a *de facto* policy of misclassifying them as exempt when they assign them so much non-management work.

All of this evidence is consistent with what Kohl's boasts to its shareholders as its emphasis on "lean staffing levels." *See* Docket No. 68-4, p. 4. It was this evidence that the court in *Costello* relied on in finding of a *de facto* policy that violated the FLSA. In the words of Judge Woods:

> *This testimony provides a substantive theory – budget and staffing cuts that resulted in ASMs performing non-managerial tasks – to tie Plaintiffs claims to a policy or practice that affected ASMs nationwide.*

*Costello*, 2014 U.S. Dist. LEXIS 124376, at *19.

Again, this case presents an even stronger record in support of conditional certification than *Costello*. That case was filed in February 2013 and related to a period of time before Kohl's assigned online order-filling as a duty of Assistant Store Managers. This case was filed in

9

January 2018 and covers a period where online order-filling was added to ASM duties. This national practice of turning their retail stores into fulfillment centers and using ASMs as order-fillers makes this case even more worthy of collective treatment than *Costello*.

### 2. *The record includes evidence, including Kohl's own exhibits, that Kohl's closely and directly supervises its ASMs and does so uniformly throughout the country.*

Kohl's simply gets it wrong when it says that Plaintiffs' case rests "entirely" on proof that ASMs spent more than 50% of their time performing non-management work. Def. Opp. P. 1. Plaintiffs' allegations and proof show a common policy that violates the rule for assistant managers found at 29 C.F.R. §541.700(c). That rule requires employers to prove that their ASMs are not closely and directly supervised. But this record shows common nationwide policies that subject ASMs to close supervision and control. *See* Declaration of Stacy Collins, Dkt. 68-5; Declaration of Tiange Luseni, Dkt. 68-6; Declaration of Lisa Peterson, Dkt. 68-7; Declaration of Michele Johnson, Dkt. 68-8, Declaration of Shanice Stevenson, Dkt. 68-9; Declaration of Delmy Portillo, Dkt. 68-11; Declaration of Dylan Swaim, Dkt. 68-12; Declaration of Patricia Mariani, Dkt. 68-13. Additional evidence came out during the five declarants' depositions that Kohl's Store Managers are in constant communication with the ASMs through the use of radio headsets, which are required to be worn by ASMs throughout their shift. Luseni Depo. pp. 256:1-9; Peterson Depo. pp. 125:6-7 ("…we did have headsets."); Johnson Depo pp. 95:23-25 ("We all wore headsets.") There are also cameras in all the stores which monitor the entire store. Peterson Depo. pp. 290:10-11 ("There is cameras in the buildings that can oversee the buildings."); Luseni Depo. pp. 251:18-20.

### 3. *The record includes ample evidence that Kohl's pays its ASMs 'only a little more' than its hourly workers.*

Plaintiffs' record also shows that Kohl's common policy is to pay its ASMS "only a little more" than hourly workers. 29 C.F.R. §541.700(c). For example, Plaintiff Lisa Peterson held the position of hourly Area Supervisor in 2011 and 2012. Defendants' deposition exhibit 10 shows that her hourly wage as of August 2012 was $17.76. According to her testimony, she was then promoted to ASM in February 2013. Peterson Depo., pp. 51:1-11. She was paid a salary of $52,000, or $1,000 per week. Peterson Depo. pp. 58:4-8. If she had worked 50 or more hours per week as an Area Supervisor, like she did as an ASM, she would have been paid $976.80, which is 97.7% of her ASM salary for the same number of hours. Of course, Kohl's pay scales are enforced from their corporate office and are therefore uniform throughout the company.

### 4. *There is evidence that Kohl's fails the fourth prong of the primary duty test, i.e., that the management duties of the ASMs is not their most important work.*

Finally, the record here shows that even Kohl's considers management to be 25% or less of an ASMs' job. Kohls' "Performance Reviews", which are used uniformly throughout the country, show that Kohl's weighed the task of Building Great Teams as only a minority of the job (in particular, 25% of the job in 2015, *see* Exhibit 30, Collins Ex. 13, Johnson Ex. 21, Luseni Ex. 9, 2015 Performance Reviews, and 20% of the job in 2016, *see* Exhibit 31, Collins Ex. 12, Johnson Ex. 22, 2016 Performance Reviews). The remaining 75-80% of the ASM job is listed as "Drive Sales", "Put Customers First", and "Grow Profitability". *Id.* Of course, sales and customer service are non-exempt functions that are not listed among the management functions in 29 C.F.R. §541.102.

### B. The record now contains even more evidence that the job of an ASM at Kohl's stores around the country is generally uniform.

Kohl's misses the mark when it argues that "Plaintiffs are not similarly situated…" Defendant's Opposition, Docket Number 97, p 31-33. However, Kohl's Performance Evaluations grade each ASM by using their stores ranking on each category in relation to other stores in the country. For example, in the category of "Build Great Teams" for 2015, Michele Johnson got "257 of 1162." Ex. 29, Ex. 30. This means her store was ranked 257 out of the 1162 stores in the country. In 2016, Stacy Collins received a score of "762 of 1162" in "Drive Sales." *Id.* Of course, a company can only grade its ASMs against each other if they all have the same jobs and are given the same amount of labor in which to get the job done. This evidence supports Plaintiffs' claim that they all have the same jobs, are measured the same way, and are given the same amount (although never enough) of subordinate hourly staff.

Furthermore, the declarants have now testified of their knowledge and observations that ASMs in other stores have the same jobs and experience the same understaffing that they did. Johnson Depo. pp. 295:19-297:13 ("We would have meetings which would have all of the ASMs in our district gathered together, we would discuss workload versus how many hours we were putting in, what we were doing."); Peterson Depo. pp. 301:3-13; Portillo Depo. pp.185:4-16; Luseni Depo. 258:9-261:17, 260:15-20 ("We had conversations about how we spend our time at work. Q: Did you speak with them about spending most of your time on hourly work? A: That was along the line of similar conversation between ASMs.")

Stacy Collins worked in two different stores and held two of the five ASM positions. According to her, "They are all the same, so …" Collins Depo., pp. 26:2-10.; Luseni Depo, pp. 270:1-21 ("I mean, if you think about it, all the stores are rated on the same criteria, you know, as far as sales, store rank, different things like that, so I know that if they were trying to affect it

12

in any way, that they were doing a lot of the things that I was doing, by pushing the freight and filling it on the floor to meet that criteria."); pp. 273:1-5 ("Again, I feel that it was similar. If they were doing a lot of the same things that they were doing to drive sales, then we were doing some of the aspects of the job by doing a lot of the labor."); Peterson Depo, pp. 301:3-13 (Q: How would that person know what duties that ASM was doing on a day to day basis? A: Because minus a few small managerial specific tasks to the position we were all doing the same thing. Q: And on what do you base that statement? A: Some conversations between the different manager trainings that we've had just over lunch time or different things like that that we've complained about it to each other, I would say probably just in general conversation."); 300:17-308:20.[8] This testimony supports Plaintiffs' claim that their experience is not unique and that Kohl's ASMs around the country are all being given too much non-exempt work, and too little hourly staff, for them to be classified as "executives."

### C. *The Court Should Authorize Issuance of Plaintiffs' Proposed Notice*

#### 1. Plaintiffs' Informal Solicitation of Class Members In No Way Forecloses Their Right to Court-Authorized Notice

Kohl's argues that the Court should not authorize notice under the FLSA because Plaintiffs already engaged in informal notice by trying to recruit opt-in plaintiffs on Facebook. Kohl's cites no authority in support of this argument. Clearly Plaintiffs did not have access to contacting the vast majority of Kohl's ASMs, and the entire purpose of FLSA court-authorized

---

[8] This is the "hearsay" that Defendants claim is inadmissible in their brief. However, evidence regarding statements made by Kohl's managers is not hearsay. Moreover, district courts do consider hearsay in deciding whether to authorize the issuance of notice under the FLSA. *See Ahad v. Board of Trustees of Southern Illinois Univ.*, 2017 WL 4330377 at *6 (N.D. Ill. Sept. 29, 2017); *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 7409909, at *3 (N.D. Ill. Dec. 22, 2016) ("Moreover, courts in this district have denied motions to strike hearsay evidence from such declarations, reasoning that "[a] strict application of the Federal Rules of Evidence does not comport with the court's understanding of relative evidentiary burdens imposed under the two-stage certification approach" and that "[t]he most reasonable approach to the respective evidentiary burdens of the plaintiff during the two stages is one that requires a stricter standard of proof in the second stage.")

13

notice is to ensure that all similarly situated individuals receive notice of their rights and ability to join a case that has been filed if they so choose.[9]

### 2. A Three-Year Notice Period is Proper

Kohl's also errs in asking the Court to limit any notice period to two years, rather than the three year period that would apply if Plaintiffs ultimately prove a willful violation of the FLSA. Courts routinely authorize a three-year notice period at this early stage in the litigation based on Plaintiffs' *allegations* of willfulness.[10]

### 3. The Court Should Authorize Plaintiff's Proposed Notice

Kohl's argues that providing Plaintiffs' counsel with names and contact information for ASMs would violate their right to privacy. However, the Supreme Court has expressly authorized production of this type of information for notice purposes. *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989). ("The "discovery [of names and addresses] was relevant to the subject matter of the action and ... there were no grounds to limit the discovery under the facts and circumstances of the case."). Courts routinely reject defendants' requests not to provide Plaintiffs' counsel with such information based on purported privacy concerns. *See, e.g., Woods v. Club Cabaret, Inc*., 140 F. Supp. 3d 775, 784 (C.D. Ill. 2015) (denying Defendant's request to use third-party administrator for issuance of notice); *Adams v. Inter-Con*

---

[9] Indeed, some courts have required that Plaintiffs establish some initial interest in their case in order to obtain court-authorized notice, so it is unclear how Plaintiffs could be expected to show that there is interest in their case if they had not already gotten word out through some informal and non-comprehensive means. The fact that 39ASMs have already joined the case, even through such informal and limited means of Plaintiffs' own notice, shows initial interest in the case but is certainly not a substitute for court-authorized notice.

[10] *See, e.g., Frebes v. MaskRests., LLC*, 2014 WL 1848461, at *4 (N.D. Ill. May 8, 2014) ("because there is not a high bar for giving notice under the [FLSA's] three-year statute of limitations, we will apply a three-year statute of limitations at this [i.e., notice] stage in the litigation."); *Espenscheid v. DirecStat USA, LLC*, 2010 WL 2330309, at *13 (W.D. Wis. June 7, 2010) ("Whether defendants violated the FLSA and whether any such violations were willful are questions pertaining to the merits of this action and are not properly entertained at this early stage of the proceeding. At this stage of litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs. Therefore, any notice sent will assume a three-year statute of limitations."); *North v. Bd. of Trs. of Ill. State Univ.,* 676 F.Supp.2d 690, 696 n.8 (C.D.Ill.2009).

*Sec. Sys., Inc.,* 242 F.R.D. 530, 540 (N.D. Cal. 2007) (same) ("the court orders defendant to submit the contact information of potential plaintiffs to plaintiffs' counsel.").

This Court should similarly reject Kohl's request to limit notice to a one-time distribution by first-class mail. "Courts have recognized that notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved." *Calvillo v. Bull Rogers, Inc.,* 2017 WL 3172843, at *6 (D.N.M. July 25, 2017).[11] The Court should also grant Plaintiffs' request for reminder notices, which are routine in FLSA cases.[12]

## V. CONCLUSION

At this early stage of the case, Plaintiffs have satisfied their lenient burden of showing that notice should be issued, allowing other Kohl's ASMs to be apprised of their rights in this case and given the opportunity to opt-in. Plaintiffs have shown that there is a group of similarly situated individuals, namely ASMs, who share the same basic job duties and who Kohl's has uniformly classified as exempt from overtime. Further, Plaintiffs have presented evidence supporting their theory that Kohl's has a *de facto* policy of using ASM to perform substantial non-managerial work, by leanly staffing stores and requiring ASMs to complete tasks that would otherwise be performed by hourly workers (who are paid almost as much as ASMs). The Court should grant Plaintiffs' request for the issuance of notice.

---

[11] *See also Regan v. City of Hanahan*, 2017 WL 1386334, at *3 (D.S.C. 2017) ("[M]ail, email and text messaging [notice] is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move."); *Dempsey v. Jason's Premier Pumping Services, LLC,* 2015 WL 13121134, at *2 (D. Colo. 2015) (authorizing notice by mail, email and text message, citing the mobile nature of collective action members).

[12] *See, e.g., Collado v. J&G Transport, Inc.,* 2014 WL 5390569 at *6 (reminder notice "will ensure that putative class members are aware of their rights and the time within which to exercise those rights."); *Guzelgurgenli v. Prime Time Specials Inc.,* 883 F. Supp. 2d 340, 357–58 (E.D.N.Y. 2012) ("[C]ourts have recognized that a second notice or reminder is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in").

15

Respectfully submitted,

*/s/ Richard Hayber*
Richard E. Hayber
The Hayber Law Firm, LLC
221 Main Street, Suite 502
Hartford, CT  06106
(860) 522-8888
rhayber@hayberlawfirm.com

Shannon Liss-Riordan
Michelle R. Cassorla
Lichten & Liss-Riordan, P.C.
729 Boylston St, Suite 2000
Boston, MA 02116
617-994-5800
sliss@llrlaw.com
mcassorla@llrlaw.com

Dated: November 9, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2018, a copy of this document was served by electronic filing on all counsel of record.

 */s/ Richard Hayber*
Richard Hayber