# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| STACY COLLINS, TIANGE LUSENI and LISA PETERSON, individually and on behalf of other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> KOHL'S DEPARTMENT STORES, INC. and KOHL'S CORPORATION, <br><br> Defendants. | CASE NO: 2:18-cv-00962-BHL |

## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT

Plaintiffs Stacy Collins, Tiange Luseni, and Lisa Peterson, on behalf of themselves and all others who opted in to this action (collectively, "Plaintiffs"), through their undersigned counsel, hereby respectfully request the Court's approval of the FLSA settlement reached by the Plaintiffs and Defendants Kohl's Department Stores, Inc. and Kohl's Corporation ("Kohl's").[1] This Settlement resolves the claims of Plaintiffs and the Settlement Collective under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") for a total not to exceed $2,900,000. As detailed below, this proposed resolution of the Plaintiffs' FLSA claims is fair and reasonable and warrants judicial approval. Kohl's does not oppose approval of the settlement agreement reached between the parties.

## I.    FACTUAL BACKGROUND

Plaintiff Stacy Collins filed this lawsuit on January 11, 2018, in the U.S. District Court for the District of Connecticut, alleging that Kohl's violated the FLSA by improperly classifying

---

[1]    The Settlement Agreement is attached hereto as Exhibit A.

her and similarly situated individuals who worked as Assistant Store Managers in Kohl's Department Stores as exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), as a result, failed to pay them at the rate of time and one-half for hours worked in excess of forty (40) hours a week in violation of the FLSA. See Dkt. 1. Plaintiffs Tiange Luseni and Lisa Peterson were later added in an amended complaint. Dkt. 34. In June 2018, the Connecticut court granted Kohl's motion to transfer the case to this Court. See Dkt. 61. Plaintiffs subsequently moved for conditional certification and for notice to be issued pursuant to the FLSA. Dkt. 68. On March 26, 2019, the Honorable David E. Jones granted Plaintiffs' motion and ordered that notice be issued to Kohl's ASMs nationwide who had worked since July 9, 2015. Dkt. 108. Almost 900 ASMs submitted opt-in forms to join the case. The parties exchanged tens of thousands of pages of documents, and Named Plaintiffs Collins, Luseni, Peterson were all deposed, as were opt-ins Michelle Johnson and Delmy Portillo.

In October 2019, this case was re-assigned to the Honorable J.P. Stadtmueller, who scheduled the case for a jury trial to begin in May 2020. Dkt. 149. In January 2020, Kohl's filed a motion to decertify the collective. Dkt. 156. In March 2020, the trial was subsequently adjourned indefinitely due to the COVID-19 pandemic. Dkt. 165. The Court granted Kohl's motion to decertify on August 10, 2020. Dkt. 169. In its order, the Court did not find that collective certification was necessarily unwarranted, but rather that it could not independently determine whether conditional certification was proper, and it invited Plaintiffs to submit a renewed motion for conditional certification. Id.

In May 2020, the parties engaged in a mediation session with well-known wage-and-hour mediator Michael J. Leech. See Declaration of Shannon Liss-Riordan (Liss-Riordan Decl.), attached hereto as Exhibit 2, ¶ 5. In advance of mediation, Kohl's provided Plaintiffs' counsel

with data regarding the hours worked and amount paid to the members of the collective. The parties did not reach an agreement during the mediation session, but, in the following weeks, the parties continued to engage in settlement discussions. Liss-Riordan Decl. ¶ 6.

As settlement discussions continued into July and August 2020, Plaintiffs' counsel filed a number of proposed class action cases under the state overtime laws in various states on behalf of certain members of the Collins collective. These cases were: Budnick v. Kohl's Department Stores, Inc., Case No. 20-cv-1395 (D. Conn.); Graziano v. Kohl's Department Stores, Inc., Case No. 20-cv-5049 (S.D.N.Y.); Jimenez v. Kohl's Department Stores, Inc., Case No. 20-cv-11346 (D. Mass.); Portillo v. Kohl's Department Stores, Inc., Case No. 20-cv-7391 (C.D. Cal.); and Sanchez v. Kohl's Department Stores, Inc., Case No. 20-cv-10840 (D.N.J.). Graziano and Jimenez were subsequently transferred to this Court and consolidated with this matter. Dkt. 175.

In September 2020, the parties continued their discussions and ultimately reached an agreement in principle to resolve this case on behalf of the named plaintiffs and the collective members. After a lengthy settlement agreement discussion process, the parties finalized their settlement agreement on January 12, 2021.

## II. THE SETTLEMENT TERMS

### A. The Settlement Collective Members

The Settlement Agreement provides that the Settlement Collective Members include Plaintiffs Collins, Luseni, and Peterson and all persons who have filed consent forms, who worked for Kohl's as Assistant Store Managers (ASMs) and were classified as exempt from overtime. While Kohl's asserts that Judge Stadtmueller's order granting decertification of the collective was properly decided, Kohl's agrees that, for settlement purposes only, the collective action may be finally certified.

## B. Calculation and Distribution of the Gross Settlement Amount

The total amount to be paid by Kohl's will not exceed $2,900,000. The Gross Settlement Amount includes amounts to cover: (1) service awards to Plaintiff Collins, who originated this case, in the amount of $20,000; service awards in the amount of $10,000 each to Plaintiffs Tiange Luseni, Lisa Peterson, Michele Johnson, and Delmy Portillo, all of whom underwent written discovery and participated in lengthy depositions ; and service awards in the amount of $5,000 each to Opt-in Plaintiffs Jenna Graziano, Tony Jimenez, Oscar Sanchez, and Duane Budnick, who served as lead plaintiffs in the state law class actions that were filed, which helped bring about this collective action settlement; (2) attorney's fees not to exceed one-third of the Gross Settlement Amount ($966,666.67); (3) reimbursement of litigation costs in the amount of $34,011.04; and (4) settlement administration costs, estimated at $43,000. After subtracting these amounts, the balance of the funds shall be distributed to the collective action members who opted into this case and who agree to participate in the settlement. Their shares will be distributed in proportion to the number of weeks they each worked during the relevant period (January 11, 2015, to the present), based upon Kohl's records. Fifty percent (50%) of each Collective Member's settlement share shall be reported on an IRS Form W-2 (for which the Collective Member will be responsible for employee-side taxes, with Kohl's responsible for employer-side taxes) and fifty percent (50%) of each Collective Member's share shall be reported on an IRS Form 1099, which shall not be subject to withholding taxes. Agreement ¶ 2(e).

Following Court approval of the settlement, the Settlement Administrator will issue notice of the settlement to all Plaintiffs and Opt-Ins, notifying them that the settlement has been reached and informing that, in order to participate and receive their share, they will need to sign

and return a release of their wage claims related to unpaid overtime.[2] Agreement ¶ 2(a). After agreements have been returned by 93% of the Plaintiffs and Opt-Ins, the Settlement Administrator will disburse the settlement checks to the collective action members. Agreement ¶ 5.

**III.     APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE**

Because the Settlement reached by the Parties represents a fair and reasonable resolution of a *bona fide* dispute, the Court should enter the accompanying proposed order approving the Settlement of Plaintiffs' FLSA claims.

**A. Standard for Settlement Approval under the FLSA**

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). Cheeks v. Freeport Pancake H., Inc., 796 F.3d 199, 206 (2d Cir. 2015); Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor, 679 F.2d 1350, 1353 (11th Cir. 1982). "Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying

---

[2]     The Named Plaintiffs and others receiving Service Awards will be required to sign a General Release. Agreement ¶ 2(c).

purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" Cheeks, 796 F.3d at 206 (quoting A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493 (1945)).

In a collective action case arising under the FLSA, "[a] one-step settlement approval process is appropriate."[3] Benoskie v. Kerry Foods, Inc., 2020 WL 5769488, at *2 (E.D. Wis. Sept. 28, 2020) (citing Briggs v. PNC Fin. Services Group, Inc., 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016)); Prena v. BMO Fin. Corp., 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (granting request for one-step approval process).[4]

### B. The Settlement is Fair and Reasonable Under the FLSA

In evaluating an FLSA settlement, the Court must determine whether the agreement reflects a reasonable compromise of disputed issues . . .." Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d 990, 994–95 (N.D. Ind. 2010) (quoting Misiewicz v. D'Onofrio Gen. Contractors, No. 08 CV 4377(KAM)(CLP), 2010 WL 2545439, at *3 (E.D.N.Y. May 17, 2010)) (internal quotation marks omitted). An FLSA settlement is subject to the Court's approval if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Woods v. Club Cabaret, Inc., 2017 WL 4054523, at *6 (C.D. Ill. May 17, 2017) (quoting Lynn's Food Stores, 679 F.2d 1350, at 1355) (internal quotation marks omitted).

---

[3] When they opted in to the case, opt-in plaintiffs agreed to be bound by any judgment or settlement reached by the lead plaintiffs. See Opt-in form at Dkt. 120-1.

[4] See also Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). "Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions." Beckman v. KeyBank, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (citing McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by* Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)).

### 1. The Settlement Agreement Resolves a Bona Fide Dispute

In this case, a *bona fide* dispute exists regarding Plaintiffs' and the Settlement Collective Members' FLSA claims. Plaintiffs have alleged that they were misclassified by Kohl's as exempt employees, and, as a result, were not paid the overtime premium for hours worked in excess of 40 hours per week. See Complaint, Dkt. 1. Kohl's denies these allegations, and it maintains that the Assistant Store Managers were properly classified as exempt. Liss-Riordan Decl. ¶ 8. This is sufficient to establish the existence of a bona fide dispute. See, e.g., Briggs, 2016 WL 7018566, at *1 (settlement approval granted where "[t]he settlement was the result of vigorously contested litigation with extensive formal and informal discovery, a motion for collective conditional certification, and arm's-length negotiations."). In addition, had this case gone forward, Plaintiffs would have filed a renewed motion for conditional certification, and Kohl's would have likely opposed collective certification in this case. Liss-Riordan Decl. ¶ 8. Thus, the Settlement Agreement reflects a reasonable compromise of disputed issues related to the merits as well as collective treatment of the Plaintiffs' claims.

### 2. The Settlement Furthers the Purpose of the FLSA

The Settlement Agreement reached by the Parties promotes the purpose of the FLSA. The Settlement Agreement has been made publicly available. See Adams v. Walgreen Co., 2015 WL 4067752, at *2 (E.D. Wis. July 2, 2015) (noting "presumption that court proceedings and judicial records should be made available to the public."). In addition, other than the Service Award recipients, the Settlement Agreement does not provide for a general release of claims – it is limited to the wage and hour claims. See Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d at 996 (scope of release appropriate where "Plaintiffs will be required to release any claims arising out of this litigation, whether under the FLSA or state law wage and hour claims.") (citing Carter

7
Case 2:18-cv-00962-BHL   Filed 01/20/21   Page 7 of 14   Document 181

v. Anderson Merchandisers, LP, 2010 WL 1946784, at *11 (C.D. Cal. May 11, 2010)) ("Since neither release prevents Class Members from pursuing claims unrelated to the settlement, the release is fair and reasonable."). In sum, the Settlement furthers the purposes of the FLSA.

   C. **The Monetary Terms and the Release Contained in the Settlement Agreement are Fair to the Settlement Collective**

When using a two-year statute of limitations for Plaintiffs' FLSA claims and an overtime premium of one-half the employees' regular rate for each hour worked beyond forty in a 45-hour workweek, Plaintiffs' Counsel calculated that Plaintiffs' potential unpaid overtime wage damages were approximately $3 million. Liss-Riordan Decl. ¶ 9. Thus, in Plaintiffs' view, the $2,900,000 settlement requires Kohl's to pay almost 100% of the total, unliquidated damages that the Plaintiffs could have recovered if they continued to pursue this action and been successful at trial using a two-year statute of limitations. Id. As part of the settlement, the parties have agreed to include a tolled statute of limitations period back to January 11, 2015, three years before the complaint was filed. Thus, while collective members will not recover 100% of their damages given the longer time period covered by the case, there was a very real risk that Plaintiffs would not prevail at trial and that collective members would not recover anything, particularly given that Judge Stadtmueller granted Kohl's motion for decertification. As such, Plaintiffs believe the settlement is an excellent result for them, as it provides guaranteed monetary recovery now, rather than requiring the parties to engage in further briefing on the propriety of certification, a likely summary judgment motion filed by Kohl's, the inherent risks of trial, and the likelihood of delays on appeal.

The formula for allocating settlement awards to Plaintiffs is also fair and reasonable. The Settlement Agreement provides for a distribution formula where the net settlement fund will be distributed among Plaintiffs based on the number of workweeks they worked for Kohl's during

the period January 11, 2015, through the present. Agreement ¶ 3(b). Thus, those individuals who had a longer tenure with Kohl's will receive more under the Settlement Agreement.

The scope of the release in the Settlement Agreement is also fair and reasonable. In exchange for the consideration contained in the settlement agreement, Opt-Ins will release Kohl's from all claims available under federal, state or local law with respect to wage and hour violations for unpaid overtime compensation or unpaid minimum wage compensation, including but not limited to all claims arising under the Fair Labor Standards Act and any similar state or local wage/hour and wage payment statute/ordinance. Settlement Agreement ¶ 2(a). See cases cited *supra* III.B.2.

**D. The Proposed Service Payment to the Named Plaintiffs are Fair and Reasonable**

The settlement also provides for a service payment of $20,000 to Plaintiff Stacy Collins, which is fair and reasonable. Plaintiff Collins took on the risk of stepping forward and bringing this case against Kohl's on behalf of other employees. Liss-Riordan Decl. ¶ 10. She submitted written discovery and was deposed by Kohl's counsel. She also helped Plaintiffs' Counsel develop their theories of liability and damages. Id. ¶ 10. The requested service award fairly recognizes the services that she has performed in advancing the Plaintiffs' interests and the time she has dedicated to the lawsuit. The requested service awards of $10,000 each to Plaintiffs Lisa Peterson, Tiange Luseni, Michele Johnson, and Delmy Portillo, are also fair and reasonable. Plaintiffs Peterson and Luseni also took risks by adding their names as plaintiffs in this case and contributed significantly to Plaintiffs' counsel's development of this case. Id. ¶ 11. Both participated in discovery and were deposed. Id. ¶ 11. Similarly, Plaintiff Portillo was deposed as part of the Collins case and also took risks by serving as a named plaintiff in Portillo v. Kohl's Department Stores, Inc., Case No. 20-cv-7391 (C.D. Cal.). Id. ¶ 12. Plaintiff Johnson was also

deposed in this case. Id. ¶ 12. Finally, the requested service awards in the amount of $5,000 each to Plaintiffs Duane Budnick, Tony Jimenez, Jenna Graziano, and Oscar Sanchez are also fair and reasonable, as they each lent their names to being lead plaintiffs in new state law cases and were prepared to litigate those cases on behalf of the class. The parties' mediation session in May was initially unsuccessful, and it was only after Plaintiffs Budnick, Jimenez, Graziano, and Sanchez took on the risks of serving as named plaintiffs in state law cases against Kohl's that this case ultimately settled. Id. ¶ 13.

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." Benoskie, 2020 WL 5769488, at *4 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Courts have routinely recognized the importance of such awards in wage and hour cases of this nature. See, e.g., Castillo v. Noodles & Co., 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) ("Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny… This is especially true in employment litigation."); Sand v. Greenberg, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that Plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); Craig v. Rite Aid Corp., 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), appeal dismissed (3d Cir. Feb. 20, 2013) ("[N]amed Plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation."). The service awards requested in this case properly compensate Plaintiffs and certain Opt-Ins for the risks they took on in coming forward to bring this case.

E.  **The Attorney's Fees and Costs Provision of the Settlement Agreement Fairly Compensates Plaintiffs' Counsel for the Time and Expense of Litigating This Matter**

The Settlement Agreement further provides for the payment of Plaintiffs' attorneys' fees in the amount up to $966,666.67 (one-third of the Gross Settlement Amount). Agreement ¶ 3(c). The requested award of up to $966.666.67 is therefore reasonable and should be approved.

Counsel's contingency fee agreement provides for recovery of fees equal to 33% of the gross recovery, so Plaintiffs' Counsel's request is in line with their fee agreement. In fact, fee requests similar to the one made by Plaintiffs here have routinely been approved by courts, particularly in employment cases. See Burkholder v. City of Ft. Wayne, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (quoting Faican v. Rapid Park Holding Corp., 2010 WL 2679903, at *2 (E.D.N.Y. July 1, 2010)) (awarding fee of 33%) ("a counsel fee of 33.3% of the common fund 'is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers' in an FLSA action."); Castillo v. Noodles & Co., 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016) (awarding attorneys' fees of one-third of the settlement fund in a FLSA collective class action); McCue v. MB Fin., Inc., 2015 WL 4522564, at *3-*4 (N.D. Ill. July 23, 2015) (awarding attorneys' fees of one-third in wage and hour settlement); Campbell v. Advantage Sales & Mktg. LLC, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (awarding of one-third of settlement plus costs in FLSA collective action).[5] Given Plaintiffs' counsel's substantial experience in class

---

[5]   As noted supra note 2, when they signed opt-in forms, consenting to join this collective action, opt-in plaintiffs agreed to be bound by any judgment or settlement reached by the named plaintiffs, including the plaintiffs' contingency agreement with counsel regarding payment of attorneys' fees. See Opt-in form at Dkt. 120-1.

11

Case 2:18-cv-00962-BHL   Filed 01/20/21   Page 11 of 14   Document 181

action wage and hour litigation,[6] and the result achieved for the Plaintiffs, this fee request is reasonable.

Plaintiffs' counsel has also spent $34,011.04 in costs litigating this action. Liss-Riordan Decl. ¶ 14. This amount is reasonable and warrants approval. Settlement administration costs

---

[6] Attorney Shannon Liss-Riordan, one of the lead counsel for Plaintiffs, is nationally recognized for her work in class action wage-and-hour litigation. She has been lead or co-counsel in numerous wage and hour cases in the United States. For more information on her work on behalf of employees, see her website bio, https://www.llrlaw.com/shannon-liss-riordan/. She has represented thousands of employees in class action cases around the country, in both state and federal court. She has succeeded in many appeals, class trials, settlements, and mass arbitration cases. Some of her notable appellate victories in class cases include: Vazquez v. Jan-Pro Franchising Int'l, Inc., 2019 WL 1945001 (9th Cir. May 2, 2019) (reversing summary judgment and articulating standard for independent contractor misclassification claims under California law); Haitayan v. 7-Eleven, Inc., No. 18-55462 (9th Cir. 2019) (reversing summary judgment and denial of injunction); Maplebear dba Instacart v. Busick, No. A151677 26 Cal.App.5th 394 (2018) (affirming dismissal of attempt to vacate class certification in class arbitration); Khanal v. San Francisco Hilton, Inc., No. 15-15493 (9th Cir. 2017) (holding state Labor Code claims not preempted by LMRA); Williams v. Jani–King, 837 F.3d 314 (3d Cir. 2016) (affirming class certification in misclassification case); Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191 (2013) (applying favorable state choice of law in class misclassification case); Villon v. Marriott Hotel Servs., Inc., 2013 WL 3776181 (Haw. July 15, 2013) (holding that waitstaff employees in Hawaii could recover under Hawaii wage law for service charges not distributed to them); Matamoros v. Starbucks Corp., 699 F.3d 129 (1st Cir. 2012) (affirming class certification and summary judgment for plaintiff class in Tips Act case); Awuah v. Coverall North America, Inc., 460 Mass. 484 (2011) (defining recoverable damages in misclassification case); DiFiore v. American Airlines, Inc., 454 Mass. 486 (2009) (upholding jury verdict for skycaps based on strict application of Tips Law); Skirchak v. Dynamics Research Corporation, 508 F.3d 49 (1st Cir. 2007) (holding class waiver in arbitration agreement unenforceable); Cooney v. Compass Group Foodservice, 69 Mass. App. Ct. 632 (2007) (establishing strict liability standard for Tips Act violations).

Similarly, Attorney Richard Hayber, another of the lead counsel in this case, has an extensive background in litigation on behalf of employees, and he is currently serving as lead or co-lead counsel in many employment class and collective actions in federal courts across the country, including unpaid wage cases similar to this case. He has been appointed class counsel numerous times. See, e.g., Aros v. United Rentals, Inc., 2012 U.S. Dist. LEXIS 104429, at *19 (D. Conn. July 26, 2012) (Attorney Hayber's firm consists of "experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions."); Alli v. Boston Mkt. Corp., 2012 U.S. Dist. LEXIS 54695 at *6 (D. Conn. April 17, 2012) (appointing Richard E. Hayber as class counsel; finding counsel to be "experienced").

are estimated at $43,000, which covers the cost for the administrator to notify the collective of the settlement, collect releases, and issue checks and the required tax paperwork. This amount is also reasonable and warrants approval.

## **CONCLUSION**

Because the Settlement reached by the Parties in this case is fair and reasonable, and meets the requirements for FLSA settlement approval, this Court should:

(1) grant approval of the Settlement Agreement;

(2) approve the requested Service Awards; and

(3) approve attorneys' fees in the amount up to $966,666.67 and costs in the amount of $34,011.04;

(4) approve settlement administration costs in the amount of $43,000.00;

(5) enter the proposed Approval Order.

Dated: January 20, 2021  Respectfully submitted,

STACY COLLINS, TIANGE LUSENI, and LISA PETERSON, on behalf of themselves and others similarly situated,

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan
Michelle R. Cassorla
Lichten & Liss-Riordan, P.C.
729 Boylston St, Suite 2000
Boston, MA 02116
617-994-5800
sliss@llrlaw.com
mcassorla@llrlaw.com

Richard E. Hayber
Hayber, McKenna & Dinsmore, LLC
221 Main Street, Suite 502
Hartford, CT 06106
(860) 522-8888
rhayber@hayberlawfirm.com

*Attorneys for Plaintiffs and Settlement Collective*

## CERTIFICATE OF SERVICE

I certify that on January 20, 2021, I filed this document via the CM/ECF system, which will provide notice to all counsel of record.

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan